Howard & Howard Attorneys PLLC
Robert L. Rosenthal, Esq.
NV Bar No. 6476
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
Telephone: (702) 257-1483
Facsimile: (702) 567-1568
E-Mail Address: rlr@h2law.com
Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RANDY DOSSAT, an individual | Case No.: 2:09-CV-00245-KJD-PAL |
| Plaintiff, | |
| vs. | **DEFENDANTS' MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE AND TESTIMONY INVOICES FROM DEFENDANTS' ATTORNEYS** |
| HOFFMANN-LA ROCHE, INC. dba ROCHE LABS, a New Jersey Corporation; ROCHE LABORATORIES, INC., a corporation, DOES 1 through 10, inclusive, ROES CORPORATIONS/ENTITIES 1 through 10 inclusive, | |
| Defendants. | |

Defendants, through their counsel Howard & Howard Attorneys PLLC, bring this Motion in Limine to exclude from evidence and testimony invoices from Defendants' attorneys which were inadvertently disclosed to Plaintiff. In addition, Defendants request that the Court order Plaintiff to redact any and all references to H&H's invoices in his responses to discovery requests.

/ / /
/ / /
/ / /
/ / /
/ / /

1584214

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**
**STATEMENT OF FACTS**

This is an employment discrimination case where Plaintiff, Randy Dossat ("Dossat"), claims that he was the victim of age discrimination and retaliation perpetrated by his supervisor, James Holloway.  Plaintiff is suing his employer, Roche Laboratories Inc., which is a wholly owned subsidiary of parent company Hoffmann-La Roche Inc. (collectively "Defendants" or "Roche").

On June 2, 2008, Plaintiff filed a Charge of Age Discrimination with the Nevada Equal Rights Commission ("NERC").  On September 3, 2008, Defendants submitted their response to the NERC Charge.  On January 14, 2009, the NERC notified Defendants that it was closing its file because Plaintiff had requested a Right-To-Sue Letter. (*See* Rosenthal Declaration, ¶ 2)

During the NERC investigation and the litigation which ensued, Defendants have been represented by Howard & Howard Attorneys PLLC ("H&H").  Pursuant to H&H's retainer agreement with Defendants, H&H sends Defendants monthly invoices which contain itemized descriptions of the work performed during the period.  These documents are privileged under FRE 501. (*See* Rosenthal Declaration, ¶ 3)

On January 9, 2009, and on February 13, 2009, an employee in Defendants' billing department inadvertently forwarded one of H&H's invoices (which had been sent to Roche's corporate headquarters in New Jersey) to the Plaintiff's home address.  On February 19, 2009, Defendants' counsel received the following email from Plaintiff's attorney:

> Today, we received from our client, Randy Dossat, your billing statement to your client, Hoffman La Roche, Inc. dated February 5, 2009 Bill Number 104331-00001-322265.  As you know, this is the second time that your client sent and/or delivered to Mr. Dossat a copy of your billing statements for services you rendered in defense of my client's claims against your client.  The first time this happened, we notified you immediately, as we are doing today and returned a copy of the bill to your office.
>
> The billing statement my client received today referenced work that you have done on behalf of your client.  The billing statement contains facts that support our client's contention, as set forth in

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

1584214

the federal complaint recently filed, that Hoffman-La Roche, Inc. intended to terminate Mr. Dossat from his employment on or about the date that you and/or your client learned that Mr. Dossat has requested his Right to Sue Letter from the EEOC. We believe that this billing statement establishes clear retaliatory motive on part of Hoffman-La Roche, Inc., as set forth in the federal Complaint.

Please be advised that the Nevada Supreme Court amended Rule 4.4 (formerly Supreme Court Rule 184). The Rule does not require recipients to return otherwise confidential and/or privileged documents or communications that may have inadvertently been delivered to opposing counsel. I am sending you this email to notify you that we have received a copy of the above referenced bill.

(*See* e-mail chain between Plaintiff's attorney and Defendants' counsel attached as Exhibit A to Rosenthal Declaration.)

Defendants' counsel promptly responded to Plaintiff's attorney that he wanted to send a runner to retrieve the documents in order to determine how his invoices had been inadvertently sent to the Plaintiff. Defendants' counsel and Plaintiff's attorney proceeded to exchange e-mails regarding the issue, and it was determined that an employee in Defendants' billing department had incorrectly forwarded H&H's invoices to Plaintiff. Defendants' counsel also advised Plaintiff's attorney that H&H's invoices were privileged. (*See* e-mail chain between Plaintiff's attorney and Defendants' counsel attached as Exhibit A to Rosenthal Declaration.)

Although Plaintiff is aware that Defendants consider H&H's invoices to be privileged, Plaintiff has referenced these documents in his responses to discovery requests in an attempt to show proof of Defendant's attempts to discriminate against him. Plaintiff's discovery responses indicate that he intends to introduce H&H's invoices at trial and testify about their contents. (*See* Plaintiff Randy Dosssat's Supplemental Responses to Hoffman-La Roche, Inc.'s Requests for Interrogatories, 11:15-18, 13:7-9; 54:10-12, attached as Exhibit B to Rosenthal Declaration.)

/ / /

/ / /

/ / /

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

1584214

## II.
## ARGUMENT

**A.** **THE COURT SHOULD EXCLUDE THE PRIVILEGED DOCUMENTS AND ALL REFERENCES THERETO BECAUSE THEY WERE INADVERTENTLY SENT TO PLAINTIFF, AND PROPER MEASURES WERE TAKEN TO REMEDY THE ERROR.**

Legal invoices are privileged communications between an attorney and client. *See* FRE 501. Rule 4.4 of the Model Rules of Professional Conduct provides that a lawyer who receives an inadvertently disclosed document shall promptly notify the sender.

The Ninth Circuit has held that the attorney-client privilege is strictly construed. *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). The attorney-client privilege may, however, be waived if a party ***voluntarily*** produces privileged documents to the opposing party. *United States v. de la Jara*, 973 F.2d 746, 749 (9th Cir. 1992). If there is a voluntary waiver, the waiver would extend to *all* communications on the subject. *Weil* at 24. To determine if there has been a waiver, the Court must consider the circumstances surrounding the disclosure. *de la Jara* at 749. If a disclosure is inadvertent, the privilege holder must make efforts to protect the privilege. *Id* at 749-750.

In the present case, Plaintiff's counsel promptly notified Defendants' counsel that H&H's invoices had been sent to Plaintiff. However, in her notification dated February 19, 2009, Plaintiff's attorney also stated that she intended to utilize the privileged material as evidence to support Plaintiff's claims. In Plaintiff's Supplemental Responses to Hoffman-La Roche, Inc.'s Requests for Interrogatories, Plaintiff referenced the invoices as incidents of age discrimination and discrimination that resulted in financial harm or emotional distress. (*See* Plaintiff Randy Dosssat's Supplemental Responses to Hoffman-La Roche, Inc.'s Requests for Interrogatories, 11:15-18, 13:7-9; 54:10-12, attached as Exhibit B to Rosenthal Declaration.)

It is clear from the correspondence between counsel that Plaintiff's attorney knew that the documents were privileged; yet, she did not return the documents, even after Defendants' counsel immediately asked to send a runner to retrieve the invoices. Moreover, Defendants' counsel continued to work with Plaintiff's attorney to determine how the H&H invoices were being forwarded to Plaintiff. After the source of the inadvertent disclosure was learned, the

4 of 5

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

mistake was *immediately* remedied by Defendants to ensure that no additional privileged documents were forwarded to Plaintiff.

The inadvertent disclosure was not meant to be a waiver of privilege since it was not a *voluntary* production of privileged documents. Those individuals involved in the litigation did not authorize, nor would they have authorized, the release of these documents to Plaintiff.

Accordingly, Plaintiff should not be permitted to introduce H&H's invoices or testify about their contents. In addition, Plaintiff should be ordered to redact any and all references to H&H's invoices in his responses to discovery requests.

### III.
### CONCLUSION

Based on the foregoing, Defendants respectfully request the Court to grant Defendants' Motion in Limine to exclude Plaintiff from introducing H&H's invoices or testify about their contents. In addition, Defendants request that the Court order Plaintiff to redact any and all references to H&H's invoices in his responses to discovery requests.

Dated: April 30, 2010

Howard & Howard Attorneys PLLC

By: _____
Robert L. Rosenthal
3800 Howard Hughes Parkway, Suite 1400
Las Vegas, Nevada 89169
Attorneys for Defendants

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

1584214

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 30th day of April, 2010, I served the above Defendants' Motion In Limine To Exclude From Evidence And Testimony Invoices From Defendants' Attorneys through the CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by U.S. Mail, first class, postage pre-paid), upon the following:

Esteban-Trinidad Law, P.C.
M. Lani Esteban-Trinidad
4315 N. Rancho Drive, Suite 110
Las Vegas, Nevada 89130

Attorney for Plaintiff

/s/ Barbara J. Dunn
An Employee of Howard & Howard

1586875

# ROSENTHAL DECLARATION

## DECLARATION OF ROBERT L. ROSENTHAL

I, Robert L. Rosenthal, declare:

1.      I am a partner in the law firm of Howard & Howard Attorneys PLLC, am licensed to practice before all the courts of the State of Nevada, and I am counsel of record for Defendants.

2.      On June 2, 2008, Plaintiff filed a Charge of Age Discrimination with the Nevada Equal Rights Commission ("NERC").   On September 3, 2008, Defendants submitted their response to the NERC Charge.   On January 14, 2009, the NERC notified Defendants that it was closing its file because Plaintiff had requested a Right-To-Sue Letter.

3.      During the NERC investigation and the litigation which ensued, Defendants have been represented by Howard & Howard Attorneys PLLC ("H&H").   Pursuant to H&H's retainer agreement with Defendants, H&H sends Defendants monthly invoices which contain itemized descriptions of the work performed during the period.

4.      Attached hereto as Exhibit A is a true and correct copy of an e-mail chain between myself and Plaintiff's attorney regarding H&H invoices that were inadvertently sent to Plaintiff's home address.

5.      Attached hereto as Exhibit B is a true and correct copy of Plaintiff Randy Dossat's Supplemental Responses to Hoffman-La Roche, Inc.'s Requests for Interrogatories.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct and if called upon as a witness I could and would competently testify thereto.

Dated: **April 30, 2010**

Robert L. Rosenthal

# EXHIBIT A

**Rosenthal, Robert L.**

| | |
|---|---|
| **From:** | Lani Esteban-Trinidad [lani@ltrinidadlaw.com] |
| **Sent:** | Friday, February 20, 2009 1:38 PM |
| **To:** | Rosenthal, Robert L. |
| **Subject:** | RE: Communication Re: Randy Dossat |

Rob -

As promised, I confirmed the manner and method by which my client received the second billing invoice from your office.

To clarify, your client mailed via regular U.S. mail, the second invoice to my client's home address on or about February 13, 2008 (postmark). My client has the original mailed envelope, inside this envelope was another gray envelope marked "Interoffice Mail" addressed to my client from Accounts Payable, that interoffice mail envelope contained your original invoice to your client. There is also a sticky note on your original Invoice to my Client from from Alice Chow asking Randy Dossat to please advise a purchase order number.

The first invoice was also mailed to by your client to my client at his home address.  My client received the first invoice January 9, 2009.

I hope this helps your client prevent this situation from occurring again.

Lani

**Esteban-Trinidad Law, P.C.**
**4315 N. Rancho Drive, Ste 110**
**Las Vegas, Nevada 89130**
**Tel: (702) 736-5297**
**Fax: (702) 736-5299**
**E-Mail: lani@ltrinidadlaw.com**
**Web: www.ltrinidadlaw.com**

--- On **Thu, 2/19/09, Rosenthal, Robert L. <*rrosenthal@HowardandHoward.com*>** wrote:

> From: Rosenthal, Robert L. <rrosenthal@HowardandHoward.com>
> Subject: RE: Communication Re: Randy Dossat
> To: lani@ltrinidadlaw.com
> Date: Thursday, February 19, 2009, 6:23 PM
>
> Lani,
>
> I took "inter-office mail" to mean e-mail.  I now understand what you meant.
>
> Thanks,
>
> Rob

Robert L. Rosenthal
Howard & Howard
3800 Howard Hughes Parkway, Ste. 1400
Las Vegas, NV 89169
Tel: (702) 257-1483
Fax: (702) 567-1568
E-mail: rrosenthal@howardandhoward.com CONFIDENTIALITY NOTE: This message, and any attachments transmitted with it, is being sent by or on behalf of an attorney. It is intended exclusively for the individual(s) or entity(ies) to which it is addressed. This communication may contain information that is attorney work-product, proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee(s) or intended recipient(s), you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and telephone, and delete all copies thereof. Thank you.

-----Original Message-----
**From:** Lani Esteban-Trinidad [mailto:lani@ltrinidadlaw.com]
**Sent:** Thursday, February 19, 2009 6:20 PM
**To:** Rosenthal, Robert L.
**Subject:** RE: Communication Re: Randy Dossat

What e-mail? There is no e-mail.  As with the first invoice that my client recieved, an individual delivered the second invoice to my client via "inter-office mail."

*Esteban-Trinidad Law, P.C.*
**4315 N. Rancho Drive, Ste 110**
**Las Vegas, Nevada 89130**
**Tel: (702) 736-5297**
**Fax: (702) 736-5299**
**E-Mail: lani@ltrinidadlaw.com**
**Web: www.ltrinidadlaw.com**

--- On **Thu, 2/19/09, Rosenthal, Robert L. <*rrosenthal@HowardandHoward.com*>** wrote:

From: Rosenthal, Robert L. <rrosenthal@HowardandHoward.com>
Subject: RE: Communication Re: Randy Dossat
To: lani@ltrinidadlaw.com
Date: Thursday, February 19, 2009, 6:12 PM

Lani,

Please forward me a copy of the e-mail.

Robert L. Rosenthal
Howard & Howard
3800 Howard Hughes Parkway, Ste. 1400
Las Vegas, NV 89169
Tel: (702) 257-1483
Fax: (702) 567-1568
E-mail: rrosenthal@howardandhoward.com CONFIDENTIALITY NOTE: This message, and any attachments transmitted with it, is being sent by or on behalf of an attorney. It is intended exclusively for the individual(s) or entity(ies) to which it is addressed. This

communication may contain information that is attorney work-product, proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee(s) or intended recipient(s), you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and telephone, and delete all copies thereof. Thank you.

-----Original Message-----
**From:** Lani Esteban-Trinidad [mailto:lani@ltrinidadlaw.com]
**Sent:** Thursday, February 19, 2009 6:04 PM
**To:** Rosenthal, Robert L.
**Subject:** RE: Communication Re: Randy Dossat

Rob,

Your client delivered the invoice to Randy Dossat, at work, via inter-office mail. I believe the instructions to Mr. Dossat were to make arrangements for a check to be issued in payment of your bill, I can clarify the precise instructions to my client on this for you tomorrow. It might also be helpful to note that the invoice has my client's name on it.

Lani

### Esteban-Trinidad Law, P.C.
**4315 N. Rancho Drive, Ste 110**
**Las Vegas, Nevada 89130**
**Tel: (702) 736-5297**
**Fax: (702) 736-5299**
**E-Mail: lani@ltrinidadlaw.com**
**Web: www.ltrinidadlaw.com**

--- On **Thu, 2/19/09, Rosenthal, Robert L.**
**<rrosenthal@HowardandHoward.com>** wrote:

> From: Rosenthal, Robert L. <rrosenthal@HowardandHoward.com>
> Subject: RE: Communication Re: Randy Dossat
> To: lani@ltrinidadlaw.com
> Date: Thursday, February 19, 2009, 4:27 PM
>
> Lani,
>
> In order to assist my client in determining how our invoices -- which are clearly privileged -- were inadvertently sent to Mr. Dossat and how to prevent this from ever occurring again, I would like to send a runner over to your office to retrieve the documents, including the envelope(s).
>
> Your cooperation would be appreciated.
>
> Sincerely,
>
> Rob Rosenthal

Robert L. Rosenthal
Howard & Howard
3800 Howard Hughes Parkway, Ste. 1400
Las Vegas, NV 89169
Tel: (702) 257-1483
Fax: (702) 567-1568
E-mail: rrosenthal@howardandhoward.com CONFIDENTIALITY NOTE:
This message, and any attachments transmitted with it, is being sent by or
on behalf of an attorney. It is intended exclusively for the individual(s) or
entity(ies) to which it is addressed. This communication may contain
information that is attorney work-product, proprietary, privileged,
confidential or otherwise legally exempt from disclosure. If you are not the
named addressee(s) or intended recipient(s), you are not authorized to
read, print, retain, copy or disseminate this message or any part of it. If
you have received this message in error, please notify the sender
immediately by e-mail and telephone, and delete all copies thereof. Thank
you.

