Howard & Howard Attorneys PLLC
Robert L. Rosenthal, Esq.
NV Bar No. 6476
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
Telephone: (702) 257-1483
Facsimile: (702) 567-1568
E-Mail Address: rlr@h2law.com
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RANDY DOSSAT, an individual<br><br>Plaintiff,<br><br>vs.<br><br>HOFFMANN-LA ROCHE, INC. dba ROCHE LABS, a New Jersey Corporation; ROCHE LABORATORIES, INC., a corporation, DOES 1 through 10, inclusive, ROES CORPORATIONS/ENTITIES 1 through 10 inclusive,<br><br>Defendants. | Case No.: 2:09-CV-00245-KJD-PAL<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**(ORAL ARGUMENT REQUESTED** |

Defendants Hoffmann-La Roche Inc. and Roche Laboratories Inc. by and through their counsel, the law firm of Howard & Howard Attorneys PLLC, pursuant to Fed. R. Civ. P. 56, hereby move this Court for Summary Judgment against Plaintiff, Randy Dossat.

This Motion is based upon the following Memorandum of Points and Authorities, Defendants' Separate Statement of Undisputed Material Facts, Declarations and Exhibits attached thereto, the pleadings and papers on file herein, and any oral argument made at a hearing on this Motion.

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

# I.
## INTRODUCTION

This case was initially brought by Plaintiff, Randy Dossat ("Dossat"), a gainfully employed Division Sales Manager ("DSM") of Roche Laboratories Inc. ("Roche") alleging causes of action sounding in age discrimination, retaliation, and other common law claims.[1] Essentially, Plaintiff, who is 56 years old, alleges that a new senior manager in his region, James Holloway ("Holloway"), who is 45 years old, made unlawful age-related remarks and retaliated against Plaintiff by denying him eligibility for certain bonuses and salary raises.

Plaintiff's allegations, however, are merely a subterfuge to divert the Court's attention from discipline which was legitimately imposed upon him. Plaintiff uses age and retaliation as scapegoats for his own defalcations, claiming that the reprimands meted upon him for his clear, repeated, and admitted violations of written company policies were somehow driven by an age-related or retaliatory animus.

In reality, Plaintiff's inability to adhere to Roche policies and to satisfactorily perform the essential functions of his job were exposed after Holloway was hired to fill the vacant position of Regional Sales Director ("RSD") for the West Region in October 2006. Plaintiff, who had unsuccessfully applied for the RSD position in July 2006, found working for the newly-hired RSD challenging.

Although challenging, Plaintiff's relationship with RSD Holloway was professional and amicable until mid-2007, when plaintiff *admittedly* created and advertised an unapproved promotional banner at a conference, improperly comparing a Roche drug to a competitor's drug. This was a clear and severe violation of Company policy and federal regulations, and was especially problematic because it could have resulted in significant fines or penalties assessed against Roche. Accordingly, Plaintiff was disciplined both orally and in writing for the infraction. Such a significant derogation of Company policy was unusual for someone in a

[1] Plaintiff brought this action against Hoffmann-La Roche Inc. ("HLR"), as well as against HLR's wholly-owned subsidiary, Roche Laboratories Inc. ("RLI"). RLI is responsible for sales and marketing efforts relating to the pharmaceutical products manufactured by HLR. (Exhibit A, Complaint).

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

1   management position such as Plaintiff.  By virtue of the discipline imposed on Plaintiff for this

2   violation, as well as another *admitted* violation in December 2007, Plaintiff was deemed

3   ineligible to receive a portion of his Variable Pay (i.e. bonus compensation) for 2007.  Unhappy

4   about the denial of this bonus pay, Plaintiff filed internal complaints with Roche's Human

5   Resources Department ("HR") alleging that he was the victim of age discrimination as a

6   mechanism for getting his Variable Pay eligibility reinstated.

7        Plaintiff's "evidence" of age discrimination which he presented to HR consisted of a few

8   stray remarks made by Holloway going all the way back to January 10, 2007.  The claimed

9   discriminatory comments consisted of Holloway calling Plaintiff's management style "old

10  school," and referring to Dossat's "tenure" and status as a "senior" manager when explaining

11  that an employee with more than a decade of management experience with the company should

12  know how to properly manage and motivate subordinate employees.

13       Roche then conducted an investigation into Plaintiff's claims, which ultimately resulted

14  in HR concluding that Plaintiff's allegations could not be substantiated.  Plaintiff refused to

15  recognize that his claims were without merit, and instead proceeded to file Charges of

16  Discrimination and Retaliation with the Nevada Equal Rights Commission ("NERC") and the

17  Equal Employment Opportunity Commission ("EEOC").

18       Plaintiff's job performance continued to deteriorate in 2008, which resulted in him again

19  receiving an annual performance rating of "does not meet."  Since Plaintiff had received "Does

20  Not Meet" ratings for both 2007 and 2008, Plaintiff was placed on a Performance Improvement

21  Plan ("PIP") on March 18, 2009.  Although the PIP was created with identifiable, measurable,

22  and obtainable objectives for improving Plaintiff's job-related performance, Plaintiff repeatedly

23  failed to comply with the PIP requirements.  During the course of the PIP, Plaintiff refused to

24  meet with Holloway on several occasions to review his progress, periodically went on Short

25  Term Disability ("STD") leave and vacation.

26       On April 9, 2010, while Plaintiff was out on STD, he was advised by Roche's Disability

27  Department that his permissible leave under Roche's STD policy would be exhausted on April

28  14, 2010.  Plaintiff was also told that if he did not return to work prior to April 14, 2010,

Roche's policies required that he be administratively terminated, and that he could apply for Long Term Disability ("LTD") leave.  Despite the fact that Plaintiff was cleared to return to work on April 14, 2010, Plaintiff elected not to come back.  Therefore, on April 15, 2010, Defendants were left with no choice but to administratively terminate Plaintiff's employment due to his exhaustion of his allowable STD under the Company's written policies. Significantly, Holloway did not have anything to do with Plaintiff's administrative termination.

Plaintiff's claim that his receipt of warnings, negative performance reviews, reduced bonus and/or raises and placement on a PIP were retaliatory, is entirely baseless because nearly all of these things occurred prior to Holloway becoming aware that plaintiff had made any complaint about him.  Placement on the PIP was the result of Plaintiff's admitted performance deficiencies and poor performance ratings.  Additionally, the recent termination of plaintiff's employment was based solely on Roche's written disability benefits policy, was not performance related, and was not in any way done in retaliation for any complaint made by Plaintiff.  The evidence allows only one conclusion: Plaintiff's performance was inadequate, he was appropriately counseled, and he elected not to return to work and instead to apply for LTD. Therefore, Plaintiff's claims are without merit and should be dismissed as a matter of law.

## II.

## BASIS FOR DISMISSAL OF EACH OF PLAINTIFF'S CLAIMS

### A.  FIRST CAUSE OF ACTION: AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT.

Plaintiff's first cause of action for age discrimination fails because Plaintiff cannot make out a prima facie case.  In order to establish age discrimination, Plaintiff must be able to satisfy all of the following elements:

1. He was a member of a protected class (age 40-70);
2. He was performing his job in a satisfactory manner;
3. He was rejected for employment or otherwise subjected to an adverse employment action, and
4. He was replaced by a substantially younger employee with equal or inferior qualifications.