-----Original Message-----
**From:** Lani Esteban-Trinidad [mailto:lani@ltrinidadlaw.com]
**Sent:** Thursday, February 19, 2009 1:51 PM
**To:** Rosenthal, Robert L.
**Subject:** Communication Re: Randy Dossat

February 19, 2009

Mr. Rosenthal:

Today, we received from our client, Randy
Dossat, your billing statement to your
client, Hoffman La Roche, Inc. dated
February 5, 2009 Bill Number 104331 -
00001 - 322265. As you know, this is the
second time that your client sent and/or
delivered to Mr. Dossat a copy of your
billing statements for services you
rendered in defense of my client's claims
against your client. The first time this
happened, we notified you immediately, as
we are doing today and returned a copy of
the bill to your office.

The billing statement my client received today
references work that you have done on behalf
of your client. The billing statement contains
facts that support our client's contention, as set
forth in the federal complaint recently filed,
that Hoffman-La Roche, Inc. intended to

terminate Mr. Dossat from his employment on or about the date that you and/or your client learned that Mr. Dossat has requested his Right to Sue Letter from the EEOC. We believe that this billing statement establishes clear retaliatory motive on part of Hoffman-La Roche, Inc., as set forth in the federal complaint.

Please be advised that the Nevada Supreme Court amended Rule 4.4. (formerly Supreme Court Rule 184). The Rule does not require recipients to return otherwise confidential and/or privileged documents or communications that may have inadvertently been delivered to opposing counsel. I am sending you this e-mail to notify you that we have received a copy of the above referenced bill.


Sincerely,
Lani Esteban-Trinidad

**Esteban-Trinidad Law, P.C.**
**4315 N. Rancho Drive, Ste 110**
**Las Vegas, Nevada 89130**
**Tel: (702) 736-5297**
**Fax: (702) 736-5299**
**E-Mail: lani@ltrinidadlaw.com**
**Web: www.ltrinidadlaw.com**

# EXHIBIT B

1  Esteban-Trinidad Law, P.C.
   M. LANI ESTEBAN-TRINIDAD
2  Nevada Bar No. 006967
   4315 N. Rancho Drive, Ste. 110
3  Las Vegas, Nevada  89130
   Telephone: (702) 736-5297
4  Fax: (702) 736-5299
5
6  Attorney for Plaintiff
   RANDY DOSSAT
7                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEVADA
8
9  RANDY DOSSAT, an individual;                    )
                                                   )
10                        Plaintiff,               )     Case No. 2:09-cv-00245-KJD-PAL
                                                   )
11 vs.                                             )
                                                   )
12 HOFFMANN-LA ROCHE, INC. dba ROCHE              )
   LABS, a New Jersey Corporation; ROCHE          )
13 LABS, INC., a corporation, DOES 1 through 10,  )
   inclusive; ROES CORPORATIONS/ENTITIES 1        )
14 through 10 inclusive,                           )
                                                   )
15                        Defendants.              )
                                                   )
16 _____)

17      **PLAINTIFF RANDY DOSSAT'S SUPPLEMENTAL RESPONSES TO HOFFMAN-LA**
18              **ROCHE, INC.'S REQUESTS FOR INTERROGATORIES**

19      Plaintiff RANDY DOSSAT, by and through his attorney of record, pursuant to Rule 33 of the

20 Federal Rules of Civil Procedure (FRCP), hereby submits his Supplemental Responses to Defendants

21 Requests for Interrogatories as follows:

22 **INTERROGATORY NO. 1:**

23      Identify any and all DOCUMENTS which support the allegations contained in your Complaint,

24 or the issues arising therefrom. Please state specifically (by bates stamp number or document title)

25 which documents support each allegation.

26 **RESPONSE:**

27      1.    Email to Koptchev to Company dated November 6, 2008 (RD00001)

28      2.    Email to Dossat from Holloway dated October 2, 2008 (RD00002)

3.      Performance Improvement Plan March 18, 2009 (RD00003-RD00010).

4.      Discrimination Complaints (RD00011-RD00014).

5.      Year End Sheet (RD00015).

6.      Email to Dossat from Holloway dated December 21, 2007 (RD00016).

7.      Memos (RD00017-RD00021).

8.      Performance Management Form July 31, 2007 (RD00022-RD00034).

9.      Right to Sue Letters (RD00035-RD00038).

10.    Letter from Holloway to Dossat dated September 25, 2008 (RD00039-RD00041).

11.    Letter from Holloway to Dossat dated February 11, 2008 (RD00042-RD00044).

12.    Email from Melissa Hoffman to Rick Perez, et al. dated March 9, 2008 (RD00045-RD00046).

13.    Pictures of "Boniva is on United." (RD00047-RD00048).

14.    Randy Dossat's Notes dated January 29, 2009 through February 6, 2009 (RD00049-RD00056).

15.    Boniva Literature (RD00057-RD00058).

16.    Randy Dossat Email re: Access Ideas dated January 15, 2007 (RD00059-RD00067).

17.    Email dated July 14, 2007 from Randy Dossat to Jennifer Van Buskirk (RD00068).

18.    Performance Management Form dated December 5, 2006 (RD00069-RD00072).

19.    Written Warning dated December 10, 2007 (RD00073-RD00074).

20.    Written Warning dated August 13, 2007 (RD00075-RD00076).

21.    Email dated March 10, 2008 from Michael Tonery to James Holloway et al. (RD00077-RD00078).

22.    On-Site Request Order Form (RD00079).

23.    Email dated February 7, 2009 from Randy Dossat to Angie Rojas (RD00080)

24.    Region 7 Kick Off Meeting Documentation (RD00081-RD00127).

25.    EEOC Documents Produced Per Subpoena (RD00128-RD00364).

26.    Dossat personnel file (DEF 00001- DEF 00012).

27.    7/12/2007 and 7/14/2007 e-mail chain between Holloway to Dossat (DEF 00013-

DEF 00015)

28.    8/13/2007 written warning (DEF 00016 – DEF 00017)

29.    7/31/2007 Mid-Year Review and 12/10/2007 Year-End Review (DEF 00018-DEF00030)

30.    11/12/2007 e-mail from Dossat to Santa Ana and Mansell with attachments designated as 2007 T-1 Review DDD Presentationl.ppt (DEF 00031 –DEF00035).

31.    12/10/2007 e-mail from Holloway to Dossat with attached written warning (DEF00036 A-B)

32.    12/14/2007 e-mail from Dossat to Santa Ana with attached internal complaint (DEF00037 – DEF 00040)

33.    2/26/008 Dossat internal complaint with attachments (incorrectly dated "2007") (DEF 00041 – DEF 00054)

34.    3/17/2008 Memo from Cohen and Koptchev to Holloway regarding Closure o Complaint Review (DEF 00055)

35.    6/13/2008 NERC Charge of Discrimination and Response (DEF 00056-DEF00215).

36.    9/25/2008 letter from Holloway to Dossat (DEF 00216 – DEF 00218)

37.    10/2/2008 e-mail from Holloway to Dossat regarding Mid-Year Review (DEF00219 – DEF 00220)

38.    10/27/2008 e-mail from Dossat to Koptchev regarding Mid-Year Review (DEF00221 – DEF 00223)

39.    1/14/2009 letter from NERC regarding case closure (DEF 00224)

40.    2/9/2009 EEOC Charge of Discrimination and Response (DEF 00225-DEF 00429).

41.    2/11/2009 letter from Holloway to Dossat regarding 2008 performance improvement plan (incorrectly dated "2008") (DEF 00430 – DEF 00432)

42.    3/18/2009 Dossat Performance Improvement Plan (DEF 00433 – DEF 00440)

43.    3/18/2009 Holloway typewritten notes memorializing meeting with Dossat to discuss Performance Improvement Plan (DEF 00441 – DEF 00442)

44.     3/20/2009 e-mail from Dossat to Holloway with attached T1 2009 business plan (DEF 00443 – DEF 00447)

45.     5/8/2009 EEOC Notice of Right to sue (DEF 00448 – DEF 00449)

46.     Roche Business Practices, Policies and Procedures (DEF 00450 – DEF 00519) Equal Opportunity Policy (DEF 00520 – DEF 00523)

47.     2008 Variable Pay Plan (DEF 00524 – DEF 00536).

48.     Discipline Policy (DEF 00537 – DEF 00542)

49.     Emails by or to Holloway regarding Dossat (DEF 00543- DEF 00729)

50.     HR handwritten notes (DEF 00730 – DEF 00778)

51.     Sale Representatives with addresses redacted (DEF 00779 – DEF 00790)

52.     Audit Materials (DEF 00791 – DEF 00805)

53.     Variable pay and Quarterly Reports & Rewards (DEF00828-DEF00861).

54.     Division Manager managing in a regulatory environment dated May 19, 2997 (DEF00862-DEF00920).

55.     Managing in regulatory environment, current version (DEF00921-DEF01028).

56.     Reaffirmation Notices Regarding Policies and Procedures sent to all employees for 2007-2007 (DEF01029-DEF01032).

57.     Plaintiff's Job Profile (DEF01033-DEF01043).

58.     Dossat Short Term Disability File (DEF00806-DEF00827).

59.     Disk Containing Dossat of Archived Emails

60.     Employer's Quarterly Contribution and Wage Report (DEF1044-DEF1076).

61.     Exhibits A through B attached to Defendants' Responses to Requests for Production of Documents

**SUPPLEMENTAL RESPONSE:**

In addition to the above documents, Plaintiff discloses, in response to this Interrogatory, all additional documents referenced by bate-stamp number in these supplemental responses to Defendant's interrogatories.

**INTERROGATORY NO. 2:**

Please describe every incident of discrimination based on age as alleged in your Complaint, including the identification of the individual(s) engaging in such discrimination, the location, date and

time, and context of the discrimination, the identification of any and all persons who witnessed the discrimination, as well as any documents which substantiate the discrimination.

**RESPONSE:**

Please see Plaintiff's Complaint, Plaintiff's Age Discrimination Complaints (RD00011-RD00014), and Plaintiff's Statement in Support of NERC Charges of Discrimination (RD00290-RD00291, RD00322-RD00323, and RD00362-RD00363).

**SUPPLEMENTAL RESPONSE:**

Plaintiff supplements his response to Interrogatory No. 2 as follows:

1) On January 3, 2007, Mr. Holloway commenced discriminatory comments and behavior against Plaintiff because of his age, over forty (40) years old.  On this date, Plaintiff and Mr. Holloway attended a Commercial Leadership Meeting in Florida for all of the Company Sales Managers. Plaintiff and Mr. Holloway were sitting at lunch at the Gaylord Palms Hotel with Sales Manager Shawn Michael and Sales Manager Mike Tonery.  During their conversation about management styles and methods, Mr. Holloway called Plaintiff "Old School" in a demeaning tone after listening to Plaintiff's opinions on micromanagement versus macro-management.  (*See* RD00011). Plaintiff immediately stopped talking and silently finished his lunch while Mr. Holloway engaged in conversations with the other managers.

2) On May 25, 2007, Mr. Holloway and Regional Business Manager LeRoy Oroszco conducted a Business Review with Plaintiff. During this four (4)-hour review, Mr. Holloway declared that Plaintiff's methods of managing his team as being "Old School" and highlighted what methods Mr. Holloway wanted Plaintiff to implement. Plaintiff interpreted this comment as noting that Plaintiff was old.

3) On June 8, 2007, Defendants' former Human Resources Manager Chuchie Santa Ana contacted Plaintiff to inform Plaintiff that his request for education assistance was denied by Mr. Holloway – when Plaintiff believes that other, younger managers received approvals for this assistance.

4) On or about July 11, 2007, Mr. Holloway met with Plaintiff to discuss the results of the Regional Contest which his division, Division 706- San Bernardino, had won. The goal of the contest was to increase market share. Mr. Holloway recommended that the sales teams call on their top one hundred (100) physicians in a five (5) week period to increase market share. Plaintiff, having understood that the rules governing the contest were not the recommendations by Mr. Holloway, Plaintiff directed his team, who did not have top one hundred (100) physicians due to their individual territory characteristics, to go down the list of physicians instead to secure the goal of the contest. As a result, Division 706 increased market share the most of all divisions by two percent (2%). (*See* RD0556). Mr. Holloway questioned Plaintiff's direction on obtaining the winning results. Mr. Holloway commented to Plaintiff that Mr. Holloway felt that a manager of Plaintiff's "tenure" would give more specific direction. Plaintiff interpreted this comment as referring to Plaintiff's age. (*See* RD00011). Mr. Holloway questioned how the Company should pay the contest out as the representatives followed Plaintiff's directions. Plaintiff recommended that the Company could pay the team members by a percentage based upon their territory characteristics, their time spent engaged in the contest, and their individual numbers.

5) On July 31, 2007, Mr. Holloway called Plaintiff into the Regional Office in Ontario, California for purposes of discussing Plaintiff's Mid-Year Review. Plaintiff made his presentation on sales. During this presentation, Plaintiff highlighted his business plan mid-year review, his sales numbers, the fact that his division was the best sales in the region and second best sales in the United States for True Growth, and Plaintiff noted that his sales representatives, Donna Amanovic and Catherine Dam, were the #1 and #2 best salespersons in the nation for True Growth. Mr. Holloway subsequently commented that based on Plaintiff's "tenure [which Plaintiff interpreted to refer to his age] [Mr. Holloway said he would suggest/like to see Plaintiff] begin to provide more direction to his team in the form of coaching opportunities." (*See* RD00028). Mr. Holloway also told Plaintiff that he "must accept the realization that times have changed" and that Plaintiff must do everything that he can to avoid the perception of playing in the gray area. (*See* RD00029). Once again, Plaintiff interpreted this recommendation as a remark

on his age. Mr. Holloway commented that he was disappointed in Plaintiff's lapse in judgment at the Pri-Med Convention in Anaheim, California earlier this year because Plaintiff displayed an unapproved banner during this meeting which made unsubstantiated claims about Boniva and that the poster could have been viewed by the FDA the Company's competition in a negative way and could have possibly resulted in a hefty fine for the Company. Mr. Holloway concluded that given the fact that Plaintiff was a "Senior Manager on the team," which again Plaintiff interpreted as a comment about his age, Mr. Holloway did not expect this activity to happen again. (*See* RD00033). These comments can be found in Plaintiff's Age Discrimination Complaint (RD00011), July 31, 2007 Performance Management Form (RD0545-RD0555), and December 10, 2007 Performance Management Form (RD00022-RD00034), and incorporated herein by reference.

6) On August 13, 2007, after a Manager's Meeting in San Diego, California, Mr. Holloway requested Plaintiff meet him in the lobby of the hotel. During this brief meeting, Mr. Holloway handed Plaintiff a written-warning for a "Blue Book Guideline Violation" for hanging the sign at the Pri-Med Convention which occurred back on May 10, 2007—an offense which is less serious than claimed during the July 31, 2007 meeting and which the punishment is more severe than a typical violation of this kind. (*See* DEF00016-DEF00017). Also during this meeting, Mr. Holloway informed Plaintiff that he "did not expect this from a Division Sales Manager with [Plaintiff's] tenure." (*See* RD00011).

7) On October 29, 2007, Defendants held a Regional Manager meeting in Ontario, California wherein Mr. Holloway and Ms. Santa Ana asked Plaintiff to get into contact with a representative. Contrary to prior company policy, Mr. Holloway and Ms. Santa Ana terminated this representative behind Plaintiff's back – a process which is Plaintiff's responsibility.