*Smith v. FJM Corp.*, Slip Copy, 2009 WL 703482 (D. Nev.).

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

Plaintiff cannot satisfy the second and fourth prongs of the test because it is undisputed that Dossat was not performing his job in a satisfactory manner, and due to the fact that he has not been replaced by another employee (younger or older).   Accordingly, Plaintiff's age discrimination claim must be dismissed as a matter of law.   Additionally, Plaintiff cannot demonstrate any age related animus in Holloway's stray remarks and actions.

**B.**   **SECOND CAUSE OF ACTION: RETALIATION IN VIOLATION OF SECTION 704(a) OF TITLE VII.**

Plaintiff's Complaint alleges that Holloway retaliated against him for filing an age discrimination claim by issuing Dossat a negative performance review and by threatening to terminate his employment.   Plaintiff cannot satisfy the required elements to establish a claim for retaliation because it is undisputed that,

1.   Holloway did not even know that Plaintiff had filed an age discrimination claim against him when he received the negative performance review;
2.   Plaintiff continued working as a DSM for almost 2 ½ years after he claims Holloway threatened to fire him;
3.   Plaintiff was administratively terminated due to his exhaustion of his allowable STD under the company's written policies; and
4.   There is no causal link between Plaintiff's complaints of age discrimination and his administrative termination over two years later.

*See Snider v. Greater Nevada*, LLC, Slip Copy, 2009 WL 3319802 (D. Nev.); *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2004).   Therefore, Plaintiff's retaliation claim must be dismissed as a matter of law.

**C.**   **THIRD, FOURTH, AND FIFTH CAUSES OF ACTION: NEGLIGENT HIRING, NEGLIGENT TRAINING AND SUPERVISION, AND NEGLIGENT RETENTION.**

Plaintiff's claims for negligent hiring (3rd cause of action), negligent training and supervision (4th cause of action), and negligent retention (5th cause of action), must be dismissed as a matter of law because Plaintiff admitted that, 1) no one at Roche physically harmed him, 2) Holloway was qualified to be RSD, 3) Dossat and Holloway received discrimination and harassment training, and 4) Defendants properly investigated Plaintiff's complaints. *See Hall v. Raley's*, Slip Copy, 2010 WL 55332 (D. Nev.).

**D.**     **SIXTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

Plaintiff's claim for intentional infliction of emotional distress must be dismissed as a matter of law because it is premised on the contention that Defendants discriminated and retaliated against Plaintiff.  Due to the fact that Plaintiff's age discrimination, retaliation, and other common law causes of action are unsupportable, Plaintiff's emotional distress claim must also be dismissed.   Furthermore, Plaintiff cannot satisfy the essential elements necessary to sustain a claim for intentional infliction of emotion distress.

**III.**
**FACTUAL BACKGROUND**

Plaintiff filed suit against Defendants alleging 1) age discrimination in violation of the Age Discrimination in Employment Act of 1967 (42 U.S.C. 2000e et seq., 2) retaliation in violation of Section 704(a) of Title VII, 3) negligent hiring, 4) negligent training and supervision, 5) negligent retention, and 6) intentional infliction of emotional distress. *(Exhibit A, Complaint)*

On April 16, 1997, Plaintiff was hired by RLI as a Division Sales Manager ("DSM") for its Primary Care Division in Region 7, which included Las Vegas, Nevada.  The RLI Primary Care field sales force is generally comprised of three levels of personnel in each of the country's seven geographic regions.  Each region is led by one Regional Sales Director ("RSD"), who manages one or more DSMs.  Each DSM leads a division within the region and manages one or more Sales Professionals. *(Exhibit B, Holloway DT at pp. 110:4-111:9)*

At the time Dossat was hired as a DSM, he was 42 years old. *(Exhibit C, Dossat employment application)*  Plaintiff's date of birth is April 9, 1954; he is currently 56 years old. *(Exhibit C, Plaintiff DT at p. 6:22-24)*

Prior to working for RLI, Plaintiff was employed with DuPont from 1980 to 1997.  From approximately 1985 to 1988, Plaintiff worked as a Human Resources Manager at DuPont's plant in Belle, West Virginia, and handled all employee corrective actions, investigations, terminations, and EEOC complaints.  Plaintiff also attended several training

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

programs regarding discrimination, retaliation, and sexual harassment while he was HR Manager. *(Exhibit C, Dossat DT at pp. 22:8-28:18)*

In June or July, 2006, and while employed as a Roche DSM, Plaintiff applied for the vacant RSD position for the West Region, known as Region 7.  Plaintiff was not ultimately selected for the role.  Plaintiff claims that he was advised that he did not get the job as RSD because he lacked marketing experience. *(Exhibit C, Dossat DT at pp. 148:19-149:19)*

In October 2006, Holloway was named RSD for the West Region, Region 7, which included supervision of Plaintiff's division. *(Exhibit B, Holloway DT at p. 10:18–11:5)*  At the time Holloway was appointed RSD, he was 43 years old. *(Exhibit B, Holloway DT at p. 9:19-20)*  Holloway's date of birth is June 3, 1964; he is currently 45 years old. *(Exhibit B, Holloway DT at p. 9:19-20.)*  Plaintiff testified when Holloway was appointed as RSD, Plaintiff did not form any opinions regarding Holloway's qualifications.  Plaintiff also admitted that Holloway was more qualified than him to be RSD. *(Exhibit C, Dossat DT at pp. 154:22-25, 156:9-15)*

## A.   ROCHE'S POLICIES, PROCEDURES, AND TRAINING.

Plaintiff held a management position with RLI for more than a decade.  Plaintiff admitted that as a DSM, he was responsible for being familiar with and enforcing Roche's policies and procedures, including recognizing discrimination and sexual harassment. *(Exhibit C, Dossat DT at pp. 118:6–119:5)*  Additionally, plaintiff testified that he received anti-discrimination training in 2007 and 2008. *(Exhibit C, Dossat DT at pp. 117:8-14, 129:3-5)*  Holloway also received harassment and discrimination training in 2007 and 2008. *(Exhibit B, Holloway DT at pp. 52:5-15, 56:17-18, 59:5-8)*

Plaintiff also acknowledged that throughout his employment at Roche, he knew that he was expected to comply with all of Roche's policies and procedures. *(Exhibit C, Dossat DT at pp. 107:24–108:3)*

***Plaintiff admitted that he knew Roche had a policy which required that if he observed any <u>discriminatory</u> conduct, he had to immediately report it to HR.***

> Q.   That's fine.  Has it always been your understanding since you began working at Roche that if you observed any discriminatory conduct or sexual harassment that you had to immediately report it to human resources?

A.   Yes.
Q.   Has that ever changed?
A.   No.

*(Exhibit C, Dossat DT at p. 108:24–109:6)*

**Plaintiff also admitted that he knew Roche had a <u>non-retaliation</u> policy.**

Q.   Has it always been your understanding since you began working for Roche that retaliation of any kind against an employee or another individual for reporting discrimination, including sexual harassment for assisting company in an investigation of a complaint, was not to be tolerated and would subject the offenders to serious disciplinary action?
A.   Yes.