8) On December 10, 2007, Mr. Holloway met with Plaintiff for his Year-End Review in Ontario, California. Immediately, Mr. Holloway handed Plaintiff his Mid-Year Review from July 31, 2007 with Mr. Holloway's manager comments. Mr. Holloway stated "sorry, I am a little behind." Mr. Holloway told Plaintiff that Plaintiff might not be a good match for the new environment with the Company. Mr. Holloway told Plaintiff that he "should think real, real, real hard" if the position of Division Sales Manager in the West Region is the right career choice for Plaintiff. (*See* RD00012). Mr. Holloway also suggested that if Plaintiff should choose to leave the Division Sales Manager position, Mr. Holloway would help Plaintiff. Mr. Holloway also informed Plaintiff that "as a manager with [Plaintiff's] tenure, [Mr. Holloway] would expect that [Plaintiff] find a way to improve [his] decision-making process." (*See* RD00033). Also during this meeting, Mr. Holloway provided Plaintiff with another Written Warning concerning an alleged recent and random Accounts Payable audit. Mr. Holloway commented that "this was [Plaintiff's] second clear lapse of judgment," which Plaintiff interpreted as a comment on Plaintiff's age and memory therein. (*See* RD00013 and DEF00036(A)-DEF00036(B)). Plaintiff inquired as to why it had taken Mr. Holloway such a long period of time to provide Plaintiff with the previous Written Warning concerning the alleged May incident, and that this alleged offense may have been prevented if Mr. Holloway had provided Plaintiff with the Written Warning form the Alleged May incident. Mr. Holloway requested that Plaintiff sign the Written Warning to which Plaintiff requested time to review the same. Mr. Holloway then became very aggressive, and Plaintiff felt threatened. (*See* RD00012). Plaintiff thus believed that the two Written Warnings given by Mr. Holloway were part of Mr. Holloway's discrimination against him by reason of his age. (*See* RD00013). These written warnings are incorporated herein by this reference.

9) On or about December of 2007, Plaintiff complained to Ms. Santa Ana concerning Mr. Holloway's discriminatory behavior. (*See* RD00011).

10) On February 22, 2008, Mr. Holloway called Plaintiff to inform Plaintiff that he will not have any increase in salary because Plaintiff's evaluation "Does Not Meet Rating," even though Plaintiff's sales for 2007 were ranked as some of the highest in the United States throughout Defendants' sixty-one (61) Divisions. Plaintiff informed Mr. Holloway that he did not agree with this notion. Mr. Holloway informed Plaintiff that this was Mr. Holloway's decision and hung up the phone shortly thereafter.

11) On March 10, 2008, Division Manager Michael Tonery sent out a regional-wide email to all Division Manager, including Plaintiff and Mr. Holloway, highlighting best practices of promoting a product. Upon review of this email, some of these practices are Blue Book Guideline violations and FDA violations. (*See* RD00045). However, neither Defendants nor Mr. Holloway ever disciplined or warned the managers and/or representatives who initiated these practices. In fact, Defendants legitimized these practices for product promotion, even though these practices violated Blue Book Guidelines. (*See* RD00045).

12) On March 17, 2008, Ms. Cohen and Ms. Kratschmer contacted Plaintiff and informed Plaintiff that Defendants had closed their investigations on Plaintiff's complaints on the ground that Ms. Cohen and Ms. Kratschmer did not find evidence to substantiate Plaintiff's claims. (*See* RD00017).

13) During the week of April 7, 2008 in San Diego, California for a Commercial Leadership Meeting, Mr. Holloway informed Plaintiff that it is top priority to fill open territories as other managers have already done so. Throughout this week, Plaintiff interviewed over fifteen (15) candidates for a position to fill an open territory in Glendale, California. Plaintiff had narrowed his search down to one individual whom only needed a final interview from Mr. Holloway before Plaintiff could extend a job offer. Mr. Holloway subsequently informed Plaintiff that Mr. Holloway did not have time to interview Plaintiff's potential hire. Mr. Holloway was aware that

Plaintiff could not hire this candidate without Mr. Holloway's approval, therefore, delaying the process to which Mr. Holloway deemed a top priority.

14) The following week of April 14, 2008, Mr. Holloway and Plaintiff attended a Regional Managers' Meeting in Portland, Oregon. During this time, Ms. Cohen gave a brief presentation on the methods of which Defendants' employees should file a complaint for discrimination. Ms. Cohen mentioned, during this presentation, that in all instances of discrimination complaints against an employee, the employee who committed the alleged discriminatory act must be notified of the complaint against them and who made the complaint. Plaintiff interpreted this statement as a threat and as confirmation that Mr. Holloway was aware of Plaintiff's complaints against Mr. Holloway. Later in the week, Plaintiff again attempted to schedule a final interview of his potential new hire with Mr. Holloway. Once again, Mr. Holloway noted that he was too busy, gave Plaintiff to approval to hire the candidate, but warned Plaintiff that this candidate's performance was all on Plaintiff.

15) On June 2, 2008, Plaintiff filed complaint with the Nevada Equal Rights Commission and/or the Equal Employment Opportunity Commission. (*See* RD 00388-RD00390).

16) During the last week of July of 2008, Plaintiff attended another Regional Managers' Meeting in San Diego, California. Mr. Holloway requested that Plaintiff stay after the meeting to conduct Plaintiff's Mid-Year Review.

17) On August 1, 2008, Mr. Holloway, Mr. Orosczo, and Regional Director Christian Kamphel conducted Plaintiff's Mid-Year Review in San Diego, California. Plaintiff conducted a sixty-six (66) power-point slide presentation. After the presentation, Mr. Holloway asked Mr. Orosczo to leave. Mr. Kamphel remained. Mr. Holloway then mentioned an expense report from May of 2008 concerning Los Angeles exemptions – an action which should have been mentioned back in May of 2008. Mr. Holloway mentions Plaintiff is either "unwilling or unable to grasp the

importance of this competency." Plaintiff interpreted this statement as a remark on his age in context of all above mentioned age-related comments directed by Mr. Holloway towards Plaintiff. (*See* DEF00217).

18) On September 25, 2008, Mr. Holloway provided Plaintiff with a letter concerning the August 1, 2008 review meeting. In this document, Mr. Holloway neglects to reference any information about Plaintiff's sales numbers when during this time, Plaintiff was #1 out of the eight (8) Divisions in the Region and #1 out of sixty-one (61) Divisions in the United States. (*See* DEF00216-DEF00218).

19) On October 27, 2008, Plaintiff sent Ms. Kratschmer an email responding to Mr. Holloway's Mid-Year Review letter and noting the missing information necessary for a complete Mid-Year performance review. (*See* DEF00221-DEF00222).   Plaintiff never received any return reply in this regard.

20) On January 9, 2009, Plaintiff received legal invoicing from Defendants' counsel at his home address. Immediately, Plaintiff provided this document to his counsel, and Plaintiff's counsel advised Defendants' counsel of its receipt therein.

21) On January 21, 2009, the Equal Employment Opportunity Commission issued a Right to Sue letter. (*See* RD00377). On the same day, Mr. Holloway conducted Plaintiff's Year-End Review meeting in Ontario, California. During this brief meeting, Mr. Holloway informed Plaintiff that he felt that Plaintiff was still not meeting performance standards. When Plaintiff mentioned that sales were not mentioned in the Mid-Year Review, Mr. Holloway informed Plaintiff that it is not about sales, it is how you get there. Unlike Plaintiff's previous review, which was conducted during the NERC investigation of Plaintiff's claims, Plaintiff was given a poor performance review and Defendants had seemed to completely change their idea concerning Plaintiff's performance.

22) On January 29, 2009, Defendants' Vice President of Sales Tim George and Ms. Kratschmer called Plaintiff into a meeting in San Diego, California during the last day of the Regional Sales Meeting. During this meeting, Mr. George and Ms. Krastchmer attempted to coerce Plaintiff into resigning his position with the Company by taking a severance package or face the consequence of a Performance Improvement Plan to be administered by Mr. Holloway. (*See* RD00049-RD00055). Mr. George informed Plaintiff that "we want to make this a comfortable and amiable environment," and "this is the first time that we have really talked." Mr. George claimed that Plaintiff would receive a "Does Not Meet" on his evaluation.   Plaintiff mentioned that he disagreed with the previous and current rating of "Does Not Meet" on his performance. Mr. George inquired if Plaintiff received Mr. Holloway's Year-End Review letter. Plaintiff informed Mr. George that he had not been provided one yet. Ms. Kratschmer inquired if Plaintiff had seen the comments in Plaintiff's Performance Management Yearbook online. Plaintiff informed Ms. Kratschmer that he had not seen any comments online. Mr. George stated that this notion did not make a difference because Plaintiff would still receive a "Does Not Meet." Mr. George further refused to discuss any previous Written Warnings or evaluations. Mr. George informed Plaintiff that "they were at a crossroads" and that there may be options that Plaintiff would be interested in and should inquire about. Ms. Kratschmer then reviewed the severance package offer with Plaintiff. Mr. George stated he realized that Plaintiff had a big decision to make and could take sometime to decide.

23) On or about February 6, 2009, Ms. Kratschmer contacted Plaintiff via telephone to continue to discuss resignation options. Ms. Kratschmer continued to harass Plaintiff with a coerced resignation on at least three (3) separate occasions via telephone and/or voicemail. The same day, Plaintiff contacted Ms. Kratschmer telephonically that Plaintiff wanted to remain employees and would do whatever it took to ensure he would finish his years of employment and one day retire. (*See* RD00056).

24) On February 11, 2009, Mr. Holloway provided Plaintiff with the Year-End Review letter in the presence of Ms. Krastchmer. (*See* DEF00430-DEF00432). This letter further referenced the Mid-Year Review expenses issue that Plaintiff rebutted. Plaintiff inquired if Ms. Kratschmer received Plaintiff's rebuttal of this allegation, to which Ms. Kratschmer revealed that she did indeed receive Plaintiff's e-mail.

25) On February 13, 2009, Plaintiff received another legal invoice – this time in the Interoffice Mail. This invoice stated that on January 21, 2009 and January 22, 2009 that Defendants' were preparing to terminate Plaintiff's employment with Defendant.

26) On March 18, 2009, Mr. Holloway and Plaintiff attended the Commercial Leadership Meeting in Chicago, Illinois. After the meeting, Mr. Holloway and Mr. Kamphel informed Plaintiff that Plaintiff would be placed on a Performance Improvement Plan for ninety (90) days. During this time, Plaintiff was also provided a written Performance Improvement Plan. (*See* DEF00433-DEF00442). Plaintiff informed Mr. Holloway afterward that he needed some time off for a family emergency. Mr. Holloway informed Plaintiff that any emergency has no bearing on the deliverables of the Performance Improvement Plan, and therefore, the Performance Improvement Plan necessities should be provided to Mr. Holloway by March 20, 2009.

27) On March 20, 2009, Plaintiff provided the said deliverables to Mr. Holloway. (*See* DEF00443-00447).

28) From March 31, 2009 until June 19, 2009, Plaintiff was on short-term medical leave due to a shoulder surgery. (*See* RD00460).

29) From June 19, 2009 through July 6, 2009, Plaintiff was on vacation.

30) On July 6, 2009, Plaintiff contacted Mr. Holloway, via telephone, wherein Mr. Holloway informed Plaintiff that Plaintiff was still on the Performance Improvement Plan and that Mr. Holloway would follow-up with Plaintiff to adjust the dates.

31) On July 15, 2009, Plaintiff met with Mr. Holloway in San Diego, California wherein Mr. Holloway discussed the addendum and the timelines to the Performance Improvement Plan and the necessity of report to be completed by July 20, 2009. Mr. Holloway inquired if that deadline was acceptable. Plaintiff informed Mr. Holloway that there would be Manager's Meetings for a few days and that Plaintiff could complete the reports by July 24, 2009.

32) On July 22, 2009, Mr. Holloway provided Plaintiff with the Addendum to the Performance Improvement Plan and informed Plaintiff that he would have until July 28, 2009 to complete the said reports. (*See* DEF 004580-DEF004590).

33) On August 17, 2009, Plaintiff was working in Glendale, California and completing the hiring interviews for another candidate awaiting their final interview by Mr. Holloway. Mr. Holloway again approved the hire without an interview, and then, in a threatening tone, stated Plaintiff needed to be in San Francisco on August 21, 2009 for a meeting although My. Holloway was aware of Plaintiff's previous flight arrangements. Plaintiff interpreted this serious tone and cautious manner as a hint that Mr. Holloway would be terminating Plaintiff.

34) On August 18, 2009, Plaintiff met with his physician, Dr. William Schofield, who recommended that Plaintiff take leave for work-related stress until November 22, 2009. (*See* RD00475-RD00476).   Plaintiff was approved for Short-Term Disability Leave, at reduced pay, from August 18, 2009 to November 23, 2009. Just as Plaintiff's leave was about to end, on or about November 15, 2009, Defendants sent Plaintiff his "final" paycheck evidencing an apparent "pay-out" on all his accrued vacation pay – which is a typical action only when an employee has been terminated from employment.   (*See* RD00516). Because Mr. Holloway was Plaintiff's

supervisor, Plaintiff knew (being a supervisor himself) that Mr. Holloway had to approve sign off on the vacation-pay out. This is one reason Plaintiff believes Mr. Holloway used to retaliate against Plaintiff for complaining about age-related comments. Plaintiff immediately called his physician, Dr. Schofield, to determine if Plaintiff could in fact return to work right away, in effort to stop efforts of Defendants to terminate his employment. Dr. Schofield provided Plaintiff with a return to work release (*See* RD00469-RD00478).

35) On November 17, 2009, Defendants posted Plaintiff's position, Division Sales Manager (job location in Southern California) as an open position. (*See* RD0557-RD0565).

36) On November 18, 2009, Plaintiff sent Mr. Holloway and e-mail, advising Mr. Holloway that Plaintiff would be returning to work on November 23, 2009. (*See* RD0566). While Plaintiff was on leave, he attempted to log into Defendants' Benefits website to sign-up for Plaintiff's 2010 Benefits. However, the system would not allow Plaintiff to log-in. Plaintiff contact Integrated Disability Representative Minnie Mincey concerning the log-in error. Ms. Mincey informed Plaintiff that Plaintiff was "deactivated" in the system because termination documentation had been sent to payroll for him. Plaintiff subsequently contacted Defendants' payroll department and these representatives received termination notification, and Plaintiff informed this department that he was scheduled to return to work.

37) On November 23, 2009, Plaintiff returned to work from leave and contacted Mr. Holloway per Mr. Hollway's request. (*See* RD0567). Mr. Holloway informed Plaintiff that he was still under the Performance Improvement Plan and that Mr. Holloway would contact Plaintiff later to set-up a time to review. Mr. Holloway never contacted Plaintiff to schedule a meeting.

38) On December 11, 2009, Mr. Holloway called an emergency meeting San Francisco of all Division Managers that reported to Mr. Holloway. This meeting concerned a survey conducted by a third-party company called Aubrey Daniels wherein Mr. Holloway was surveyed by all

Division Managers, his peers, and Senior Vice President Dick Hinson. Plaintiff did not complete a survey for this evaluation. Mr. Holloway informed those present that he reviewed the survey results, and he was surprised, shocked, and embarrassed about his management style and techniques. Mr. Holloway then apologized for his actions, and promised to do things differently in the future.

39) On December 17, 2009, Mr. Holloway contacted Plaintiff concerning certain deliverables that Plaintiff needed to complete by January 4, 2010. This deadline forced Plaintiff to work over the year-end closing holidays. (See RD0568).

40) On December 31, 2009, Plaintiff received his first paycheck upon his return, Plaintiff found that his previously paid-out vacation pay was deducted from his earnings to show a return in the system. (*See* RD00517).

41) On January 4, 2010, Plaintiff provided Mr. Holloway the said deliverables.

42) From January 5, 2010 through January 7, 2010, Plaintiff attended a Managers' Meeting in Ontario, California. On January 6, 2010, Mr. Holloway called Plaintiff into his office and told Plaintiff that he needed to make plans to attend a meeting in San Francisco, on January 8, 2010, and that Plaintiff "better bring his 'A' game and all of things he had done for his Performance Improvement Plan in 2009." Mr. Holloway was aware that this notion was an inconvenience to Plaintiff's travel schedule in an effort to put undue pressure on Plaintiff.

43) On January 8, 2010, Plaintiff reported to San Francisco per Mr. Holloway's orders. During this time, Plaintiff presented Mr. Holloway and Ms. Kratschmer with his 2010 Quarter 1 Business Plan and 2010 Fast Start Plan. (*See* RD0569-RD0600). Mr. Holloway and Ms. Kratschmer met with Plaintiff to inform him that they would be restarting the Performance Improvement Plan. (*See* RD0601-RD0611). Performance Improvement Plan- Addendum II). This was the first time

Mr. Holloway had met with Plaintiff since the onset of the Performance Improvement Plan of March of 2008.