*(Exhibit C, Dossat DT at pp. 113: –114:3)*

**B.   MAY 10, 2007: HOLLOWAY ORALLY DISCIPLINED PLAINTIFF FOR PLACING AN UNAPPROVED BANNER PROMOTING ONE OF ROCHE'S DRUGS AT A MEDICAL CONVENTION.**

On May 10, 2007, Plaintiff attended the Pri-Med Convention in Anaheim, California and participated and represented Roche at a booth during this convention. During the convention, Plaintiff prominently placed an ***unapproved*** promotional banner at Roche's sponsored booth which made unsubstantiated claims about Roche's osteoporosis drug, Boniva®. Use of an unapproved sales or promotional device is a serious violation of Roche company policy because if the banner had been scrutinized by the FDA and/or Roche's competitors, it could have resulted in significant fines imposed on Roche. *(Exhibit G, August 13, 2007 Written Warning)*

While attending this conference, RSD Holloway witnessed the display of the unapproved promotional piece, removed it, and verbally reprimanded Plaintiff for his violation of company policy. Plaintiff did not dispute or otherwise complain about the May 10, 2007 verbal reprimand at the time it was given; rather he waited until December 14, 2007, (over 7 months later) to voice any concerns. *(Exhibit H, internal complaint dated December 14, 2007)*

Due to the severity of Plaintiff's violation, on August 13, 2007, the Company 1) issued Plaintiff a Written Warning relating to his May 10, 2007 violation of company policies, 2)

8 of 30

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

reduced his "variable pay payout," for the relevant trimester of 2007, and 3) informed him that any future policy violations would result in further disciplinary actions, up to and including termination. *(Exhibit G, August 13, 2007 Written Warning).* Plaintiff did not dispute or otherwise complain about the issuance or substance of the August 13, 2007 written warning at the time it was issued; rather, he waited four months before complaining to HR. *(Exhibit H, internal complaint dated December 14, 2007).* Holloway testified that it took several months to issue the Written Warning due to the incident having to be investigated by HR, people's vacation schedules, that the HR Manager being out of the office due to a family matter. *(Exhibit B, Holloway DT at p. 268:9-25)*

Prior to issuance of the Written Warning, Holloway gave Plaintiff an oral mid-year review of his performance on July 11, 2007. During the review, Holloway and Plaintiff talked about Plaintiff's failure to adhere to Roche's policies and procedures, among other things. *(Exhibit C, Dossat DT at p. 205:2-7)* Plaintiff did not complain to anyone about age discrimination or retaliation arising from his oral mid-year review at the time it was given. *(Exhibit C, Dossat DT at p. 205:2-7)*

## C.   DECEMBER 10, 2007: PLAINTIFF RECEIVED A SECOND WRITTEN WARNING BASED UPON HIS NEGLIGENCE IN REVIEWING, APPROVING, AND AUTHORIZING EXPENSE REPORTS WITHIN HIS DIVISION.

Roche's Accounts Payable Department performs random audits of all expenses by its salespeople in order to ensure that its personnel are complying with its policies and procedures. *(Exhibit B, Holloway DT at p. 41:3-10)* In the fall of 2007, Accounts Payable performed a random audit of the sales professionals within Plaintiff's division. *(Exhibit B, Holloway DT at pp. 39:17-40:11)* Holloway did not initiate or participate in the audit. *(Exhibit B, Holloway DT at pp. 39:17-40:11)* The random audit revealed that Plaintiff had approved many improper expenses by members of his sales team. *(Exhibit I, Audit Report)* For example, Plaintiff had authorized team member expenses for items such as $900 in poster frames from Art Barn on 5/9/2007. *(Exhibit I, Audit Report, Bates No. DEF00798)*

As a consequence of the audit report findings, on December 10, 2007, Holloway issued Plaintiff his second Written Warning due to his negligence in reviewing, approving, and

authorizing expense reports within his division.   *(Exhibit I, December 10, 2007 Written Warning)*  By virtue of his receipt of a second Written Warning, Plaintiff's variable pay payout was reduced.  Plaintiff was ***again*** advised that any future violations of the Company's policies would result in further disciplinary actions, up to and including termination.   *(Exhibit J, December 10, 2007 Written Warning)*.  Plaintiff did not dispute or otherwise complain about the issuance or substance of the second written warning at the time it was issued.  In fact, Plaintiff admitted during his deposition that the contents of the second Written Warning were accurate. *(Exhibit C, Dossat DT at p. 299:21-24)*

> Q.   Is there anything contained within Defendants' Exhibit W that is your second Written Warning which you believe is not accurate?
>
> A.   Not that I can see.

*(Exhibit C, Dossat DT at p. 299:21-24)*

Plaintiff also conceded that,1) he did not know who performed the audit, and 2) he never asked Holloway, Human Resources, Accounts Payable, or Roche management whether or not he could review the audit findings.  *(Exhibit C, Dossat DT at pp. 288:16–289:6, 302:1-22)*

**D.   DECEMBER 10, 2007: PLAINTIFF RECEIVED HIS WRITTEN YEAR-END REVIEW.**

On the same day that the second Written Warning was issued, Plaintiff received his written year-end review from Holloway.  Holloway's review contained several comments that criticized Plaintiff's performance and decisions over the course of the year.  *(Exhibit K, December 10, 2007 year-end review)*  Plaintiff admitted that he did not immediately complain to Holloway or anyone else at Roche about his year-end review, despite the fact that he realized that he would be receiving a "Does Not Meet" rating for the 2007 year.  *(Exhibit C, Dossat DT at p. 206:10-22)*.  On January 22, 2008, Holloway advised Plaintiff that he received a "Does Not Meet" rating for 2007.  *(Exhibit L, Plaintiff's Supplemental Interrogatory Responses)*

/ / /

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

**E.**     **DECEMBER 14, 2007: PLAINTIFF FILED AN INTERNAL COMPLAINT WITH ROCHE'S HUMAN RESOURCES DEPARTMENT ALLEGING AGE DISCRIMINATION.**

On or about December 14, 2007, Plaintiff filed a complaint with Roche's Human Resources Department entitled "Age Discrimination Complaint against Roche Pharmaceuticals by Randy Dossat." *(Exhibit H, internal complaint dated December 14, 2007)*. ***This was the first time that Plaintiff made any complaint to anyone at Roche regarding any allegation of discrimination or wrongdoing.*** Notably, this internal complaint was made nearly 7 months after plaintiff received the oral warning relating to his use of the unauthorized promotional materials, nearly 5 months after he received his mid-year review from RSD Holloway, nearly 3 months after he received the first Written Warning relating to the same infraction, and subsequent to his receipt of the second Written Warning and year-end review from his direct supervisor.