44) On January 18, 2010, Defendants once again posted Plaintiff's position as an open position. (*See* RD0612-RD0620).

45) On January 25, 2010, while Plaintiff was signing in to the National Sales Meeting in Las Vegas, Nevada, Defendants agents informed Plaintiff that he needed to retake his picture because he did not have one in the system. Plaintiff can only speculate that the Defendants' removed him from the system during the time of his "termination" as referenced above, or in preparation for a future possible termination.

Pursuant to his obligations under the Rules, Plaintiff will supplement his response if and when additional information becomes available through the discovery period.

**INTERROGATORY NO. 3:**

For every incident of discrimination by Defendants, or any employee thereof, identified in your responses to Interrogatory 2 above, state whether you reported and/or complained (formally or informally, in writing or verbally) about the incident to anyone employed by Defendants. In the event such a report or complaint was made, please describe the contents of the report and/or complaint, identify the date of each such report and/or complaint, identify the person to whom the report and/or complaint was made and identify any action taken by any entity or person in response to such report and/or complaint.

**RESPONSE:** Please see Plaintiff's Complaint, Plaintiff's Age Discrimination Complaints (RD00011-RD00014), and Plaintiff's Statement in Support of NERC Charges of Discrimination (RD00290-RD00291, RD00322-RD00323, and RD00362-RD00363).

**SUPPLEMENTAL RESPONSE:**

Plaintiff supplements his response to Interrogatory No. 3 as follows:

1) <u>Oral Complaint to Mr. Holloway:</u>  On December 10, 2007, during a meeting with Mr. Holloway, Plaintiff complained to Mr. Holloway asking why it had taken Mr. Holloway such a long period of time to provide Plaintiff with a previous Written Warning concerning the

alleged May incident, and that this alleged offense may have been prevented if Mr. Holloway had provided Plaintiff with the Written Warning form the Alleged May incident. On the date Plaintiff complained to Mr. Holloway, Mr. Holloway met with Plaintiff for his Year-End Review in Ontario, California. Immediately, Mr. Holloway handed Plaintiff his Mid-Year Review from July 31, 2007 with Mr. Holloway's manager comments. Mr. Holloway stated "sorry, I am a little behind." Mr. Holloway told Plaintiff that Plaintiff might not be a good match for the new environment with the Company.   Mr. Holloway told Plaintiff that he "should think real, real, real hard" if the position of Division Sales Manager in the West Region is the right career choice for Plaintiff. (*See* RD00012). Mr. Holloway also suggested that if Plaintiff should choose to leave the Division Sales Manager position, Mr. Holloway would help Plaintiff. Mr. Holloway also informed Plaintiff that "as a manager with [Plaintiff's] tenure, [Mr. Holloway] would expect that [Plaintiff] find a way to improve [his] decision-making process." (See RD00033). Also during this meeting, Mr. Holloway provided Plaintiff with another Written Warning concerning an alleged recent and random Accounts Payable audit.  Mr. Holloway commented that "this was [Plaintiff's] second clear lapse of judgment," which Plaintiff interpreted as a comment on Plaintiff's age and memory therein. (*See* RD00013 and DEF00036(A)-DEF00036(B)). Mr. Holloway requested that Plaintiff sign the Written Warning to which Plaintiff requested time to review the same. Mr. Holloway then became very aggressive, and Plaintiff felt threatened. (*See* RD00012). Plaintiff thus believed that the two Written Warnings given by Mr. Holloway were part of Mr. Holloway's discrimination against him by reason of his age. (*See* RD00013).  These written warnings are incorporated herein by this reference.

2) First Complaint to Human Resources: On December 14, 2007, having grown tired of all the harassment that Plaintiff was suffering from Mr. Holloway, Plaintiff filed an age discrimination complaint with Defendant's Human Resources personnel, specifically, Ms. Santa Ana, citing each and every incident of the discriminatory actions to date. (*See* RD00011-RD00013), incorporated herein by this reference.

3) On January 16, 2008, Human Resources Manager Sharon Cohen, and another manager to whom Plaintiff does not recall, contacted Plaintiff via telephone to discuss Plaintiff's Complaint. Ms. Cohen requested specific information concerning the incidents of Plaintiff's complaint, but informed Plaintiff that she would not discuss the Written Warnings. Ms. Cohen informed Plaintiff that she was investigating this complaint and would get back to Plaintiff.

4) Second Complaint: On February 26, 2008, Plaintiff filed a second complaint of discrimination and retaliation with Ms. Cohen and Ms. Kratschmer citing each and every incident of discrimination and retaliation to date. (See RD00014). In March of 2008, Ms. Cohen and Ms. Kratschmer contacted Plaintiff to discuss the incidences in Plaintiff's second complaint. During this telephone call, Ms. Cohen and Ms. Kratschmer informed Plaintiff that they were in the process of completing the investigation of Plaintiff's first and second complaint, finalize their decision therein, and discussed Plaintiff's new hire.

5) Decisions of Defendants: On March 17, 2008, Ms. Cohen and Ms. Kratschmer contacted Plaintiff and informed Plaintiff that Defendants had closed their investigations on Plaintiff's complaints on the ground that Ms. Cohen and Ms. Kratschmer did not find evidence to substantiate Plaintiff's claims. (See RD00017).

6) Charges of Discrimination with Nevada Equal Rights Commission (NERC) and/or Equal Employment Opportunity Commission (EEOC): On June 2, 2008, Plaintiff filed complaint with the Nevada Equal Rights Commission (NERC) and/or Equal Employment Opportunity Commission (EEOC) citing all discriminatory and retaliatory actions to date. (See RD 00388-RD00390), incorporated herein by this reference.

7) Charges of Discrimination with Equal Employment Opportunity Commission: On February 26, 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission citing the January 29, 2009 incident, Ms. Kratschmer's subsequent harassment, and continuing retaliation.

Pursuant to his obligations under the Rules, Plaintiff will supplement his response if and when additional information becomes available through the discovery period.

**INTERROGATORY NO. 4:**

Please describe every incident of retaliation as alleged in your Complaint, including the identification of the individual(s) engaging in such retaliation, the location, date and time, and context of the retaliation, the identification of any and all persons who witnessed the retaliation, as well as any documents which substantiate the retaliation.

**RESPONSE:**  Please see Plaintiff's Complaint, Plaintiff's Age Discrimination Complaints (RD00011-RD00014), and Plaintiff's Statement in Support of NERC Charges of Discrimination (RD00290-RD00291, RD00322-RD00323, and RD00362-RD00363).

**SUPPLEMENTAL RESPONSE:**

Plaintiff supplements his response to Interrogatory No. 4 as follows:

Each and every incident of retaliation for Plaintiff's complaints is a follows:

1) On February 22, 2008, Mr. Holloway called Plaintiff to inform Plaintiff that he will not have any increase in salary because Plaintiff's evaluation "Does Not Meet Rating," even though Plaintiff's sales for 2007 were ranked as some of the highest in the United States throughout Defendants' sixty-one (61) Divisions.

2) On March 17, 2008, Ms. Cohen and Ms. Kratschmer contacted Plaintiff and informed Plaintiff that Defendants had closed their investigations on Plaintiff's complaints on the ground that Ms. Cohen and Ms. Kratschmer did not find evidence to substantiate Plaintiff's claims. (*See* RD00017).

3) On April 14, 2008, Ms. Cohen gave a brief presentation on the methods of which Defendants' employees should file a complaint for discrimination. Ms. Cohen mentioned, during this presentation, that in all instances of discrimination complaints against an

employee, the employee who committed the alleged discriminatory act must be notified of the complaint against them and who made the complaint. Plaintiff interpreted this statement as a threat and as confirmation that Mr. Holloway was aware of Plaintiff's complaints against Mr. Holloway.

4) Later in the week, Plaintiff again attempted to schedule a final interview of his potential new hire with Mr. Holloway. Once again, Mr. Holloway noted that he was too busy, gave Plaintiff to approval to hire the candidate, but warned Plaintiff that this candidate's performance was all on Plaintiff.

5) On August 1, 2008, Mr. Holloway, Mr. Oroszco, and Regional Director Christian Kamphel conducted Plaintiff's Mid-Year Review in San Diego, California. Mr. Holloway then mentioned an expense report from May of 2008 concerning Los Angeles exemptions – an action which should have been mentioned back in May of 2008. Mr. Holloway mentions that Plaintiff is either "unwilling or unable to grasp the importance of this competency." Plaintiff interpreted this statement as a remark on his age. (*See* DEF00217).

6) On September 25, 2008, Mr. Holloway provided Plaintiff with a letter concerning the August 1, 2008 review meeting. In this document, Mr. Holloway neglected to reference any information about Plaintiff's sales numbers when during this time, Plaintiff was #1 out of the eight (8) Divisions in the Region and #1 out of sixty-one (61) Divisions in the United States. (*See* DEF00216-DEF00218).

7) On October 27, 2008, Plaintiff sent Ms. Kratschmer an email responding to Mr. Holloway's Mid-Year Review letter and noting the missing information necessary for a complete Mid-Year performance review. (*See* DEF00221-DEF00222).  Plaintiff never received any return reply in this regard.

8) On January 21, 2009, the Equal Employment Opportunity Commission issued a Right to Sue letter. (*See* RD00377). On the same day, Mr. Holloway conducted Plaintiff's Year-End Review meeting in Ontario, California. During this brief meeting, Mr. Holloway informed Plaintiff that he felt that Plaintiff was still not meeting performance standards. When Plaintiff mentioned that sales were not mentioned in the Mid-Year Review, Mr. Holloway informed Plaintiff that it is not about sales, it is how you get there. Unlike Plaintiff's previous review, which was conducted during the NERC investigation of Plaintiff's claims, Plaintiff was given a poor performance review and Defendants had seemed to completely change their idea concerning Plaintiff's performance.

9) On January 29, 2009, Defendants' Vice President of Sales Tim George and Ms. Kratschmer called Plaintiff into a meeting in San Diego, California during the last day of the Regional Sales Meeting. During this meeting, Mr. George and Ms. Krastchmer attempted to coerce Plaintiff into resigning his position with the Company by taking a severance package or face the consequence of a Performance Improvement Plan to be administered by Mr. Holloway. (*See* RD00049-RD00055). Mr. George informed Plaintiff that "we want to make this a comfortable and amiable environment," and "this is the first time that we have really talked." Mr. George claimed that Plaintiff would receive a "Does Not Meet" on his evaluation. Plaintiff mentioned that he disagreed with the previous and current rating of "Does Not Meet" on his performance. Mr. George inquired if Plaintiff received Mr. Holloway's Year-End Review letter. Plaintiff informed Mr. George that he had not been provided one yet. Ms. Kratschmer inquired if Plaintiff had seen the comments in Plaintiff's Performance Management Yearbook online. Plaintiff informed Ms. Kratschmer that he had not seen any comments online. Mr. George stated that this notion did not make a difference because Plaintiff would still receive a "Does Not Meet." Mr. George further refused to discuss any previous Written Warnings or evaluations. Mr. George informed Plaintiff that "they were at a crossroads" and that there may be options that Plaintiff would be interested in and should inquire about. Ms. Kratschmer then

reviewed the severance package offer with Plaintiff. Mr. George stated he realized that Plaintiff had a big decision to make and could take sometime to decide.

10) On or about February 6, 2009, Ms. Kratschmer contacted Plaintiff via telephone to continue to discuss resignation options. Ms. Kratschmer continued to harass Plaintiff with a coerced resignation on at least three (3) separate occasions via telephone and/or voicemail.

11) On February 11, 2009, Mr. Holloway provided Plaintiff with the Year-End Review letter in the presence of Ms. Krastchmer. (*See* DEF00430-DEF00432). This letter further referenced the Mid-Year Review expenses issue that Plaintiff rebutted. Plaintiff inquired if Ms. Kratschmer received Plaintiff's rebuttal of this allegation, to which Ms. Kratschmer revealed that she did indeed receive Plaintiff's e-mail.

12) On February 13, 2009, Plaintiff received another legal invoice – this time in the Interoffice Mail. This invoice stated that on January 21, 2009 and January 22, 2009 that Defendants' were preparing to terminate Plaintiff.

13) On March 18, 2009, Mr. Holloway and Plaintiff attended the Commercial Leadership Meeting in Chicago, Illinois. After the meeting, Mr. Holloway and Mr. Kamphel informed Plaintiff that Plaintiff would be placed on a Performance Improvement Plan for ninety (90) days. During this time, Plaintiff was also provided a written Performance Improvement Plan. (*See* DEF00433-DEF00442). Plaintiff informed Mr. Holloway afterward that he needed some time off for a family emergency. Mr. Holloway informed Plaintiff that any emergency has no bearing on the deliverables of the Performance Improvement Plan, and therefore, the Performance Improvement Plan necessities should be provided to Mr. Holloway by March 20, 2009.

14) On July 6, 2009, Plaintiff contacted Mr. Holloway, via telephone, wherein Mr. Holloway informed Plaintiff that Plaintiff was still on the Performance Improvement Plan and that Mr. Holloway would follow-up with Plaintiff to adjust the dates.

15) On July 15, 2009, Plaintiff met with Mr. Holloway in San Diego, California wherein Mr. Holloway discussed the addendum and the timelines to the Performance Improvement Plan and the necessity of report to be completed by July 20, 2009.

16) On July 22, 2009, Mr. Holloway provided Plaintiff with the Addendum to the Performance Improvement Plan and informed Plaintiff that he would have until July 28, 2009 to complete the said reports. (_See_ DEF 004580-DEF004590).

17) On August 17, 2009, Plaintiff was working in Glendale, California and completing the hiring interviews for another candidate awaiting their final interview by Mr. Holloway. Mr. Holloway again approved the hire without an interview, and then, in a threatening tone, stated Plaintiff needed to be in San Francisco on August 21, 2009 for a meeting although My. Holloway was aware of Plaintiff's previous flight arrangements. Plaintiff interpreted this serious tone and cautious manner as a hint that Mr. Holloway would be terminating Plaintiff.

18) On or about November 15, 2009, Defendants sent Plaintiff his "final" paycheck evidencing an apparent "pay-out" on all his accrued vacation pay – which is a typical action only when an employee has been terminated from employment. (_See_ RD00516). Because Mr. Holloway was Plaintiff's supervisor, Plaintiff knew (being a supervisor himself) that Mr. Holloway had to approve sign off on the vacation-pay out. This is one reason Plaintiff believes Mr. Holloway used to retaliate against Plaintiff for complaining about age-related comments.

19) On November 17, 2009, Defendants posted Plaintiff's position, Division Sales Manager (job location in Southern California) as an open position.

20) While Plaintiff was on leave, he attempted to log into Defendants' Benefits website to sign-up for Plaintiff's 2010 Benefits. However, the system would not allow Plaintiff to log-in. Plaintiff contact Integrated Disability Representative Minnie Mincey concerning the log-in error. Ms. Mincey informed Plaintiff that Plaintiff was "deactivated" in the system because termination documentation had been sent to payroll for him. Plaintiff subsequently contacted Defendants' payroll department and these representatives received termination notification, and Plaintiff informed this department that he was scheduled to return to work.

21) On November 23, 2009, Mr. Holloway informed Plaintiff that he was still under the Performance Improvement Plan. Mr. Holloway did not contact Plaintiff to schedule a meeting.

22) On December 17, 2009, Mr. Holloway contacted Plaintiff concerning certain deliverables that Plaintiff needed to complete by January 4, 2010. This deadline forced Plaintiff to work over the year-end closing holidays.

23) On January 6, 2010, Mr. Holloway called Plaintiff into his office and told Plaintiff that he needed to make plans to attend a meeting in San Francisco, on January 8, 2010, and that Plaintiff "better bring his 'A' game and all of things he had done for his Performance Improvement Plan in 2009." Mr. Holloway was aware that this notion was an inconvenience to Plaintiff's travel schedule in an effort to put undue pressure on Plaintiff.

24) On January 8, 2010, Plaintiff reported to San Francisco per Mr. Holloway's orders. Mr. Holloway and Ms. Kratschmer met with Plaintiff to inform him that they would be restarting the Performance Improvement Plan. This was the first time Mr. Holloway had met with Plaintiff since the onset of the Performance Improvement Plan of March of 2008.

25) On January 18, 2010, Defendants once again posted Plaintiff's position as an open position.