Plaintiff's complaint alleged the following actions constituted age discrimination:

1.     January 2007: Holloway called Plaintiff an "Old School" Division Sales Manager;

2.     July 11, 2007: During Plaintiff's oral mid-year review, Holloway "stated that he was concerned about a manager with my tenure when we discussed the MOTION contest and my direction, which again relates to age discrimination against me;"

3.     "At the manager's meeting in San Diego I over heard (sic) him say that some managers in this region should retire which is also related to age discrimination;"

4.     The August 13, 2007 Written Warning stated that Holloway "would not expect this from a Division Sales Manager with my tenure which I again took as an age discrimination comment;"

5.     "Most recently at my year end review on December 10, 2007, he stated that I might not be a good match for the new environment, which I again feel was an age discrimination comment;"

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

6. December 10, 2007 written review stated, "Based upon your tenure I would...;"

7. December 10, 2007 written review: "James states, 'You must accept the realization that times have changed and you must do everything that we (sp) can to avoid...' which I feel is another age discriminatory comment;"

8. December 10, 2007 written review: "James said, 'Randy, I must say that I was extremely disappointed with your lapse in judgment at the...' which I feel is another discriminatory comment;" and

9. December 10, 2007 Written Warning: "James states, 'This is now your second clear lapse in judgment within the past five (5) months despite my previous discussions with you.'   This is another age discriminatory comment."

*(Exhibit H, internal complaint dated December 14, 2007)*

Upon receiving Plaintiff's internal complaint, Human Resources began conducting a confidential investigation into Plaintiff's allegations, which included discussions with Plaintiff and Holloway.  *(Exhibit M, HR handwritten notes)*

**F.    HUMAN RESOURCES' INVESTIGATION INTO PLAINTIFF'S COMPLAINT.**

Upon receipt of Plaintiff's internal complaint, HR Managers, Kristine Kratschmer ("Kratschmer", formerly Koptchev) and Sharon Cohen ("Cohen"), began investigating Plaintiff's allegations.   Their investigation consisted of, among other things, interviewing Plaintiff and Holloway.  *(Exhibit M, HR notes; Exhibit N, Kratschmer DT at p. 10:2-4)*

**1.    Plaintiff's Admissions to Human Resources during the Investigation.**

As part of this investigation, Kratschmer and Cohen spoke with Plaintiff on January 17, 2008, and again on March 4, 2008.  *(Exhibit M, HR handwritten notes, Bates Nos. DEF00736-742, 745-746)*.  When Plaintiff was interviewed, he told the investigators that he believed that Holloway's use of the following words and phrases constituted age discrimination: "old school," "tenure," and "senior manager."   *(Exhibit M, HR handwritten notes, Bates Nos. DEF00736-742)*

When the investigators asked Plaintiff about the term "old school," Dossat reported that Holloway had called him "old school" only one time.  Plaintiff also told the investigators that he

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

did not know what "old school" meant, and was not offended at the time Holloway used the term. Plaintiff then admitted to the investigators that "old school" referred to his business style. *(Exhibit M, HR handwritten notes, Bates Nos. 736-742; Exhibit N, Kratschmer DT at p. 137:23-138:2)*

Regarding Plaintiff's allegation that he overheard Holloway saying that "some managers need to retire," Dossat admitted to the investigators that he did not know who Holloway was talking about, and never asked Holloway who he was referring to. *(Exhibit N, Kratschmer DT at p. 139:9-140:10)*

During their interview of Plaintiff, the investigators asked Dossat if he could remember any other age-specific comments. Plaintiff responded that he could not. Plaintiff also stated that nothing occurred between January 2007 and July 11, 2007 which he thought reflected age discrimination. *(Exhibit M, HR handwritten notes Bates No. DEF00737).*

Although not in the context of this particular investigation, Plaintiff testified in his deposition that after December 10, 2007, he could not recall Holloway saying anything to him which he considered to be discriminatory or offensive. *(Exhibit C, Dossat DT at pp. 313:15-314:3)* ***Therefore, all alleged discriminatory conduct occurred between July 11, 2007 and December 10, 2007.***

## 2. Holloway's Statements To Human Resources During The Investigation.

In connection with the investigation into Plaintiff's internal complaint of discrimination, Kratschmer and Cohen also interview RSD Holloway. In compliance with Roche's policies and procedures relating to the preservation of confidentiality in connection with company investigations, Holloway was ***not*** advised of the identity of the individual who filed a complaint against him. *(Exhibit O, Roche Equal Opportunity policy)* In fact, Holloway testified that the first time he became aware that Plaintiff had made any allegations of age discrimination or retaliation against him, or that Plaintiff had filed any internal or external complaint alleging discrimination or retaliation, was when Plaintiff's counsel sent Holloway a letter and a copy of the Complaint on ***February 6, 2009***. *(Exhibit B, Holloway DT at p. 273:4-22)*

In order to avoid identifying Plaintiff as the complainant in the interview with Holloway, Kratschmer and Cohen asked Holloway to explain whether he had used phrases such as "old school" and "tenure" in his work, and if so, what his intention was in using such terminology. In response to the questions posed in the investigation, Holloway denied making any discriminatory remarks toward anyone, yet admitted to using the phrase "old school" on occasion.   When asked to explain the reason for using the phrase "old school", Holloway explained that it was only used in reference to someone's management style, not his/her age. *(Exhibit L, HR handwritten notes).*

### 3.   February 26, 2008: Plaintiff Submitted A Second Internal Complaint.

During the course of HR's investigation into Plaintiff's initial complaint of age discrimination, Plaintiff submitted another complaint to HR on February 26, 2008 entitled "Age Discrimination Complaint against Roche Pharmaceuticals by Randy Dossat 2/26/2007."[2]   The complaint alleged that Holloway continued to discriminate against him on the basis of age; however, the complaint failed to refer to any comments by Holloway or anyone else at Roche which expressly or impliedly concerned Plaintiff's age.   Instead, the complaint only discussed Mr. Dossat's compensation package. *(Exhibit P, complaint, dated 2/26/2008)*  Again, Holloway was also unaware that plaintiff had submitted this second complaint to the Roche Human Resources Department alleging age discrimination. *(Exhibit B, Holloway DT at p. 273:4-22)*

### 4.   March 17, 2008: Human Resources Concluded Its Investigation.

On March 17, 2008, Human Resources concluded its investigation and issued a Closure of Complaint Review.   The Closure of Complaint Review letter stated that Roche had concluded its investigation and that the allegations of age discrimination were unsubstantiated. RSD Holloway, the alleged discriminator, received a Closure of Complaint Review letter; but the letter did not identify the complainant. *(Exhibit Q, March 17, 2008 Closure of Complaint Review)*

Kratschmer testified that Human Resources closed its investigation because Plaintiff's age was never referenced in any of the discussions Human Resources had with Holloway.

---

[2] Plaintiff's second internal complaint was incorrectly dated "2007" instead of "2008."