26) On January 25, 2010, while Plaintiff was signing in to the National Sales Meeting in Las Vegas, Nevada, Defendants agents informed Plaintiff that he needed to retake his picture because he did not have one in the system. Plaintiff can only speculate that the Defendants' removed him from the system during the time of his "termination" as referenced above, or in preparation for a future possible termination.

Pursuant to his obligations under the Rules, Plaintiff will supplement his response if and when additional information becomes available through the discovery period.

**INTERROGATORY NO. 5:**

For every incident of retaliation by Defendants, or any employee thereof, identified in your responses to Interrogatory 3 above, state whether you reported and/or complained (formally or informally, in writing or verbally) about the incident to anyone employed by Defendants. In the even such a report of complaint was made, please describe the contents of the report and/or complaint, identify the date of each such report and/or complaint, identify the person to whom the report and/or complaint was made and identify any action taken by any entity or person in response to such report and/or complaint.

**RESPONSE:** Please see Plaintiff's Complaint, Plaintiff's Age Discrimination Complaints (RD00011-RD00014), and Plaintiff's Statement in Support of NERC Charges of Discrimination (RD00290-RD00291, RD00322-RD00323, and RD00362-RD00363).

**SUPPLEMENTAL RESPONSE:**

Plaintiff supplements his response to Interrogatory No. 5 above as follows:

1) <u>Second Complaint</u>: On February 26, 2008, Plaintiff filed a second complaint of discrimination with Ms. Cohen and Ms. Kratschmer citing each and every incident of discrimination and retaliation to date. (*See* RD00014). In March of 2008, Ms. Cohen and Ms. Kratschmer contacted Plaintiff to discuss the incidences in Plaintiff's second complaint. During this telephone call, Ms. Cohen and Ms. Kratschmer informed Plaintiff that they were in the process of completing the investigation of Plaintiff's first and second complaint, finalize their decision therein, and discussed Plaintiff's new hire.

2) <u>Decisions of Defendants</u>: On March 17, 2008, Ms. Cohen and Ms. Kratschmer contacted Plaintiff and informed Plaintiff that Defendants had closed their investigations on Plaintiff's complaints on the ground that Ms. Cohen and Ms. Kratschmer did not find evidence to substantiate Plaintiff's claims. (*See* RD00017).

3) <u>Charges of Discrimination with Nevada Equal Rights Commission</u>: On June 2, 2008, Plaintiff filed complaint with the Nevada Equal Rights Commission citing all discriminatory and retaliatory actions to date. (*See* RD 00388-RD00390).

4) <u>Charges of Discrimination with Equal Employment Opportunity Commission</u>: On February 26, 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission citing the January 29, 2009 incident, Ms. Kratschmer's subsequent harassment, and continuing retaliation.

5) Apart from the above and foregoing, Plaintiff does not know what other actions, if any, were taken by any other entity or person in response to such report and/or complaint by Plaintiff because Plaintiff is only aware of the actions that Defendants state that they have taken or have in fact taken, any other actions, if any, Defendants would have knowledge of any such actions.

Pursuant to his obligations under the Rules, Plaintiff will supplement his response if and when additional information becomes available through the discovery period.

..

..

..

**INTERROGATORY NO. 6:**

Describe fully the nature of each item or type of harm or damages, including any from mental or emotional distress, you contend resulted from any of the acts and/or omissions constituting the bases of any of the causes of action in your Complaint, including but not limited to:

(a)     The actual or estimated monetary amount of each item of damages; and

(b)     How you calculated each item of damages claimed.

**RESPONSE:**  Plaintiff's damages, include, but are not limited to, lost wages upon time of termination, amount of money he made while employed with Defendants minus any money Plaintiff will make through other efforts.   At this point, precise damage calculations, as requested by the compounded interrogatory, are premature.  Plaintiff is asking the jury for damages stemming from emotional trauma and punitive damages.  Plaintiff will be providing expert testimony at appropriate time.  Plaintiff is currently waiting for an extension of time within which to make initial expert disclosures, including disclosures concerning damages.  Plaintiff will provide information responsive to Interrogatory No. 6 upon such time as Plaintiff's initial expert disclosures are made.

**SUPPLEMENTAL RESPONSE:**

Plaintiff supplements his response to Interrogatory No. 6 as follows:

1) Plaintiff responds with the phrase "upon time of termination" because Plaintiff is aware of at least two (2) incidences where Defendants have attempted to terminate, or had in fact terminated, Plaintiff's employment, from terminated to active employee. These incidences are relevant to Plaintiff's emotional distress damages as a result on becoming aware of Defendants retaliatory efforts to terminate Plaintiff's employment as a result of his filing complaints of age discrimination and retaliation with Defendants and applicable administrative agencies. Specifically, these incidences are as follows:

(a)     On February 13, 2009, Plaintiff received another legal invoice – this time in the Interoffice Mail. This invoice stated that on January 21, 2009 and January 22, 2009 that Defendants' were preparing to terminate Plaintiff.

(b)     On November 18, 2009, Plaintiff sent Mr. Holloway and e-mail, advising Mr. Holloway that Plaintiff would be returning to work on November 23, 2009. While Plaintiff was on leave, he attempted to log into Defendants' Benefits website to sign-up for Plaintiff's 2010 Benefits. However, the system would not allow Plaintiff to log-in. Plaintiff contact Integrated Disability Representative Minnie Mincey concerning the log-in error. Ms. Mincey informed Plaintiff that Plaintiff was "deactivated" in

the system because termination documentation had been sent to payroll for him. Plaintiff subsequently contacted Defendants' payroll department and these representatives received termination notification, and Plaintiff informed this department that he was scheduled to return to work

2) Without assistance of his expert on his economic damages, Plaintiff estimates that his damages for lost wages and compensation are approximately One Hundred Fifty Thousand Dollars ($150,000.00). Plaintiff based this calculation upon and estimation of (1) Plaintiff's Variable Pay Loss, (2) Lost Wages from March 2008-March 2010, (3) Short Term Disability Wage Loss, (4) effects on Plaintiff's retirement plan, (5) Contest Loss, and (6) President's Club Losses.  Plaintiff will supplement his response to this Interrogatory as soon as the report of his expert witness on economic damages, Stan Smith, becomes available and no later than the deadline recently imposed by the Court to provide such report to Defendants.

3) Emotional Damages.  Without assistance of his expert on economic damages and/or emotional damages, Plaintiff has not been able to place a financial figure upon his emotional damages due to the unknown severity of them. Plaintiff believes that he is entitled to the maximum allowable under the law. Plaintiff's emotional damages, include, bit are not limited to: work-related stress and post-traumatic stress and related symptoms. Plaintiff awaits Dr. Karen Cruey's expert report before Plaintiff can speculate as to his emotional damages.  Plaintiff will provide Dr. Karen Cruey's report and Stan Smith's report, as soon as this report becomes available to him and no later than the deadline established by the Court.

Pursuant to his obligations under the Rules, Plaintiff will supplement his response if and when additional information becomes available through the discovery period.

**INTERROGATORY NO. 7:**

If plaintiff has discuss either the subject matter of this litigation, the allegations contained in his Complaint, or any facts supporting or denying the allegations contained in his Complaint, with any person other than Plaintiff's counsel of record, including but not limited to present or former employees of Defendant, employees or representatives of any agency of the local, state, or federal government, health care provider or any representative or any health care proved, please identify each such person and describe fully the nature and date of the discussions Plaintiff had with that individual.

**RESPONSE:**  Plaintiff has not discussed these matters with anyone apart from his counsel of record, spouse, and health care providers. The exact dates of discussion are unknown to Plaintiff. The nature of these discussions were made for purposes of healthcare treatments and/or damages calculations.

**SUPPLEMENTAL RESPONSE:**

Plaintiff supplements his response to Interrogatory No. 7 as follows:

1. Plaintiff's healthcare providers are:

  a) Dr. Karen Cruey, MD
    Psychiatrist
    2340 Paseo del Prado, # D207
    Las Vegas, Nevada 89102

  b) Dr. William Schofield, MD
    Primary Care Physician
    861 Coronado Center Drive, Suite 103
    Henderson, Nevada 89052

  c) Dr. Steven C. Thomas, MD
    Orthopedic Surgeon
    9499 West Charleston Boulevard
    Las Vegas, Nevada 89117

2. **Dates & Nature of Plaintiff's Discussions with Dr. Karen Cruey:**

 a) October 5, 2009: Initial Evaluation: Dr. Cruey conducted an initial evaluation of Plaintiff's psychological history and current psychological status. During this time, Plaintiff discussed the facts of this case in order to convey the severity of his work-related stress.

 b) November 5, 2009: Office Visit- Follow-Up: Dr. Cruey followed-up with Plaintiff to review the ongoing facts concerning the case, his emotions concerning his work, and status of his psychological condition.

 c) December 4, 2009: Office Visit- Follow-Up: Dr. Cruey followed-up with Plaintiff to review the ongoing facts concerning the case, his emotions concerning his work, and status of his psychological condition.

 d) January 15, 2010: Office Visit-Follow-Up: Dr. Cruey followed-up with Plaintiff to review the ongoing facts concerning the case, his emotions concerning his work, and status of his psychological condition.

3.    **Dates & Nature of Plaintiff's Visits with Dr. William Schofield:**

a)   September 10, 2008: Office Visit:  General Visit.

b)   December 16, 2008: VIP Physical Examination: Annual Physical.

c)   July 10, 2009: Office Visit: General Visit.

d)   August 18, 2009: Office Visit: General Visit.

e)   September 1, 2009: Office Visit: General Visit.

f)   September 25, 2009: Office Visit: General Visit.

g)   October 21, 2009: Office Visit: General Visit.

h)   December 18, 2009: VIP Physical Examination: Annual Physical.

4.    **Dates & Nature of Plaintiff's Visits with Dr. Steven Thomas:**

a)   February 9, 2009: Office Visit and Shoulder X-Rays.

b)   March 27, 2009: Office Visit: EST Level Reviews.

c)   March 31, 2009: Arthroscopy and related procedures.

d)   April 1, 2009: PT Evaluation and Therapy

e)   April 3, 2009: Therapy

f)   April 6, 2009: Therapy

g)   April 8, 2009: Therapy

h)   April 9, 2009: Therapy

i)   April 15, 2009: Therapy

j)   April 17, 2009: Therapy

k)   April 20, 2009: Therapy

l)   April 22, 2009: Therapy

m)   April 24, 2009: Therapy

n) <u>April 27, 2009</u>: Therapy

o) <u>April 29, 2009</u>: Post Op

p) <u>April 29, 2009</u>: Therapy

q) <u>May 1, 2009</u>: Therapy

r) <u>May 6, 2009</u>: Therapy

s) <u>May 13, 2009</u>: Supply Arm. & Therapy

t) <u>May 20, 2009</u>: Therapy

u) <u>May 27, 2009</u>: Therapy

v) <u>June 3, 2009</u>: Therapy

w) <u>June 10, 2009</u>: Post Op & Therapy

x) <u>July 1, 2009</u>: Therapy

y) <u>July 20, 2009</u>: Office Visit: EST Level

3.    The nature of Plaintiff's discussions with each of his healthcare providers has included information concerning the facts of this case and the work-related stress imposed upon Plaintiff thereof for purposes of determining how this work-related stress affects Plaintiff's health and damages therein. To the extent that Defendants have now subpoenaed all records from Plaintiff's physicians, Defendants will have access to notes concerning each such visit.

Pursuant to his obligations under the Rules, Plaintiff will supplement his response if and when additional information becomes available through the discovery period.

**INTERROGATORY NO. 8:**

If you contend that, as a result of my acts or omissions by Defendant described and/or referenced in your Complaint, you suffered any physical or mental injury, illness or condition when it arose, as well as all evaluations, meetings, and treatments you have undergone or received for such harm along with the date(s), doctor(s), hospital(s), and/or other health care provider(s) involved in such treatment(s).

**RESPONSE:** Plaintiff's damages, include, but are not limited to, lost wages upon time of termination, amount of money he made while employed with Defendants minus any money Plaintiff will make through other efforts. At this point, precise damage calculations, as requested by the compounded interrogatory, are premature. Plaintiff is asking the jury for damages stemming from emotional trauma and punitive damages. Plaintiff will be providing expert testimony at appropriate time. Plaintiff is currently waiting for an extension of time within which to make initial expert disclosures, including disclosures concerning damages. Plaintiff will provide information responsive to Interrogatory No. 6 upon such time as Plaintiff's initial expert disclosures are made.

**SUPPLEMENTAL RESPONSE:**

Defendants Interrogatory No. 8 is substantively identical to Defendants Interrogatory Nos. 6 and 7, respectively. Accordingly, Plaintiff provided information responsive to this request in Plaintiff's Supplemental Response to Requests Numbers 6 and 7 herein above. The dates, the doctor and health care provider involved in treatment are disclosed herein above. To the extent that Defendants have now subpoenaed records from Plaintiff's physicians and Plaintiff has executed a release of his medical records to Defendants, Defendants will have documents containing information more adequately responsive to this request. In addition, Plaintiff is still anticipating the report of Dr. Karen Cruey, one of his physicians. This report will provide Defendants will additional information necessary to respond to this Request. Accordingly, Plaintiff's will supplement their response to this request as soon as Dr. Cruey's report becomes available.

**INTERROGATORY NO. 9:**

Please set forth the factual basis of your allegation in the Amended portion of your Charge of Discrimination that Plaintiff had requested any reasonable accommodation and that any such request for reasonable accommodation was denied, including the accommodation(s) Plaintiff or his wife requested, the method of Plaintiff's or his wife's request(s) (verbally in person, in writing, by e-mail, over the telephone, etc.), the date(s) on which each accommodation was requested, and to whom each request for accommodation.

**RESPONSE:** Please see Plaintiff's Complaint, Plaintiff's Age Discrimination Complaints (RD00011-RD00014), and Plaintiff's Statement in Support of NERC Charges of Discrimination and related documents (RD00290-RD00291, RD00322-RD00323, RD00338, and RD00362-RD00363).

..

..

**SUPPLEMENTAL RESPONSE:**

Plaintiff does not recall any such incidence where he requested accommodation or his wife request accommodation apart from the short-term disability and/or FMLA leave to which Plaintiff already had filed. Plaintiff has reviewed his Charges of Discrimination, and does not see any such amendment involving accommodation. Plaintiff's only Amendment to his recollection was to add "retaliation" on his Formal Charges of Discrimination. If you contend that there is an amendment, please advise. Pursuant to his obligations under the Rules, Plaintiff will supplement his response if and when additional information becomes available through the discovery period.

**INTERROGATORY NO. 12:**

Please set forth the factual basis of your allegation in paragraph 37 of your Complaint that "ROCHE knew of should have known with the exercise of minimum due diligence that certain ROCHE employees, agents, management, and/or representatives, would harass, discriminate, and/or subject Plaintiff to age discrimination and other retaliatory actions as alleged herein above in violation of federal and state law". If any information responsive to this Interrogatory is contained or otherwise referenced in any document(s), identify the document(s) by bates number.

**RESPONSE:**  Please see Plaintiff's Complaint, Plaintiff's Age Discrimination Complaints (RD00011-RD00014), and Plaintiff's Statement in Support of NERC Charges of Discrimination (RD00290-RD00291, RD00322-RD00323, and RD00362-RD00363).

**SUPPLEMENTAL RESPONSE:**

Plaintiff believes that an employer has a duty to exercise due diligence of its employees, agents, management, or representatives to ensure that the workplace is free of harassment, discrimination, and retaliation under Title VII of the Civil Rights Act of 1964.

Defendants hired James Holloway, a younger, less experienced employee, to be Plaintiff's manager. From the time of Mr. Holloway's hire, Mr. Holloway has subjected Plaintiff to discrimination and retaliation.

Plaintiff complained to Defendants, including Ms. Santa Ana about Mr. Holloway's discriminatory actions. Defendants, through Ms. Cohen, Ms. Kratschmer, and any other agents or employees, failed to adequately investigate Plaintiff's claims. During the entire period that any alleged investigation into Plaintiff's complaints by Defendants were on-going, Defendants informed Mr. Holloway about Plaintiff's charge of discrimination against Mr. Hollow and continued to allow Mr. Holloway to supervise, interact with and/or otherwise continue to relate to Plaintiff in a manner that

affected the terms and conditions of Plaintiff's employment.  Plaintiff believes that Defendants should have, upon notice of a complaint of age discrimination, maintained confidentiality of investigation into the complaint and/or otherwise ensure that Mr. Holloway would not be in a position to take retaliatory steps against Plaintiff, while investigation into his claims were pending.