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

Additionally, Holloway's issues with Plaintiff were based solely on Plaintiff's refusal to follow Roche's policies, and his inability to properly manage his team, neither of which had anything to do with his age. *(Exhibit N, Kratschmer DT at pp. 135:13-136:2)*

Although Plaintiff claimed that HR did not look at all of the facts, Plaintiff admitted that he could not substantiate his allegation. Plaintiff also conceded that he never complained to anyone at Roche about the adequacy of HR's investigation, and that he did not know what else HR could have done to further its investigation. (Exhibit C, Dossat DT at pp. 329:2-331:4)

## G.    PLAINTIFF'S NERC/EEOC CHARGES, AND THIS LAWSUIT.

On June 2, 2008, Plaintiff filed a Charge of Age Discrimination with the Nevada Equal Rights Commission ("NERC"). Plaintiff's Charge alleged that Holloway referred to his "tenure" and to him being "old school." *(Exhibit R, NERC Charge of Discrimination)*

The Charge also claimed that three other managers who were all over 50 left Roche because of Holloway's discriminatory conduct towards them. *(Exhibit R, NERC Charge of Discrimination)* However, Plaintiff's Supplemental Responses to Interrogatories never made this allegation and Plaintiff never mentioned it in his deposition. *(Exhibit L, Supplemental Interrogatory Responses; Exhibit C, Dossat DT)*

On September 3, 2008, Defendants submitted their response to the NERC Charge. *(Exhibit S, Defendants' Response to NERC)* On January 14, 2009, the NERC notified Defendants that it was closing its file because Plaintiff had requested a Right-To-Sue Letter. *(Exhibit T, NERC notification of Right-To-Sue)*

On February 6, 2009, Plaintiff filed a Complaint in the United States District Court, District of Nevada. Included in the Complaint was a claim for retaliation in violation of "Title VII of the Civil Rights Act (Sec. 704(A) / 42 U.S.C. Section 2000e-3." *(Exhibit A, Complaint)*

***Three days later***, on February 9, 2009, Plaintiff filed a Charge for retaliation with the EEOC, which claimed that Defendants retaliated against him for complaining about age discrimination. More specifically, Plaintiff's Charge alleged that less than two months after he filed an internal complaint with Roche, he received a negative performance evaluation, and that he again received a negative evaluation after filing a Charge of Discrimination with the NERC.

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

*(Exhibit U, EEOC Retaliation Charge)* On April 9, 2009, Defendants sent the EEOC a response to Plaintiff's Charge of Retaliation. *(Exhibit V, Defendants' EEOC Response, dated 4/9/2009)*

## H.    PLAINTIFF'S SUBSEQUENT PERFORMANCE ISSUES.

On or about August 1, 2008, Holloway met with plaintiff to provide him with his oral 2008 mid-year review. During the meeting, Holloway and Plaintiff discussed methods to increase business. Holloway also pointed out two new areas where Plaintiff had exercised poor judgment, including 1) submitting an expense report for a meal in Los Angeles when the meal had been in Temecula, and 2) purchasing two bottles of wine for a client dinner when only two people attended (which was against Roche policy). *(Exhibit W, September 25, 2008, letter from Holloway to Plaintiff)*. Holloway sent Plaintiff a letter which memorialized the substance of Dossat's mid-year review on September 25, 2008. *(Exhibit W, September 25, 2008, letter from Holloway to Plaintiff)*

On February 11, 2009, Plaintiff received his year-end performance review, which stated that Plaintiff exceeded his budget allocation and had the largest unfavorable budget variances of all the primary care managers in the region. Accordingly, pursuant to Defendants' policies and standards, Plaintiff was given a "Does Not Meet" rating for the 2008 year. Plaintiff was also reprimanded in his review for failing to document another employee's performance and complete a mid-year performance review for his direct reports, which were significant transgressions. The review concluded that Plaintiff was continuing to make poor decisions and that his behavior needed to change. *(Exhibit X, February 11, 2009 performance review)*

### 1.    Performance Improvement Plan And Ensuing Issues.

As a result of Plaintiff having received two Written Warnings, and two consecutive "Does Not Meet" ratings, Plaintiff was placed on a Performance Improvement Plan ("PIP") on March 18, 2009. *(Exhibit Y, March 18, 2009 PIP)* The PIP set forth various objective goals, along with corresponding dates, for Plaintiff to achieve in order to improve his performance, including his ability to follow Roche policies and properly manage his team. In addition, periodic reviews or updates were scheduled throughout the duration of the PIP to assess plaintiff's progress toward successfully completing the PIP requirements. Plaintiff was advised

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

that the PIP would remain in place for 90 days (through June 17, 2009), and that if he was not able to satisfy the PIP's requirements, the Company reserved the right to take further action, up to and including termination. *(Exhibit Y, March 18, 2009 PIP)* ***Plaintiff admitted that he never complained to Holloway, Human Resources, Roche senior management, the NERC, or the EEOC about being placed on a PIP.*** *(Exhibit C, Dossat DT at pp. 393:23-25, 394:11-23)*

Approximately two weeks after commencement of the PIP, Plaintiff underwent *elective* shoulder surgery and went out on STD leave from March 31, 2009 until June 18, 2009 (over 2 ½ months). *(McMaster Declaration)* Instead of returning to work on June 19, 2009, Plaintiff decided to take a two week vacation until July 6, 2009. *(Exhibit L, Plaintiff's Supplemental Interrogatory Responses).*

Because Plaintiff had been out of work on medical leave for the majority of the PIP period, on July 22, 2009, he was informed that the PIP was being continued. At that time, Plaintiff was provided with a written PIP Addendum.[3] The only change made in the PIP Addendum was the extension of the PIP deadline to October 5, 2009. *(Exhibit Z, July 22, 2009 PIP Addendum; Exhibit L, Plaintiff's Supplemental Interrogatory Responses).* Plaintiff admitted that Holloway did not say or do anything on July 22, 2009 when he received the PIP Addendum; yet Plaintiff still claimed that the PIP was somehow discriminatory based upon his age. Plaintiff also admitted that other than the fact that the PIP Addendum referenced the initial PIP and other discipline, it did not contain anything discriminatory. *(Exhibit C, Dossat DT at pp. 413:12-15, 416:2-5).* Shortly after the PIP Addendum was issued, on August 18, 2009, Plaintiff went out on disability leave due to "stress." Plaintiff did not return to work until November 23, 2009. *(Exhibit L, Plaintiff's Supplemental Interrogatory Responses)*

On November 22, 2009, Holloway called Plaintiff at home and informed him that the PIP remained in effect and was being extended again so that plaintiff had time to work toward satisfying the objective requirements contained in the PIP. Accordingly, the PIP was again extended to March 31, 2010. *(Exhibit AA, PIP Addendum II dated January 8, 2010; Exhibit L, Plaintiff's Supplemental Interrogatory Responses)* Plaintiff admitted that Holloway did not say

---

[3] Although the PIP Addendum was dated July 6, 2009, it was actually given to Plaintiff on July 22, 2009.