By failing to do so, Defendants retaliated against Plaintiff. Plaintiff complained again to Ms. Cohen and Ms. Kratschmer. Defendants, through Ms. Kratschmer and Mr. Geroge, attempted to coerce Plaintiff to quit, and when Plaintiff did not give in, Defendants terminated and immediately rehired Plaintiff.

As of recent, Mr. Holloway was given an Evaluation of his performance by third-party company Aubrey Daniels. Plaintiff did not participate in this evaluation. As such, Mr. Holloway received such poor results that Defendants required Mr. Holloway to apologize to the entire managerial staff.

Defendants have not only failed and neglected to discipline Mr. Holloway for his discriminatory and retaliatory behavior, but also have not disciplined Mr. Holloway for his poor evaluation. Defendants have also failed to discipline and/or investigate Plaintiff's claims against Ms. Kratschmer, Mr. George, Ms. Cohen, and Ms. Santa Ana. Therefore, Defendants' have failed to exercise due diligence with regard to Mr. Holloway, Ms. Santa Ana, Mr. George, Ms. Cohen, and Ms. Kratschmer.

Plaintiff also believes that his complaint of discrimination is not the only complaint of discrimination filed by another employee against Mr. Holloway.  Defendants are aware that Mr. Holloway has been subject of at least one other complaint of unlawful discrimination and/or harassment, but continued to employ Mr. Holloway and allow him to continue in a position of control over the terms and conditions of Plaintiff's employment.

Pursuant to his obligations under the Rules, Plaintiff will supplement his response if and when additional information becomes available through the discovery period.

**INTERROGATORY NO. 13:**

Please set forth the factual basis of your allegation in paragraph 43 of your Complaint filed Federal Court that "Defendant ROCHE knew or should have known that its employees and certain of its management members were engaged in activities contrary to the ADEA, and to the laws of the State of Nevada, and nonetheless, Defendant ROCHE allowed these employees, to remain in their employment". If any information responsive to this Interrogatory is contained or otherwise referenced in any document(s), identify the document(s) by bates number.

**RESPONSE:**  Please see Plaintiff's Complaint, Plaintiff's Age Discrimination Complaints (RD00011-RD00014), and Plaintiff's Statement in Support of NERC Charges of Discrimination (RD00290-RD00291, RD00322-RD00323, and RD00362-RD00363).

**SUPPLEMENTAL RESPONSE:**

As noted in Supplemental Response to Request No. Number 12, Plaintiff believes that an employer has a duty to exercise due diligence of its employees, agents, management, or representatives to ensure that the workplace is free of harassment, discrimination, and retaliation under Title VII of the Civil Rights Act of 1964. This includes discrimination under ADEA and under the laws of the State of Nevada. In short, an employer has a responsibility to observe and manage its employees.

As previously noted, Defendants hired James Holloway, a younger, less experienced employee, to be Plaintiff's manager. From the time of Mr. Holloway's hire, Mr. Holloway has subjected Plaintiff to discrimination and retaliation.

Plaintiff complained to Ms. Santa Ana about Mr. Holloway's discriminatory actions. Defendants, through Ms. Cohen, Ms. Kratschmer, and any other agents or employees, failed to investigate Plaintiff's claims. Defendants retaliated against Plaintiff. Plaintiff complained again to Ms. Cohen and Ms. Kratschmer. Defendants, through Ms. Kratschmer and Mr. George, attempted to coerce Plaintiff to quit, and when Plaintiff did not give in, Defendants terminated and immediately rehired Plaintiff.

As of recent, Mr. Holloway was given an Evaluation of his performance by third-party company Aubrey Daniels. Plaintiff did not participate in this evaluation. As such, Mr. Holloway received such poor results that Defendants required Mr. Holloway to apologize to the entire managerial staff.

Defendants have failed and neglected to exercise due diligence with regard to Mr. Holloway, Ms. Santa Ana, Mr. George, Ms. Cohen, and Ms. Kratschmer.

Plaintiff also believes that his complaint of discrimination is not the only complaint of discrimination filed by another employee against Mr. Holloway.  Defendants are aware that Mr. Holloway has been subject of at least one other complaint of unlawful discrimination and/or harassment, but continued to employ Mr. Holloway and allow him to continue in a position of control over the terms and conditions of Plaintiff's employment.

Pursuant to his obligations under the Rules, Plaintiff will supplement his response if and when additional information becomes available through the discovery period.

**INTERROGATORY NO. 14:**

Identify each and every individual whom you contend engaged in any conduct, act, or omission that you believe justifies and award of punitive damages against Defendant and fully describe each action and/or omission of each such individual that you believe justifies an award of punitive damages against Defendants, including but not limited to a specific description of the conduct and the date, place, and time of such conduct.

**RESPONSE:** James Holloway, Tim George, and Kristine Koptchek as referenced in Plaintiff's Complaint, Plaintiff's Age Discrimination Complaints (RD00011-RD00014), and Plaintiff's Statement in Support of NERC Charges of Discrimination (RD00290-RD00291, RD00322-RD00323, and RD00362-RD00363).

**SUPPLEMENTAL RESPONSE:**

Plaintiff believes that punitive damages are appropriate because the decisions relating to Plaintiff's complaints of age discrimination and retaliation were made from Mr. Holloway up to the tp-level management employees, including but not limited to, Tim George and individuals that Mr. George directly reports to. Plaintiff supplements this response to provide all such descriptions, dates and places of such conduct. Plaintiff does not provide times because Plaintiff can only provide information responsive to this request based on his knowledge and understanding. There may be other facts, including, dates, names, places, and/or times, that would support an award of punitive damages that Defendants are privy to and that may come to light at time of trial in this case. Plaintiff supplements his response as follows:

1.    James Holloway: Mr. Holloway has repeatedly discriminated against Plaintiff through various comments and actions, as set forth specifically herein above. Mr. Holloway has also retaliated against Plaintiff for Plaintiff's complaints by deterring Plaintiff's employment with overly severe punishments for minor or no behaviors, reducing Plaintiff's bonuses, harassing and/or threatening Plaintiff, subjecting Plaintiff to a hostile work environment, repeatedly placing Plaintiff on Performance Improvement Plans and their subsequent addendums, and other related behaviors.

Specifically, these actions were:

   a)  On January 3, 2007, Mr. Holloway commenced discriminatory comments and behavior against Plaintiff because of his age, over forty (40) years old. On this date, Plaintiff and Mr. Holloway attended a Commercial Leadership Meeting in Florida for all of the Company Sales Managers. During their conversation about management styles and

methods, Mr. Holloway called Plaintiff "Old School" in a demeaning tone after listening to Plaintiff's opinions on micromanagement versus macro-management. (*See* RD00011).

b)  On May 25, 2007, Mr. Holloway and Regional Business Manager LeRoy Oroszco conducted a Business Review with Plaintiff. During this four (4)-hour review, Mr. Holloway declared that Plaintiff's methods of managing his team as being "Old School" and highlighted what methods Mr. Holloway wanted Plaintiff to implement. Plaintiff interpreted this comment as noting that Plaintiff was old.

c)  On June 8, 2007, Defendants' former Human Resources Manager Chuchie Santa Ana contacted Plaintiff to inform Plaintiff that his request for education assistance was denied by Mr. Holloway – when other, younger managers received approvals for this assistance.

d)  On or about July 11, 2007, Mr. Holloway met with Plaintiff to discuss the results of the Regional Contest which his division, Division 706- San Bernardino, had won. Mr. Holloway commented to Plaintiff that Mr. Holloway felt that a manager of Plaintiff's "tenure" would give more specific direction. Plaintiff interpreted this comment as referring to Plaintiff's age. (*See* RD00011).

e)  On July 31, 2007, Mr. Holloway called Plaintiff into the Regional Office in Ontario, California for purposes of discussing Plaintiff's Mid-Year Review. Plaintiff made his presentation on sales. Mr. Holloway subsequently commented that based on Plaintiff's "tenure [which Plaintiff interpreted to refer to his age] [Mr. Holloway said he would suggest/like to see Plaintiff] begin to provide more direction to his team in the form of coaching opportunities." (*See* RD00028). Mr. Holloway also told Plaintiff that he "must accept the realization that times have changed" and that Plaintiff must do everything that he can to avoid the perception of playing in the gray area. (*See* RD00029). Once again, Plaintiff interpreted this recommendation as a remark on his age.

f) During the same meeting, Mr. Holloway commented that he was disappointed in Plaintiff's lapse in judgment at the Pri-Med Convention in Anaheim, California due to a banner. Mr. Holloway concluded that given the fact that Plaintiff was a "Senior Manager on the team," which again Plaintiff interpreted as a comment about his age, Mr. Holloway did not expect this activity to happen again.

g) On August 13, 2007, after a Manager's Meeting in San Diego, California, Mr. Holloway requested Plaintiff meet him in the lobby of the hotel. During this brief meeting, Mr. Holloway handed Plaintiff a written-warning for a "Blue Book Guideline Violation" for hanging the sign at the Pri-Med Convention which occurred back on May 10, 2007—an offense which is less serious than claimed during the July 31, 2007 meeting and which the punishment is more severe than a typical violation of this kind. (*See* DEF00016-DEF00017). Also during this meeting, Mr. Holloway informed Plaintiff that he "did not expect this from a Division Sales Manager with [Plaintiff's] tenure." (*See* RD00011).

h) On December 10, 2007, Mr. Holloway met with Plaintiff for his Year-End Review in Ontario, California. Mr. Holloway told Plaintiff that Plaintiff might not be a good match for the new environment with the Company. Mr. Holloway told Plaintiff that he "should think real, real, real hard" if the position of Division Sales Manager in the West Region is the right career choice for Plaintiff. (*See* RD00012). Mr. Holloway also informed Plaintiff that "as a manager with [Plaintiff's] tenure, [Mr. Holloway] would expect that [Plaintiff] find a way to improve [his] decision-making process." (*See* RD00033).

i) During this meeting, Mr. Holloway also provided Plaintiff with another Written Warning concerning an alleged recent and random Accounts Payable audit. Mr. Holloway commented that "this was [Plaintiff's] second clear lapse of judgment," which Plaintiff interpreted as a comment on Plaintiff's age and memory therein. (*See* RD00013 and DEF00036(A)-DEF00036(B)).

j) On February 22, 2008, Mr. Holloway called Plaintiff to inform Plaintiff that he will not have any increase in salary because Plaintiff's evaluation "Does Not Meet Rating," even

though Plaintiff's sales for 2007 were ranked as some of the highest in the United States throughout Defendants' sixty-one (61) Divisions.

k) On March 10, 2008, after Division Manager Michael Tonery sent out a regional-wide email to all Division Manager, including Plaintiff and Mr. Holloway, highlighting best practices of promoting a product, Mr. Holloway never disciplined or warned the managers and/or representatives who initiated these practices.

l) On August 1, 2008, Mr. Holloway, Mr. Orosczo, and Regional Director Christian Kamphel conducted Plaintiff's Mid-Year Review in San Diego, California. Plaintiff conducted a sixty-six (66) power-point slide presentation. Mr. Holloway then mentioned an expense report from May of 2008 concerning Los Angeles exemptions – an action which should have been mentioned back in May of 2008. Mr. Holloway mentioned that Plaintiff is either "unwilling or unable to grasp the importance of this competency." Plaintiff interpreted this statement as a remark on his age. (*See* DEF00217).

m) On September 25, 2008, Mr. Holloway provided Plaintiff with a letter concerning the August 1, 2008 review meeting. In this document, Mr. Holloway neglects to reference any information about Plaintiff's sales numbers when during this time, Plaintiff was #1 out of the eight (8) Divisions in the Region and #1 out of sixty-one (61) Divisions in the United States. (*See* DEF00216-DEF00218).

n) On January 21, 2009, Mr. Holloway conducted Plaintiff's Year-End Review meeting in Ontario, California and informed Plaintiff that he felt that Plaintiff was still not meeting performance standards. When Plaintiff mentioned that sales were not mentioned in the Mid-Year Review, Mr. Holloway informed Plaintiff that it is not about sales, it is how you get there.

o) On March 18, 2009, Mr. Holloway and Plaintiff attended the Commercial Leadership Meeting in Chicago, Illinois. After the meeting, Mr. Holloway and Mr. Kamphel informed Plaintiff that Plaintiff would be placed on a Performance Improvement Plan for

ninety (90) days. During this time, Plaintiff was also provided a written Performance Improvement Plan. (*See* DEF00433-DEF00442). Plaintiff informed Mr. Holloway afterward that he needed some time off for a family emergency. Mr. Holloway informed Plaintiff that any emergency has no bearing on the deliverables of the Performance Improvement Plan, and therefore, the Performance Improvement Plan necessities should be provided to Mr. Holloway by March 20, 2009.

p) On July 22, 2009, Mr. Holloway provided Plaintiff with the Addendum to the Performance Improvement Plan and informed Plaintiff that he would have until July 28, 2009 to complete the said reports. (*See* DEF 004580-DEF004590).

q) On August 17, 2009, Plaintiff was working in Glendale, California and completing the hiring interviews for another candidate awaiting their final interview by Mr. Holloway. Mr. Holloway again approved the hire without an interview, and then, in a threatening tone, stated Plaintiff needed to be in San Francisco on August 21, 2009 for a meeting although My. Holloway was aware of Plaintiff's previous flight arrangements. Plaintiff interpreted this serious tone and cautious manner as a hint that Mr. Holloway would be terminating Plaintiff.

r) On August 18, 2009, Plaintiff met with his physician, Dr. William Schofield, who recommended that Plaintiff take leave for work-related stress until November 22, 2009. (*See* RD00475-RD00476).  Just as Plaintiff's leave was about to end, on or about November 15, 2009, Defendants sent Plaintiff his "final" paycheck evidencing an apparent "pay-out" on all his accrued vacation pay – which is a typical action only when an employee has been terminated from employment.  (*See* RD00516). Because Mr. Holloway was Plaintiff's supervisor, Plaintiff knew (being a supervisor himself) that Mr. Holloway had to approve sign off on the vacation-pay out.

s) On November 17, 2009, Defendants posted Plaintiff's position, Division Sales Manager (job location in Southern California) as an open position – a position in which Mr. Holloway would be interviewing potential hires.

t)  On December 17, 2009, Mr. Holloway contacted Plaintiff concerning certain deliverables that Plaintiff needed to complete by January 4, 2010. This deadline forced Plaintiff to work over the year-end closing holidays.

u)  On December 31, 2009, Plaintiff received his first paycheck upon his return, Plaintiff found that his previously paid-out vacation pay was deducted from his earnings to show a return in the system. (*See* RD00517). Another action which warranted Mr. Holloway's approval.

v)  On January 6, 2010, Mr. Holloway called Plaintiff into his office and told Plaintiff that he needed to make plans to attend a meeting in San Francisco, on January 8, 2010, and that Plaintiff "better bring his 'A' game and all of things he had done for his Performance Improvement Plan in 2009." Mr. Holloway was aware that this notion was an inconvenience to Plaintiff's travel schedule in an effort to put undue pressure on Plaintiff.

w)  On January 8, 2010, Plaintiff reported to San Francisco per Mr. Holloway's orders. Mr. Holloway and Ms. Kratschmer met with Plaintiff to inform him that they would be restarting the Performance Improvement Plan.

x)  On January 18, 2010, Defendants once again posted Plaintiff's position as an open position.

2.  <u>Tim George</u>: Mr. George attempted to coerce Plaintiff into forced resignation of his position and threatened his employment and/or livelihood therein. Mr. George became Mr. Holloway's direct supervisor after Mr. Hinson's removal during the investigations of Plaintiff's complaints. Mr. George failed to properly manage, investigate Plaintiff's claims, and/or discipline Mr. Holloway.

Specifically, these actions were:

On January 29, 2009, Mr. George and Ms. Kratschmer called Plaintiff into a meeting in San Diego, California during the last day of the Regional Sales Meeting. During this meeting, Mr.