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

anything to him during their conversation which he considered to be discriminatory. *(Exhibit C, Dossat DT at p. 419:9-13)*

On January 8, 2010, Holloway provided Plaintiff with a copy of PIP Addendum II. *(Exhibit AA, PIP Addendum II dated January 8, 2010).* Shortly thereafter, Plaintiff agreed to meet with Holloway on March 1, 2010 to review his progress under the PIP. However, on March 1, 2010, at 6:51 a.m., Plaintiff sent an e-mail to Holloway stating that he was taking the entire week off for vacation. *(Exhibit BB, March 1, 2010 e-mail chain)* Holloway sent an e-mail response to Plaintiff the same day, which said in part, that Dossat had still not provided key reports and action items identified in the PIP, and that the terms of the PIP required that Dossat provide *advanced* notice of any vacation time. *(Exhibit BB, March 1, 2010 e-mails)*

Plaintiff ended up taking off two weeks for vacation and returned to work on March 19, 2010. At that time, Holloway met with Plaintiff and reviewed Plaintiff's progress under the PIP. Holloway also informed Plaintiff that their next PIP progress meeting would take place during the week of April 5, 2010. *(Exhibit CC, March 25, 2010 correspondence)* However, on April 6, 2010, Plaintiff sent Holloway an e-mail claiming that he was sick and failed to attend their scheduled meeting on April 6, 2010. *(Exhibit DD, April 6, 2010 correspondence; Exhibit D, disability correspondence)* Therefore, on April 7, 2010, Holloway rescheduled the meeting for April 8, 2010. *(Exhibit EE, April 8, 2010 correspondence).* On April 8, 2010, Plaintiff advised Holloway that he would be out on disability leave until May 6, 2010. *(Exhibit FF, April 8, 2010 correspondence)*

**2.    Circumstances Surrounding Plaintiff's Administrative Termination.**

Pursuant to Roche's Benefits and Disabilities policies, an employee is entitled to seek STD leave for a period not to exceed 182 days during any given rolling period of 365 days. If an employee is out on STD leave for more than 182 days during any 365 day rolling period, the employee is administratively terminated and eligible to apply for LTD. Prior to the expiration of this 182 day period, Roche Employee Health Services ("EHS") contacts the employee to advise him that he is approaching the expiration of his permissible STD period and provides him with a packet of information which includes forms that can be submitted requesting LTD

benefits. *(Exhibit E, Disability policy; Exibit F, Termination policy; Mincey Declaration; McMaster Declaration)*

On or about April 9, 2010, Plaintiff was contacted by Minnie Mincey of Roche's EHS Department to confirm Plaintiff's statement to his supervisor, James Holloway, that plaintiff would remain out on medical leave until May 6, 2010. Ms. Mincey contacted Plaintiff to remind him that pursuant to Roche policies, Plaintiff would exceed his permitted STD limit on April 14, 2010 if he did not return to work on or before that date. Plaintiff informed Ms. Mincey that he thought the 182-day STD clock had "reset" and that had he known otherwise, he would have sought to return to work prior to April 14, 2010. Despite his e-mail communication to Holloway that he would be out on medical leave until May 6, 2010, Plaintiff submitted correspondence from his physician that he would be medically able to return to work on April 14, 2010. *(Mincey Declaration; Exhibit GG, medical correspondence)*

On April 9, 2010, Roche's EHS Department sent Plaintiff Roche's LTD Packet via Federal Express delivery.[4] Plaintiff confirmed his receipt of this packet on April 12, 2010. On April 13, 2010, Delphine McMaster, a physician employed by Roche EHS, contacted plaintiff via telephone to confirm his receipt of the LTD Packet and to reiterate the text of the letter accompanying the LTD packet, which informed Plaintiff that his last day to return to work prior to exhaustion of this 182-day STD period was April 14, 2010. Plaintiff informed Dr. McMaster that he had received the LTD packet, was aware that his last day to return to work was April 14, 2010, and that he had decided not to return to work and instead to apply for LTD benefits under the Roche disability benefits plan. Notwithstanding the correspondence from his physician stating that Plaintiff would be medically able to return to work on April 14, 2010, Plaintiff did not return to work on April 14, 2010. Pursuant to Roche policy, Plaintiff's employment was administratively terminated on April 15, 2010. *(McMaster Declaration; Exhibit; Exhibit D, Disability correspondence)*

---

[4] This was not the first time Plaintiff had received notification that he was approaching the exhaustion of the 182-day STD period. In September 2009, Plaintiff was sent a similar letter from EHS explaining that if he failed to return from a prior medical leave on or before November 27, 2009, his employement would be administratively terminated pursuant to Roche benefits policies and that he would be eligible to apply for LTD benefits thereafter.....

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

# IV.
## ARGUMENT

**A.    LEGAL STANDARD**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).   The moving party bears the burden of demonstrating the absence of a genuine issue of material fact and the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

"[A] material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth." *Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986) (quoting *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir. 1982)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.   If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

"A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978).   Moreover, "[i]f the factual context makes the nonmoving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998).   Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A plaintiff must file a charge of discrimination with the EEOC (including NERC) within 300 days "after the alleged unlawful employment practice occurred...." 42 U.S.C. § 2000e-5(e)(1).

/ / /

/ / /

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

**B.**     **SEVERAL OF PLAINTIFF'S ALLEGATIONS CONCERNING AGE DISCRIMINATION AND RETALIATION ARE TIME BARRED.**

For discrimination and retaliation claims, the time for filing a charge of discrimination with the EEOC begins when the discriminatory or retaliatory act occurs. *Panelli v. First American Title Ins. Co.*, --- F.Supp.2d ----, (D. Nev. 2010). Therefore, if a complaint alleges discrimination based on discrete acts outside of the statutory time period, the occurrence of additional discrete acts within the statutory time period does not make those previous acts timely. *Id.*

In order for a plaintiff to possibly defeat a statute of limitations issue, the plaintiff must successfully claim that the discriminatory conduct was is not sporadic; rather, it is widespread throughout a company or that is a routine and regular part of the workplace. *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003). Thus, to demonstrate a prima facie case of pattern-or-practice discrimination, a plaintiff must establish by "a preponderance of the evidence that ... discrimination was the company's standard operating procedure – the regular rather than the unusual practice." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984).

Based on the claimed incidents of age discrimination and retaliation as stated in Plaintiff's NERC and EEOC Charges, as well as his Complaint filed in Federal Court, it is clear that this is not a pattern and practice case. Holloway's alleged conduct was sporadic at best; therefore, the 300 day rule of should be applied to bar several of the alleged incidents or age discrimination and retaliation. *See Panelli v. First American Title Ins. Co.*, --- F.Supp.2d ----, (D. Nev. 2010).

**1.**     **The Statute Of Limitations Negates Several Claimed Incidents Of Age Discrimination.**

Plaintiff filed an age discrimination claim with NERC on ***June 2, 2008***. Therefore, the following alleged incidents of age discrimination (all of which occurred before August 7, 2007 (i.e. 300 days before June 2, 2008)) must be time barred:

- January 7, 2007: Commercial Leadership meeting in Florida for all Company Sales Managers. During lunch, Plaintiff and Holloway were discussing management styles and methods. After Holloway described his opinions

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

regarding micro and macro management, Holloway called Dossat's management style "old school."

- May 25, 2007: Holloway and LeRoy Orosczco conducted a business review with Dossat. Plaintiff's testimony conflicts on what occurred. Either Holloway declared that Dossat's methods of managing his team were "old school" or Holloway stated that "some managers need to retire."

- June 8, 2007: Plaintiff claims that Holloway denied his request for educational assistance.

- July 11, 2007: Plaintiff alleges that during a meeting with Holloway to discuss the results of a Regional Contest, Holloway questioned the type of direction Dossat was giving his team and said that a Manager of his "tenure" would give more specific direction.