George and Ms. Krastchmer attempted to coerce Plaintiff into resigning his position with the Company by taking a severance package or face the consequence of a Performance Improvement Plan to be administered by Mr. Holloway. (*See* RD00049-RD00055). Mr. George informed Plaintiff that "we want to make this a comfortable and amiable environment," and "this is the first time that we have really talked." Mr. George claimed that Plaintiff would receive a "Does Not Meet" on his evaluation. Plaintiff mentioned he disagreed with the previous and current rating of "Does Not Meet" on his performance. Mr. George asked if Plaintiff received Mr. Holloway's Year-End Review letter. Plaintiff told Mr. George that he had not been provided one yet. Mr. George stated this notion did not make a difference because Plaintiff would still receive a "Does Not Meet." Mr. George further refused to discuss any previous Written Warnings or evaluations. Mr. George informed Plaintiff that "they were at a crossroads" and that there may be options that Plaintiff would be interested in and should inquire about. Mr. George stated he realized that Plaintiff had a big decision to make and could take sometime to decide. Plaintiff believes that Mr. George, could have, but failed to take steps to remove an alleged harasser, Mr. Holloway, from position of direct line of supervision over Plaintiff, during pendency of Defendants investigation in Plaintiff's complaint of age discrimination and/or retaliation.

3.   <u>Kristine Koptchek (Kratschmer)</u>: Ms. Kratschmer failed to properly investigate Plaintiff's complaints of discrimination against Mr. Holloway. Ms. Kratschmer conspired with Mr. George to forced Plaintiff out of his employment. Ms. Kratchmer also conspired with Mr. Holloway with threats to Plaintiff's employment as well as assisted in retaliation and harassment against Plaintiff concerning the Performance Improvement Plan and its subsequent addendums. Plaintiff believes that Ms. Kratschmer could have, but also failed to take steps to remove an alleged harasser, Mr. Holloway, from position of direct line of supervision over Plaintiff, during pendency of Defendants investigation in Plaintiff's complaint of age discrimination and/or retaliation. Ms. Kratschmer further ignored Plaintiff's further complaints and concerns therein.

Specifically, these actions were:
a) On March 17, 2008, Ms. Cohen and Ms. Kratschmer contacted Plaintiff and informed Plaintiff that Defendants had closed their investigations on Plaintiff's complaints on the

ground that Ms. Cohen and Ms. Kratschmer did not find evidence to substantiate Plaintiff's claims. (*See* RD00017).

b) On October 27, 2008, Plaintiff sent Ms. Kratschmer an email responding to Mr. Holloway's Mid-Year Review letter and noting the missing information necessary for a complete Mid-Year performance review. (*See* DEF00221-DEF00222). Ms. Kratschmer never replied. When Plaintiff inquired to Ms. Kratschmer if she had received his email, she admitted she did.

c) On January 29, 2009, Mr. George and Ms. Kratschmer called Plaintiff into a meeting in San Diego, California during the last day of the Regional Sales Meeting. During this meeting, Mr. George and Ms. Krastchmer attempted to coerce Plaintiff into resigning his position with the Company by taking a severance package or face the consequence of a Performance Improvement Plan to be administered by Mr. Holloway. (*See* RD00049-RD00055). Ms. Kratschmer inquired if Plaintiff had seen the comments in Plaintiff's Performance Management Yearbook online. Plaintiff informed Ms. Kratschmer that he had not seen any comments online. Ms. Kratschmer then reviewed the severance package offer with Plaintiff.

d) On or about February 6, 2009, Ms. Kratschmer contacted Plaintiff via telephone to continue to discuss resignation options. Ms. Kratschmer continued to harass Plaintiff with a coerced resignation on at least three (3) separate occasions via telephone and/or voicemail.

e) On January 8, 2010, Plaintiff reported to San Francisco per Mr. Holloway's orders. Mr. Holloway and Ms. Kratschmer met with Plaintiff to inform him that they would be restarting the Performance Improvement Plan.

4.   <u>Chuchie Santa Ana</u>: Ms. Santa Ana failed to properly investigate Plaintiff's complaints of discrimination against Mr. Holloway. Plaintiff believes that Ms. Santa Ana could have, but also failed to take steps to remove an alleged harasser, Mr. Holloway, from position of direct line of supervision over Plaintiff, during pendency of Defendants investigation in Plaintiff's complaint of age discrimination

and/or retaliation.  Ms. Santa Ana also assisted Mr. Holloway in discriminating and retaliating against Plaintiff.

Specifically, these actions were:

    a) On June 8, 2007, Defendants' former Human Resources Manager Chuchie Santa Ana contacted Plaintiff to inform Plaintiff that his request for education assistance was denied by Mr. Holloway – when other, younger managers received approvals for this assistance.

    b) On October 29, 2007, Defendants held a Regional Manager meeting in Ontario, California wherein Mr. Holloway and Ms. Santa Ana asked Plaintiff to get into contact with a representative. Contrary to prior company policy, Mr. Holloway and Ms. Santa Ana terminated this representative behind Plaintiff's back – a process which is Plaintiff's responsibility.

5.    <u>Dick Hinson</u>: Mr. Hinson hired James Holloway, and acted as Mr. Holloway's direct supervisor during the onset of Plaintiff's complaints. Mr. Hinson failed to properly manage, investigate Plaintiff's claims, and/or discipline Mr. Holloway.  Plaintiff believes that Mr. Hinson, as Mr. George's direct supervisor, could have, but also failed to take steps to remove an alleged harasser, Mr. Holloway, from position of direct line of supervision over Plaintiff, during pendency of Defendants investigation in Plaintiff's complaint of age discrimination and/or retaliation.

6.    <u>Sharon Cohen</u>: Ms. Cohen failed to properly investigate Plaintiff's complaints of discrimination against Mr. Holloway. Plaintiff believes that Ms. Cohen could have, but also failed to take steps to remove an alleged harasser, Mr. Holloway, from position of direct line of supervision over Plaintiff, during pendency of Defendants investigation in Plaintiff's complaint of age discrimination and/or retaliation. Furthermore, Ms. Cohen informed Plaintiff, through her seminar, that Ms. Cohen informed Mr. Holloway of Plaintiff's complaints against him.

Specifically, these actions were:

    a) On March 17, 2008, Ms. Cohen and Ms. Kratschmer contacted Plaintiff and informed Plaintiff that Defendants had closed their investigations on Plaintiff's complaints on the

ground that Ms. Cohen and Ms. Kratschmer did not find evidence to substantiate Plaintiff's claims. (*See* RD00017).

b) The week of April 14, 2008, Ms. Cohen gave a brief presentation on the methods of which Defendants' employees should file a complaint for discrimination. Ms. Cohen mentioned, during this presentation, that in all instances of discrimination complaints against an employee, the employee who committed the alleged discriminatory act must be notified of the complaint against them and who made the complaint. Plaintiff interpreted this statement as a threat and as confirmation that Mr. Holloway was aware of Plaintiff's complaints against Mr. Holloway.

Pursuant to his obligations under the Rules, Plaintiff will supplement his response if and when additional information becomes available through the discovery period.

**INTERROGATORY NO. 15 (*AS QUOTED IN DEFENDANTS MEET AND CONFER LETTER DATED JANUARY 22, 2010, P. 10 STATES*):**

Identify each and every individual whom you contend engaged in any conduct, act, or omission that you believe justifies and award of punitive damages against Defendant and fully describe each action and/or omission of each such individual that you believe justifies an award of punitive damages against Defendants, including but not limited to a specific description of the conduct and the date, place, and time of such conduct.

**RESPONSE (*TO DEFENDANTS ORIGINAL INTERROGATORY NO. 15 AS STATED IN DEFENDANTS REQUEST FOR INTERRGATORIES DATED DECEMBER 4, 2009*):** All individuals and their expected testimony have been disclosed pursuant to Plaintiff's Initial Disclosures and supplements thereto.

**SUPPLEMENTAL RESPONSE:**

Defendants' meet and confer letter dated January 22, 2010 provides that Interrogatory No. 15 is identical to Interrogatory No. 14 herein above. Accordingly, Plaintiff incorporates by this reference his responses to Interrogatory No. 14 above. Plaintiff notes that Defendants Interrogatory No. 15, as stated in its original Requests for Interrogatories dated December 4, 2009, does not match provision quoted in Defendants Meet and Confer Letter for which Defendants demanded supplementation. Accordingly, Plaintiff's responds only to the request for supplementation as cited in the Defendant's Meet and Confer Letter dated January 22, 2010, as Interrogatory No. 15 is quoted therein.

**INTERROGATORY NO. 16**:

Set forth with specificity all facts underlying, or otherwise supporting, your allegations in paragraph 38 of the Complaint that Defendants engaged in "negligent hiring practices". If any information responsive to this Interrogatory is contained or otherwise referenced in any document(s), identify the document(s) by bates number.

**RESPONSE:**  Please see Plaintiff's Complaint, Plaintiff's Age Discrimination Complaints (RD00011-RD00014), and Plaintiff's Statement in Support of NERC Charges of Discrimination (RD00290-RD00291, RD00322-RD00323, and RD00362-RD00363).

**SUPPLEMENTAL RESPONSE:**

As noted in Supplemental Response to Request Number 12, Plaintiff believes that an employer has a duty to exercise due diligence of its employees, agents, management, or representatives to ensure that the workplace is free of harassment, discrimination, and retaliation under Title VII of the Civil Rights Act of 1964. This includes discrimination under ADEA and under the laws of the State of Nevada. In this way, an employer has the burden of properly interviewing and screening its potential employees.

As previously noted, Defendants hired James Holloway, a younger, less experienced employee, to be Plaintiff's manager. From the time of Mr. Holloway's hire, Mr. Holloway has subjected Plaintiff to discrimination and retaliation.   Defendants also could have, but failed to take adequate steps to prevent retaliation, by removing an alleged harasser from direct line of supervision over Plaintiff.  Defendants could have, but did not, ensure that Mr. Holloway would not be in a position to retaliate against Plaintiff, this is negligent hiring practices and retaliation.

Plaintiff also believes that his complaint of discrimination is not the only complaint of discrimination filed by another employee against Mr. Holloway.  Defendants are aware that Mr. Holloway has been subject of at least one other complaint of unlawful discrimination and/or harassment, but continued to employ Mr. Holloway and allow him to continue in a position of control over the terms and conditions of Plaintiff's employment.

Pursuant to his obligations under the Rules, Plaintiff will supplement his response if and when additional information becomes available through the discovery period.

**INTERROGATORY NO. 17:**

Set forth with specificity each and every instance of unlawful and/or discriminatory conduct you allege was done by Defendants that resulted in any financial harm or emotional distress to you. If any

information responsive to this Interrogatory is contained or otherwise referenced in any document(s), identify the document(s) by bates number.

**RESPONSE:** Defendants as of yet have not made any person available for deposition. Plaintiff's damages, include, but are not limited to, lost wages upon time of termination, amount of money he made while employed with Defendants minus any money Plaintiff will make through other efforts. At this point, precise damage calculations, as requested by the compounded interrogatory, are premature. Plaintiff is asking the jury for damages stemming from emotional trauma and punitive damages. Plaintiff will be providing expert testimony at appropriate time. Plaintiff is currently waiting for an extension of time within which to make initial expert disclosures, including disclosures concerning damages. Plaintiff will provide information responsive to Interrogatory No. 6 upon such time as Plaintiff's initial expert disclosures are made.

Please see Plaintiff's Complaint, Plaintiff's Age Discrimination Complaints (RD00011-RD00014), and Plaintiff's Statement in Support of NERC Charges of Discrimination (RD00290-RD00291, RD00322-RD00323, and RD00362-RD00363).

**SUPPLEMENTAL RESPONSE:**

Plaintiff believes that Defendants have terminated his employment, on paper, on at least two occasions, as set forth specifically in Plaintiff's Supplemental Response to Defendants Interrogatory No. 6. Plaintiff further supplements his response to Interrogatory No. 17 as follows: Each and every instance of unlawful and/or discriminatory conduct Plaintiff alleged were done by Defendants are specifically outlined herein above. The degree of financial harm or emotional distress to which each act of discrimination or unlawful conduct is to be determined by a jury, trier of fact, with assistance of expert reports and/or testimony provided by Plaintiff's experts. Plaintiff's expert reports are forthcoming, and Plaintiff will provide this to Defendants as soon as the reports become available, and no later than the deadline stated by the Court to do so.

Plaintiff provides that each and every incident of discrimination, retaliation, or other unlawful action is as follows:

1) On January 3, 2007, Plaintiff and Mr. Holloway attended a Commercial Leadership Meeting in Florida for all of the Company Sales Managers. Plaintiff and Mr. Holloway were sitting at lunch at the Gaylord Palms Hotel with Sales Manager Shawn Michael and Sales Manager Mike Tonery. During their conversation about management styles and

methods, Mr. Holloway called Plaintiff "Old School" in a demeaning tone after listening to Plaintiff's opinions on micromanagement versus macro-management. (*See* RD00011).

2) On May 25, 2007, Mr. Holloway and Regional Business Manager LeRoy Orosczo conducted a Business Review with Plaintiff. During this four (4)-hour review, Mr. Holloway declared that Plaintiff's methods of managing his team as being "Old School" and highlighted what methods Mr. Holloway wanted Plaintiff to implement.

3) On June 8, 2007, Defendants' former Human Resources Manager Chuchie Santa Ana contacted Plaintiff to inform Plaintiff that his request for education assistance was denied by Mr. Holloway – when other, younger managers received approvals for this assistance.

4) On or about July 11, 2007, Mr. Holloway met with Plaintiff to discuss the results of the Regional Contest which his division, Division 706- San Bernardino, had won. Mr. Holloway commented to Plaintiff that Mr. Holloway felt that a manager of Plaintiff's "tenure" would give more specific direction. Plaintiff interpreted this comment as referring to Plaintiff's age. (*See* RD00011).

5) On July 31, 2007, Mr. Holloway called Plaintiff into the Regional Office in Ontario, California for purposes of discussing Plaintiff's Mid-Year Review. Mr. Holloway subsequently commented that based on Plaintiff's "tenure [which Plaintiff interpreted to refer to his age] [Mr. Holloway said he would suggest/like to see Plaintiff] begin to provide more direction to his team in the form of coaching opportunities." (*See* RD00028). Mr. Holloway also told Plaintiff that he "must accept the realization that times have changed" and that Plaintiff must do everything that he can to avoid the perception of playing in the gray area. (*See* RD00029). Mr. Holloway also commented that he was disappointed in Plaintiff's lapse in judgment at the Pri-Med Convention in Anaheim, California earlier this year. Mr. Holloway concluded that given the fact that

Plaintiff was a "Senior Manager on the team," Mr. Holloway did not expect this activity to happen again. (*See* RD00033).

6) On August 13, 2007, after a Manager's Meeting in San Diego, California, Mr. Holloway requested Plaintiff meet him in the lobby of the hotel. During this brief meeting, Mr. Holloway handed Plaintiff a written-warning for a "Blue Book Guideline Violation" for hanging the sign at the Pri-Med Convention which occurred back on May 10, 2007—an offense which is less serious than claimed during the July 31, 2007 meeting and which the punishment is more severe than a typical violation of this kind. (*See* DEF00016-DEF00017). Also during this meeting, Mr. Holloway informed Plaintiff that he "did not expect this from a Division Sales Manager with [Plaintiff's] tenure." (*See* RD00011).

7) On October 29, 2007, Defendants held a Regional Manager meeting in Ontario, California wherein Mr. Holloway and Ms. Santa Ana asked Plaintiff to get into contact with a representative. Contrary to prior company policy, Mr. Holloway and Ms. Santa Ana terminated this representative behind Plaintiff's back – a process which is Plaintiff's responsibility.

8) On December 10, 2007, Mr. Holloway met with Plaintiff for his Year-End Review in Ontario, California. Mr. Holloway told Plaintiff that Plaintiff might not be a good match for the new environment with the Company.  Mr. Holloway told Plaintiff that he "should think real, real, real hard" if the position of Division Sales Manager in the West Region is the right career choice for Plaintiff.   (*See* RD00012). Mr. Holloway also informed Plaintiff that "as a manager with [Plaintiff's] tenure, [Mr. Holloway] would expect that [Plaintiff] find a way to improve [his] decision-making process." (*See* RD00033). Also during this meeting, Mr. Holloway provided Plaintiff with another Written Warning concerning an alleged recent and random Accounts Payable audit.  Mr. Holloway commented that "this was [Plaintiff's] second clear lapse of judgment." (*See* RD00013

and DEF00036(A)-DEF00036(B)). Mr. Holloway then became very aggressive, and Plaintiff felt threatened. (*See* RD00012). Plaintiff thus believed that the two Written Warnings given by Mr. Holloway were part of Mr. Holloway's discrimination against him by reason of his age. (*See* RD00013).