- July 11, 2007: Holloway conducted Plaintiff's oral mid-year review. Dossat claims that during review, Holloway made several discriminatory remarks.

**2.    The Statute of Limitations Negates Several Claimed Incidents Of Retaliation.**

Plaintiff filed a retaliation claim on February 9, 2009. Therefore, the following alleged incidents of retaliation (all of which occurred before April 15, 2008 (i.e. 300 days before June 2, 2008)) must be time barred:

- February 22, 2008: Holloway told Dossat he received a "does not meet rating."

- March 17, 2008: HR closed its investigation.

- April 14, 2008: During a Regional Managers Meeting, Sharon Cohen mentioned that in all instances of discrimination, the discriminating party is informed that a complaint was filed against him.

**C.    PLAINTIFF'S CLAIM FOR AGE DISCRIMINATION FAILS AS A MATTER OF LAW BECAUSE THE ALLEGED DISCRIMINATORY CONDUCT WAS NOT AGE RELATED.**

In order to establish a prima facie case of an ADEA violation, Plaintiff must show that he, 1) was a member of a protected class (age 40-70)[5], 2) was performing his job in a satisfactory manner, 3) was rejected for employment or otherwise subjected to an adverse

---

[5] Based on plaintiff's age, defendants do not dispute that Plaintiff has satisfied the protected class element.

employment action[6], and 4) was replaced by a substantially younger employee with equal or inferior qualifications.  *Smith v. FJM Corp.*, Slip Copy, 2009 WL 703482 (D. Nev.); *See also Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994).

1.    **Plaintiff Cannot Satisfy The Second Prong Of The Test Because He Was Not Performing His Job In A Satisfactory Manner.**

The following evidence demonstrates that Plaintiff was not satisfactorily performing his job function, had no intention to improve his performance, and has been playing fast and loose with Roche's policies and procedures.

- <u>May 10, 2007:</u> Plaintiff placed an unapproved banner at Defendants' sponsored booth.  Holloway removed the manner and orally reprimanded Plaintiff.  Plaintiff testified that he knew he was supposed to obtain Roche's prior approval for the banner, yet failed to do so.

- <u>August 13, 2007:</u> Plaintiff received a Written Warning relating to the unapproved banner.

- <u>December 10, 2007:</u> Plaintiff received a Written Warning concerning the results of a random audit which revealed that he had approved numerous improper expenses for his salespeople.

- <u>December 10, 2007:</u> Plaintiff's year-end review discussed his behaviors and the need to improve his conduct.

- <u>January 22, 2007:</u> Plaintiff received a "Does Not Meet" rating for 2007.

- <u>August 1, 2008:</u> Holloway conducted a mid-year review of Plaintiff's performance and noted that Dossat was either unwilling or unable to grasp adhere to Roche's policies and manage his team.

- <u>September 25, 2008:</u> Holloway sent Plaintiff a letter which discussed Dossat's continued failure to adhere to Roche's policies and procedures, including 1) submitting an expense report for a meal in Los Angeles when the meal had been in Temecula, and 2) purchasing two bottles of wine for a client dinner when only two people attended.

---

[6] Although Defendants dispute Plaintiff's claims that certain discipline, comments, or actions were "adverse employment actions" under the applicable law, for purposes of this Motion, Defendants concede that Plaintiff's failure to receive variable pay bonuses and salary increases resulting from him policy violations and substandard word performance may constitute "adverse employment actions."  With respect to these issues alone, Defendants do not dispute that Plaintiff has satisfied the third prong of the *Smith* test.

- <u>February 11, 2009:</u> Plaintiff received a "Does Not Meet" rating for 2008.

- <u>March 18, 2009:</u> Plaintiff was placed on a PIP.

- <u>March 31, 2009 – July 6, 2009 and August 18, 2009 – to November 23, 2009:</u> The PIP needed to be modified several time to address plaintiff's work absences and other failures to submit required documents to review his performance under the PIP.

- <u>March 1, 2010:</u> Plaintiff failed to meet with Holloway to review his PIP progress.

- <u>April 6, 2010:</u> Plaintiff failed to meet with Holloway to review his PIP progress.

- <u>April 8, 2010:</u> Plaintiff failed to meet with Holloway to review his PIP progress.

- <u>April 8, 2010:</u> Plaintiff informed Roche's Disability and Benefits Department that he thought the 182-day STD clock had "reset" and that had he known otherwise, he would have sought to return to work prior to April 14, 2010.

- <u>April 8, 2010:</u> Despite his e-mail communication to Holloway that he would be out on medical leave until May 6, 2010, Plaintiff submitted correspondence from his physician that he would be medically able to return to work on April 14, 2010.

Plaintiff will undoubtedly claim that the above-referenced behavioral concerns ignore the fact that Plaintiff's sales performance was excellent. Plaintiff's argument, however, is misguided. First, as a DSM, Plaintiff did not personally sell Roche's drugs, the sales representative who reported to him did. Second, Holloway repeatedly told Plaintiff that his performance was "not just about sales," and that as a DSM, his ability to follow procedures and manage his sales team were just as, if not more, important.

It is clear from reviewing the voluminous records that Plaintiff's performance was completely unsatisfactory. Therefore, Plaintiff cannot satisfy the second prong of the test, and his age discrimination claim must fails as a matter of law.

### 2. <u>Plaintiff Has Not Been Replaced By A Substantially Younger Employee With Equal Or Inferior Qualifications.</u>

Although plaintiff's employment was administratively terminated due to his exhaustion of the permissible period of STD leave, plaintiff has also not been yet replaced by anybody –

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

younger or older.  Accordingly, Plaintiff cannot dispute the fact that he cannot meet the fourth prong, and as such, his age discrimination claim must be dismissed as a matter of law.

**D.    PLAINTIFF'S RETALIATION CLAIM MUST BE DISMISSED AS A MATTER OF LAW BECAUSE IT IS UNDISPUTED THAT HOLLOWAY WAS NOT AWARE THAT PLAINTIFF HAD FILED CLAIMS FOR AGE DISCRIMINATION WHEN THE ALLEGED RETALIATORY CONDUCT OCCURRED AND WAS NOT INVOLVED IN THE DECISION TO TERMINATE PLAINTIFF'S EMPLOYMENT.**

To make out a prima facie case of retaliation under Title VII or the ADEA, a plaintiff must demonstrate that: "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision." *Snider v. Greater Nevada, LLC*, Slip Copy, 2009 WL 3319802 (D. Nev.); *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2004).  If a prima facie case of retaliation is established and the employer articulates some legitimate non-retaliatory reason for the challenged action, the plaintiff "must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext." *Id.*  The plaintiff can demonstrate a genuine issue of pretext either directly by showing a discriminatory motive more likely motivated the employer or indirectly by showing the employer's explanation is not credible. *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991).

Plaintiff claims that Holloway retaliated against him for filing his age discrimination complaint.  Plaintiff alleges that Holloway retaliated against him for filing an internal complaint with Roche HR on December 14, 2007 by communicating a "Does Not Meet" rating for the 2007 year on February 22, 2008.  Plaintiff also claims that his receipt of a negative performance review (presumably this is a reference to Plaintiff's August 1, 2008 mid-year review) was also in retaliation for his complaints.  Plaintiff further claims that the reduction of his variable pay in 2007 and 2008, as well as his ineligibility to receive pay raises due to being on a PIP, we also retaliatory.  Finally, plaintiff alleges that Holloway's purported threat to terminate him on January 14, 2009 was also retaliatory.