27) On February 22, 2008, Mr. Holloway called Plaintiff to inform Plaintiff that he will not have any increase in salary because Plaintiff's evaluation "Does Not Meet Rating," even though Plaintiff's sales for 2007 were ranked as some of the highest in the United States throughout Defendants' sixty-one (61) Divisions.

28) On March 17, 2008, Ms. Cohen and Ms. Kratschmer contacted Plaintiff and informed Plaintiff that Defendants had closed their investigations on Plaintiff's complaints on the ground that Ms. Cohen and Ms. Kratschmer did not find evidence to substantiate Plaintiff's claims. (*See* RD00017).

29) On April 14, 2008, Ms. Cohen gave a brief presentation on the methods of which Defendants' employees should file a complaint for discrimination. Ms. Cohen mentioned, during this presentation, that in all instances of discrimination complaints against an employee, the employee who committed the alleged discriminatory act must be notified of the complaint against them and who made the complaint. Plaintiff interpreted this statement as a threat and as confirmation that Mr. Holloway was aware of Plaintiff's complaints against Mr. Holloway. Plaintiff believes this to be in retaliation for his complaint of discrimination.

30) Later in the week, Plaintiff again attempted to schedule a final interview of his potential new hire with Mr. Holloway. Once again, Mr. Holloway noted that he was too busy, gave Plaintiff to approval to hire the candidate, but warned Plaintiff that this candidate's

performance was all on Plaintiff.   Plaintiff believes this to be in retaliation for his complaint of discrimination.

31) On August 1, 2008, Mr. Holloway, Mr. Orosczo, and Regional Director Christian Kamphel conducted Plaintiff's Mid-Year Review in San Diego, California. Mr. Holloway then mentioned an expense report from May of 2008 concerning Los Angeles exemptions – an action which should have been mentioned back in May of 2008. Mr. Holloway mentions that Plaintiff is either "unwilling or unable to grasp the importance of this competency." Plaintiff interpreted this statement as a remark on his age. (*See* DEF00217).

32) On September 25, 2008, Mr. Holloway provided Plaintiff with a letter concerning the August 1, 2008 review meeting. In this document, Mr. Holloway neglected to reference any information about Plaintiff's sales numbers when during this time, Plaintiff was #1 out of the eight (8) Divisions in the Region and #1 out of sixty-one (61) Divisions in the United States. (*See* DEF00216-DEF00218).

33) On October 27, 2008, Plaintiff sent Ms. Kratschmer an e-mail responding to Mr. Holloway's Mid-Year Review letter and noting the missing information necessary for a complete Mid-Year performance review. (*See* DEF00221-DEF00222).   Plaintiff never received any return reply in this regard.

34) On January 21, 2009, the Equal Employment Opportunity Commission issued a Right to Sue letter. (*See* RD00377). On the same day, Mr. Holloway conducted Plaintiff's Year-End Review meeting in Ontario, California. During this brief meeting, Mr. Holloway informed Plaintiff that he felt that Plaintiff was still not meeting performance standards. When Plaintiff mentioned that sales were not mentioned in the Mid-Year Review, Mr. Holloway informed Plaintiff that it is not about sales, it is how you get there. Unlike

Plaintiff's previous review, which was conducted during the NERC investigation of Plaintiff's claims, Plaintiff was given a poor performance review and Defendants had seemed to completely change their idea concerning Plaintiff's performance.    Plaintiff believes this to be in retaliation for his complaint of discrimination.

35) On January 29, 2009, Defendants' Vice President of Sales Tim George and Ms. Kratschmer called Plaintiff into a meeting in San Diego, California during the last day of the Regional Sales Meeting. During this meeting, Mr. George and Ms. Krastchmer attempted to coerce Plaintiff into resigning his position with the Company by taking a severance package or face the consequence of a Performance Improvement Plan to be administered by Mr. Holloway. (*See* RD00049-RD00055). Mr. George informed Plaintiff that "we want to make this a comfortable and amiable environment," and "this is the first time that we have really talked." Mr. George claimed that Plaintiff would receive a "Does Not Meet" on his evaluation.  Plaintiff mentioned that he disagreed with the previous and current rating of "Does Not Meet" on his performance. Mr. George inquired if Plaintiff received Mr. Holloway's Year-End Review letter. Plaintiff informed Mr. George that he had not been provided one yet. Ms. Kratschmer inquired if Plaintiff had seen the comments in Plaintiff's Performance Management Yearbook online. Plaintiff informed Ms. Kratschmer that he had not seen any comments online. Mr. George stated that this notion did not make a difference because Plaintiff would still receive a "Does Not Meet." Mr. George further refused to discuss any previous Written Warnings or evaluations. Mr. George informed Plaintiff that "they were at a crossroads" and that there may be options that Plaintiff would be interested in and should inquire about. Ms. Kratschmer then reviewed the severance package offer with Plaintiff. Mr. George stated he realized that Plaintiff had a big decision to make and could take sometime to decide.

36) On or about February 6, 2009, Ms. Kratschmer contacted Plaintiff via telephone to continue to discuss resignation options. Ms. Kratschmer continued to harass Plaintiff with

a coerced resignation on at least three (3) separate occasions via telephone and/or voicemail.

37) On February 11, 2009, Mr. Holloway provided Plaintiff with the Year-End Review letter in the presence of Ms. Krastchmer. (*See* DEF00430-DEF00432). This letter further referenced the Mid-Year Review expenses issue that Plaintiff rebutted. Plaintiff inquired if Ms. Kratschmer received Plaintiff's rebuttal of this allegation, to which Ms. Kratschmer revealed that she did indeed receive Plaintiff's email.

38) On February 13, 2009, Plaintiff received another legal invoice – this time in the Interoffice Mail. This invoice stated that on January 21, 2009 and January 22, 2009 that Defendants' were preparing to terminate Plaintiff.

39) On March 18, 2009, Mr. Holloway and Plaintiff attended the Commercial Leadership Meeting in Chicago, Illinois. After the meeting, Mr. Holloway and Mr. Kamphel informed Plaintiff that Plaintiff would be placed on a Performance Improvement Plan for ninety (90) days. During this time, Plaintiff was also provided a written Performance Improvement Plan. (*See* DEF00433-DEF00442). Plaintiff informed Mr. Holloway afterward that he needed some time off for a family emergency. Mr. Holloway informed Plaintiff that any emergency has no bearing on the deliverables of the Performance Improvement Plan, and therefore, the Performance Improvement Plan necessities should be provided to Mr. Holloway by March 20, 2009.

40) On July 6, 2009, Plaintiff contacted Mr. Holloway, via telephone, wherein Mr. Holloway informed Plaintiff that Plaintiff was still on the Performance Improvement Plan and that Mr. Holloway would follow-up with Plaintiff to adjust the dates.

41) On July 15, 2009, Plaintiff met with Mr. Holloway in San Deigo, California wherein Mr. Holloway discussed the addendum and the timelines to the Performance Improvement Plan and the necessity of report to be completed by July 20, 2009.

42) On July 22, 2009, Mr. Holloway provided Plaintiff with the Addendum to the Performance Improvement Plan and informed Plaintiff that he would have until July 28, 2009 to complete the said reports. (*See* DEF 004580-DEF004590).

43) On August 17, 2009, Plaintiff was working in Glendale, California and completing the hiring interviews for another candidate awaiting their final interview by Mr. Holloway. Mr. Holloway again approved the hire without an interview, and then, in a threatening tone, stated Plaintiff needed to be in San Francisco on August 21, 2009 for a meeting although My. Holloway was aware of Plaintiff's previous flight arrangements. Plaintiff interpreted this serious tone and cautious manner as a hint that Mr. Holloway would be terminating Plaintiff.

44) On or about November 15, 2009, Defendants sent Plaintiff his "final" paycheck evidencing an apparent "pay-out" on all his accrued vacation pay – which is a typical action only when an employee has been terminated from employment.  (*See* RD00516). Because Mr. Holloway was Plaintiff's supervisor, Plaintiff knew (being a supervisor himself) that Mr. Holloway had to approve sign off on the vacation-pay out. This is one reason Plaintiff believes Mr. Holloway used to retaliate against Plaintiff for complaining about age-related comments.

45) On November 17, 2009, Defendants posted Plaintiff's position, Division Sales Manager (job location in Southern California) as an open position.

46) While Plaintiff was on leave, he attempted to log into Defendants' Benefits website to sign-up for Plaintiff's 2010 Benefits. However, the system would not allow Plaintiff to log-in. Plaintiff contact Integrated Disability Representative Minnie Mincey concerning the log-in error. Ms. Mincey informed Plaintiff that Plaintiff was "deactivated" in the system because termination documentation had been sent to payroll for him. Plaintiff subsequently contacted Defendants' payroll department and these representatives received termination notification, and Plaintiff informed this department that he was scheduled to return to work.

47) On November 23, 2009, Mr. Holloway informed Plaintiff that he was still under the Performance Improvement Plan. Mr. Holloway never contacted Plaintiff to schedule a meeting.

48) On December 17, 2009, Mr. Holloway contacted Plaintiff concerning certain deliverables that Plaintiff needed to complete by January 4, 2010. This deadline forced Plaintiff to work over the year-end closing holidays.

49) On January 6, 2010, Mr. Holloway called Plaintiff into his office and told Plaintiff that he needed to make plans to attend a meeting in San Francisco, on January 8, 2010, and that Plaintiff "better bring his 'A' game and all of things he had done for his Performance Improvement Plan in 2009." Mr. Holloway was aware that this notion was an inconvenience to Plaintiff's travel schedule in an effort to put undue pressure on Plaintiff.

50) On January 8, 2010, Plaintiff reported to San Francisco per Mr. Holloway's orders. Mr. Holloway and Ms. Kratschmer met with Plaintiff to inform him that they would be restarting the Performance Improvement Plan. This was the first time Mr. Holloway had met with Plaintiff since the onset of the Performance Improvement Plan of March of 2008.

51) On January 18, 2010, Defendants once again posted Plaintiff's position as an open position.

52) On January 25, 2010, while Plaintiff was signing in to the National Sales Meeting in Las Vegas, Nevada, Defendants agents informed Plaintiff that he needed to retake his picture because he did not have one in the system. Plaintiff can only speculate that the Defendants' removed him from the system during the time of his "termination" as referenced above, or in preparation for a future possible termination.

Pursuant to his obligations under the Rules, Plaintiff will supplement his response if and when additional information becomes available through the discovery period.

**INTERROGATORY NO. 18:**

Set forth with specificity all facts underlying, or otherwise supporting, your allegations in paragraph 40 of the Complaint that Defendants failed to adequately train and supervise its employees in diversity training as it applies to the ADEA and/or other anti-retaliation statutes. If any information responsive to this Interrogatory is contained or otherwise referenced in any document(s), identify the document(s) by bates number.

**RESPONSE:**   Please see Plaintiff's Complaint, Plaintiff's Age Discrimination Complaints (RD00011-RD00014), and Plaintiff's Statement in Support of NERC Charges of Discrimination (RD00290-RD00291, RD00322-RD00323, and RD00362-RD00363).

**SUPPLEMENTAL RESPONSE:**

As noted in Supplemental Response to Request Number 12, an employer has a duty to exercise due diligence of its employees, agents, management, or representatives to ensure that the workplace is free of harassment, discrimination, and retaliation under Title VII of the Civil Rights Act of 1964. This includes discrimination under ADEA and under the laws of the State of Nevada. This due diligence extends to the notion than en employer has a burden to properly train and/or supervise its employees concerning anti-discrimination and anti-retaliation.

As previously noted, Defendants hired James Holloway, a younger, less experienced employee, to be Plaintiff's manager. From the time of Mr. Holloway's hire, Mr. Holloway has subjected Plaintiff to discrimination and retaliation. Defendants failed to offer Mr. Holloway training after multiple complaints of discriminatory and/or retaliatory behavior. Furthermore, Mr. Holloway was never disciplined. Mr. Hinson and later Mr. George has a duty to properly supervise and manage Mr. Holloway's behavior, but failed to do so.

Also, Ms. Santa Ana, Ms. Cohen, and Ms. Kratschmer had a duty to investigate and recommend training concerning Mr. Holloway's discriminatory actions. However, they failed to do so and assisted these actions therein.

Defendants did not conduct an adequate investigation into Plaintiff's complaints of age discrimination and retaliation. Defendants informed the alleged harasser, here Mr. Holloway, about complaints made against him by Plaintiff, one of the employees Mr. Holloway supervises. During pendency of alleged investigation by Defendants' Human Resources into Plaintiff's complaints, Defendants could have but did not take steps to ensure Mr. Holloway would not retaliate against Plaintiff for making his complaints. In fact, Plaintiff believes Defendants made it easier for Mr. Holloway to retaliate against Plaintiff and/or otherwise take adverse employment actions against Mr. Holloway for making complaints of discrimination as follows: 1) informing Mr. Holloway about the complaints made against him by Plaintiff, thereby compromising confidentiality of investigation, 2) allowing Mr. Holloway to continue in capacity that would affect the terms and conditions of Plaintiff's employment, 3) permitting Mr. Holloway, Plaintiff's alleged harasser, to continue to review Plaintiff's performance and place Plaintiff on a performance improvement plan, even after Mr. Holloway became aware that Plaintiff had complained against Mr. Holloway, and 4) ratifying and condoning Mr. Holloway's retaliatory acts toward Plaintiff; and 5) placing Plaintiff on a pre-textual performance improvement plan.

Plaintiff also believes that his complaint of discrimination is not the only complaint of discrimination filed by another employee against Mr. Holloway. Defendants are aware that Mr. Holloway has been subject of at least one other complaint of unlawful discrimination and/or harassment, but continued to employ Mr. Holloway and allow him to continue in a position of control over the terms and conditions of Plaintiff's employment.

Therefore, Defendants have failed and neglected to exercise due diligence, with regard to Mr. Holloway's discriminatory and retaliatory actions, by failing to properly supervise, investigate, place

1 | recommendations for further training, and discipline him. The Defendants further failed to supervise and

2 | properly train Mr. George, Mr. Hinson, Ms. Kratschmer, Ms. Cohen, and Ms. Santa Ana for allowing

3 | these behaviors to continue.

4 |     Pursuant to his obligations under the Rules, Plaintiff will supplement his response if and when

5 | additional information becomes available through the discovery period.

6 |     DATED this 27th day of January, 2010.

7 | ESTEBAN-TRINIDAD LAW, P.C.

8 |

9 | BY: _____
M. Lani Esteban-Trinidad

10 | Nevada Bar No. 006967
4315 North Rancho Drive, Ste. 110

11 | Las Vegas, Nevada 89130
Phone: (702)736-5297

12 | Fax: (702) 736-5299

13 | Attorney for Plaintiff

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that on the __3 th__ day of February, 2010, I served a true and correct copy of the foregoing PLAINTIFF RANDY DOSSAT'S SUPPLEMENTAL RESPONSES TO HOFFMAN-LA ROCHE, INC.'S REQUESTS FOR INTERROGATORIES, upon the appropriate parties hereto, by enclosing it in a sealed envelope, postage fully prepaid thereon, deposited in the United States mail, addressed to:

Robert Rosenthal, Esq.
Howard & Howard
3800 Howard Hughes Parkway #1400
Las Vegas, NV 89169
Attorneys for Defendants



An employee of Esteban-Trinidad Law, P.C.

VERIFICATION

STATE OF NEVADA      )
                     ) ss:
COUNTY OF CLARK      )

RANDY DOSSAT, being first duly sworn, deposes and says:

That I am the Plaintiff in the above-entitled action; that I have read the foregoing PLAINTIFF

RANDY DOSSAT'S SUPPLEMENTAL RESPONSES TO HOFFMAN- LA ROCHE, INC.'S

REQUESTS FOR INTERROGATORIES and know the contents thereof; that the same is true of my

own knowledge except for those matters therein contained stated upon information and belief, and as

to those matters, I believe them to be true.

_____
RANDY DOSSAT

SWORN AND SUBSCRIBED TO before me
this ___ day of January, 2010.

_____
NOTARY PUBLIC in and for said County and State

```
NOTARY PUBLIC
CANDESS ZONA
STATE OF NEVADA - COUNTY OF CLARK
MY APPOINTMENT EXP. JUNE 28, 2012
No: 04-89964-1
```

-1-