Plaintiff cannot substantiate any of his allegations of retaliation because it is undisputed that Holloway only became aware that Plaintiff had filed ***any*** age discrimination and retaliation

claims against him when Plaintiff's counsel sent Holloway a letter and a copy of the Federal Court Complaint on *February 6, 2009*.  Therefore, it would have been impossible for Holloway to retaliate against Plaintiff regarding any complaints to which he had no knowledge.

Regarding the PIP, it is undisputed and well documented that plaintiff was placed on the PIP to address and improve his poor work performance and inability to satisfactorily manage the sales professionals within his division.  Placement on the PIP was not driven by any discriminatory or retaliatory animus.  In addition, plaintiff has proffered no evidence to support a claim that placement on the PIP was in any way discriminatory or retaliatory.

Finally, although not yet claimed by the Plaintiff, Dossat's termination could in no way be deemed discriminatory or retaliatory.  Plaintiff's employment was terminated based on his exhaustion of the Company's permissible 182-day STD period under Roche's disability benefits policies.  Plaintiff was given advance notice (both orally and in writing) of the date when his employment would be terminated due to exhaustion of permissible STD leave.

Plaintiff submitted medical documentation reflecting his ability to return to work prior to April 15, 2010, the date when his employment would be terminated.  Dossat also spoke with members of Roche's EHS department and acknowledged that his employment would be terminated if he did not return to work prior to April 15, 2010, informed them that he did not intend to return to work, and advised them that he simply intended to apply for LTD.

Furthermore, plaintiff had received similar oral and written communications from Roche in September, 2009 advising him that, due to prior extended medical leaves in early and mid-2009, he would exhaust his permissible 182-day STD period on November 27, 2009.  Recognizing that his employment would be terminated pursuant to company policy, Plaintiff returned to work on November 26, 2009.  In April, Plaintiff chose not to return to work on or before April 14, 2010, despite his physician's statement that he was able to do so.  Holloway, the alleged discriminator and retaliator, played no role and had no input into the "decision" to administratively terminate Plaintiff's employment on April 15, 2010.  Accordingly, his termination on April 15, 2010 was is no way based on, or related to, any discrimination or retaliation.

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

**E.      HOLLOWAY'S ALLEGED REMARKS, ARE NOT EVIDENCE OF AGE RELATED ANIMUS BECAUSE THEY AT MOST CONSTITUTED STRAY REMARKS.**

Even if the Court wishes to analyze the content of Holloway's alleged comments, the only conclusion to be reached is that they, at most, amount to stray remarks that do not exhibit age related animus, and are insufficient to support a claim of age discrimination or retaliation.

Stray remarks are insufficient to establish discrimination. *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) (Decision-maker's comment that he chose a certain employee because he was a "bright young man" was insufficient to raise a triable issue of fact.); see also *E.E.O.C. v. Republic Services, Inc.*, 640 F.Supp.2d 1267, 1270 (D. Nev. 2009) (Use of the term "old man" a few times was not connected to plaintiff's termination either in conduct or in closeness of time; therefore, the comments "are nothing more than stray remarks, which are insufficient to constitute direct evidence of age discrimination."); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 915, 918-19 (9th Cir. 1997) (A supervisor's statements that he intended to get rid of all the "old timers" because they would not "kiss my ass," was not tied directly to employment decisions, and was held to be "at best weak circumstantial evidence" and "not enough to create an inference of age discrimination.")

**Old School:** In *Shontz v. Rite Aid of Pennsylvania Inc.*, Slip Copy, 2008 WL 793878 (W.D.Pa.), the Court granted defendant's motion for summary judgment, holding that a manager's reference to plaintiff as being "old school" did not constitute age discrimination. The Court reasoned that "old school" was not age related animus because, 1) there was never any explanation regarding why the comment was made, 2) plaintiff never reported the event to defendant, and 3) plaintiff remained employed by defendant. Therefore, the Court concluded that this stray comment, without more, was not evidence of age discrimination. *Id.*

Similarly, in *E.E.O.C. v. TIN Inc.*, Slip Copy, 2008 WL 2323913 (D.Ariz.), the Court held that defendant's preference for "energetic," "fresh," and "youthful," rather than "old school" and "old fashioned," did not necessarily reflect age-based animus or provide credible evidence that a discriminatory reason motivated defendant to terminated plaintiffs. *Id. See also Bay v. Fairfield Resorts, Inc.*, Slip Copy, 2007 WL 4373022 (E.D.Tenn.) (A supervisor's

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

**F.     PLAINTIFF'S CAUSES OF ACTION FOR NEGLIGENT TRAINING AND SUPERVISION, NEGLIGENT HIRING AND NEGLIGENT RETENTION MUST BE DISMISSED BECAUSE PLAINTIFF HAS NOT BEEN PHYSICALLY HARMED.**

In *Hall v. Raley's*, Slip Copy, 2010 WL 55332 (D. Nev.), the Court held that physical harm is necessary to sustain a claim for negligent retention and supervision, negligent hiring and negligent retention in Nevada.  Because Plaintiff admitted that, 1) no one at Roche ever physically harmed him, 2) Holloway was qualified to be RSD, 3) Dossat and Holloway received discrimination and harassment training, and 4) Defendants properly investigated Plaintiff's complaints, Plaintiff's claims relating to these causes of action must be dismissed as a matter of law.

**G.     PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS MUST BE DISMISSED AS A MATTER OF LAW BECAUSE IT CANNOT SURVIVE AS AN INDEPENDENT TORT.**

To establish a cause of action for intentional infliction of emotional distress, a plaintiff must demonstrate (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation. *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 956 P.2d 1382 (1998).

Simply stated, Plaintiff cannot show that Defendant's conduct was extreme and outrageous with either the intention of, or reckless disregard for, causing emotional distress. Further, in the event that all of Plaintiff's other claims are dismissed, his cause of action for intentional infliction of emotional distress must also be dismissed because it is wholly dependent on the viability of his other claims.

/ / /

/ / /

/ / /

/ / /

/ / /

29 of 30

# V.
## <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that the subject Motion for Summary Judgment be granted in its entirety.

Dated: April 30, 2010                                        Howard & Howard Attorneys PLLC


By: /s/ Robert L. Rosenthal
     Robert L. Rosenthal
     3800 Howard Hughes Parkway, Suite 1400
     Las Vegas, Nevada  89169
     Attorneys for Defendants

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of April, 2010, I served the above Defendants' Memorandum of Points and Authorities In Support of Motion For Summary Judgment through the CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by U.S. Mail, first class, postage pre-paid), upon the following:

Esteban-Trinidad Law, P.C.
M. Lani Esteban-Trinidad
4315 N. Rancho Drive, Suite 110
Las Vegas, Nevada 89130

Attorney for Plaintiff

/s/ Barbara J. Dunn
An Employee of Howard & Howard

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

1586875