Howard & Howard Attorneys PLLC
Robert L. Rosenthal, Esq.
NV Bar No. 6476
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
Telephone: (702) 257-1483
Facsimile: (702) 567-1568
E-Mail Address: rlr@h2law.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RANDY DOSSAT, an individual<br><br>Plaintiff,<br><br>vs.<br><br>HOFFMANN-LA ROCHE, INC. dba ROCHE LABS, a New Jersey Corporation; ROCHE LABORATORIES, INC., a corporation, DOES 1 through 10, inclusive, ROES CORPORATIONS/ENTITIES 1 through 10 inclusive,<br><br>Defendants. | Case No.: 2:09-CV-00245-KJD-PAL<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(ORAL ARGUMENT REQUESTED** |

**I.**
**INTRODUCTION**

Plaintiff's Response fails to address and/or substantively oppose the vast majority of Defendants' Motion, including Defendants' Separate Statement of Undisputed Facts, Factual Background, and Legal Argument concerning Dossat's second, third, and fourth claims for negligent hiring, negligent training and supervision, and negligent retention. Instead, Plaintiff's Response consists of a re-hash of his lengthy Supplementary Interrogatory Responses. Accordingly, the Court should construe Plaintiff's failure to dispute Defendants' material facts as Plaintiff's concession to their truth and accuracy.

Plaintiff's Response also does not materially challenge Defendants' assertion that Dossat's allegations were brought in an effort to divert attention from discipline which was legitimately imposed upon him (i.e. the best defense is a good offense). Plaintiff's brief never even attempts to argue that the reprimands meted upon him for his clear, repeated, and admitted violations of written company policies were somehow driven by an age-related or retaliatory animus.

Plaintiff does not address the undisputed material facts put forth in Defendants' Motion for one obvious reason: They are true. The reality of this case is that Plaintiff's performance was inadequate, he was appropriately counseled, and he elected not to return to work after exhausting his Short Term Disability leave. Accordingly, Plaintiff's claims are without merit and should be dismissed as a matter of law.

## II.
## FACTS

The first section of Plaintiff's Response is entitled "Summary" and appears to be a carbon copy of his Supplemental Interrogatory Responses. *(Plaintiff's Response at pp. 2:17 – 8:4)* The only evidence provided by Plaintiff in support of his Summary is his own affidavit, which either materially contradicts his deposition testimony, or flies in the face of his own documents.

For example, Plaintiff alleges that in January 2007, Holloway called him "old school" in a demeaning tone, which caused him to be "very offended, shocked, and embarrassed." *(Plaintiff's Response at p. 2:18-21)* However, Dossat fails to mention that he admitted, 1) that Holloway called him "old school" only once, 2) he did not know what "old school" meant at the time it was said, 3) he was not offended when Holloway used the term, 4) he told Defendants' Human Resources Department ("HR") that "old school" referred to his business style, and 5) he waited 11 ½ months before complaining about the incident. *(Defendants' Exhibit M, HR handwritten notes, Bates Nos. 736-742; Exhibit N, Kratschmer DT at p. 137:23-138:2)*

The second contention in Plaintiff's Summary is similarly flawed. At page 2:22-27, Dossat maintains that in May 2007, Holloway told him his management methods were "old school," which he took to be a reference to his age, which resulted in him feeling "degraded and

humiliated." However, Dossat admitted in his deposition that Holloway never called him "old school" in May 2007. (Defendants' Exhibit C, Dossat DT at pp. 197:19–198:20)

Yet one more example can be found in Plaintiff's third assertion which states that in June 2007, his request for educational assistance was denied, while "other, younger managers received approvals."[1] *(Plaintiff's Response at p. 3:1-2)* Plaintiff's brief does not provide any supporting evidence for this allegation and he neglects to reveal that he admitted, 1) he did not have any facts or evidence to support his allegation that his request for tuition reimbursement was denied because of his age, 2) the only other employee he knew of whose request for educational assistance to attend law school was granted was approximately 10 years earlier, 3) Plaintiff never asked anybody at Roche why his request for tuition reimbursement was denied, and 4) he did not have any facts or documents to indicate that his age was a motivating factor in Roche's denial of his request for tuition reimbursement.

The next portion Plaintiff's Response is entitled "Undisputed Material Facts" and is only 3 ½ pages long. *(Plaintiff's Response at pp. 8:7 – 11:8)* The first 1 ½ pages are devoted to "Plaintiff's Performance" – which lists his awards, bonuses, and Region's sales, and the remaining pages discuss alleged "discriminatory comments based on age." *(Plaintiff's Response at p. 9:19 – 10:14)*

With respect to performance, Plaintiff appears to contend that because the sales people under his supervision had a history of very good sales, Defendants could not have had valid reasons for disciplining him. Plaintiff's supposition flies in the face of the evidence and common sense. Plaintiff's written warnings, "does not meet" ratings, and PIP were all issued because of Dossat's repeated failure to comply with Defendants' policies and procedures.

With regard to discriminatory comments, Plaintiff only lists two remarks which he contends were discriminatory. First, Plaintiff claims that in January 2007, Holloway referred to

---

[1] Defendants' Motion and accompanying Separate Statement of Undisputed Material Facts addressed all of the points raised in Plaintiff's Response; therefore, for the sake of judicial economy Defendants will not repeat the contents of their briefs.

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

Plaintiff as "old school."[2]  Second, Plaintiff maintains that Holloway alluded to Dossat's "tenure" in an August 13, 2007 Written Warning, and in Dossat's written mid-year and year-end reviews, which he received on December 10, 2007.

### III.

### ARGUMENT

**A. PLAINTIFF'S RESPONSE DOES NOT ADDRESS DOSSAT'S PERFORMANCE PROBLEMS; THEREFORE, PLAINTIFF FAILS TO SATISFY THE SECOND ELEMENT NECESSARY TO MAKE OUT A CASE OF AGE DISCRIMINATION.**

In order to establish a prima facie case of an ADEA violation, Plaintiff must show that he, 1) was a member of a protected class (age 40-70), 2) was performing his job in a satisfactory manner, 3) was rejected for employment or otherwise subjected to an adverse employment action, and 4) was replaced by a substantially younger employee with equal or inferior qualifications. *Smith v. FJM Corp.*, Slip Copy, 2009 WL 703482 (D. Nev.); *See also Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994). [3]

Plaintiff's Response confuses sales volume with performance.  Plaintiff posits that because his sales team was consistently ranked high with respect to pharmaceutical sales, he must have performed his job in a competent manner.  However, one has nothing to do with the other, and significantly, Plaintiff does not dispute the justification for Defendants issuing written warnings, and "does not meet" ratings.  Further, Plaintiff does not challenge the necessity of Defendants placing him on a Performance Improvement Plan ("PIP"), which set forth various objective goals and dates for Plaintiff to achieve success.

---

[2] Plaintiff's Response states "James Holloway *repeatedly* referred to Plaintiff as "old school" and points to several portions of his own deposition transcript, as well as those of Kristine Kratschmer and James Holloway. (Plaintiff's Response at p. 9:20-24)  However, none of Plaintiff's proffered evidence actually states that Holloway *repeatedly* referred to Plaintiff as "old school;" rather, all of the testimony affirms that Holloway used the phrase with Plaintiff on one occasion in January 2007 when the two were discussing Plaintiff's management style.

[3] Plaintiff's Response erroneously maintains that Defendants' Motion stated that in order to satisfy the fourth element, Plaintiff needed to be fired. (Plaintiff's Response at p. 14:7-8)  In reality, Defendant's Motion noted that the fourth element required plaintiff to be replaced by a substantially younger employee with equal or inferior qualifications.

*Howard & Howard Attorneys PLLC*
3800 Howard Hughes Pkwy., Ste. 1400
Las Vegas, NV 89169
(702) 257-1483

In short, Defendants have provided the Court with voluminous documents, deposition transcripts, and declarations, which all demonstrate that Dossat was not performing his job in a satisfactory manner. Accordingly, Plaintiff cannot satisfy the second element necessary to sustain a claim for age discrimination.

### B. PLAINTIFF'S RESPONSE FAILS TO SATISFY THE FOURTH ELEMENT NECESSARY TO SET FORTH A CLAIM FOR AGE DISCRIMINATION BECAUSE DOSSAT WAS NOT REPLACED BY ANOTHER EMPLOYEE, AND HE WAS NOT CONSTRUCTIVELY TERMINATED.

Plaintiff does not dispute that he was not replaced by a substantially younger employee with equal or inferior qualifications. Instead, Plaintiff now claims that he was constructively discharged, and therefore, has satisfied the fourth prong of the test. Dossat maintains that he was forced to resign because working conditions became so intolerable. Plaintiff's argument, however, is fatally flawed for a variety of reasons.

A "constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). To survive summary judgment, "a plaintiff must show there are triable issues of fact as to whether a reasonable person in his position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1184 (9th Cir. 2005), as amended by, 433 F.3d 672 (9th Cir. 2006), 436 F.3d 1050.

To establish that he was constructively discharged, a plaintiff must at least show some aggravating factors, such as a continuous pattern of discriminatory treatment. *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1412 (9th Cir.1996); *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987).

A case directly on point to the instant action is *Pratta v. American General Financial Services, Inc.*, 2006 WL 2639552 (D. Del.). In *Pratta*, plaintiff was a 43-year-old branch manager for American General Finance Services, Inc. ("AGF"). Her immediate supervisor was AGF's district manager, whose management style she described as "threatening and harsh." *Id.* Plaintiff claimed that the district manager sent her e-mails in which he used the words "old

colleagues," "old timers," and "old farts." *Id.* About six months after receiving the e-mails, the district manager issued plaintiff a formal counseling report because he believed she had failed to follow his directive to spend time each week developing external business. The same day, he also asked her to report a loan. When plaintiff responded that she did not know how to do that, he allegedly became angry and verbally abusive. According to plaintiff, the district manager informed her that she had to sign a letter of demotion in lieu of being terminated. *Id.*

Plaintiff in *Pratta* refused to sign the letter and did not return to work. Plaintiff then advised human resources that she needed some time to recover from the incident with her supervisor. Human resources proceeded to provide plaintiff with paperwork regarding AGF's STD and FMLA leave. Several months later, plaintiff was informed by letter that her STD benefits would soon expire and she could apply for LTD benefits or complete the appropriate paperwork to facilitate a return to employment. The letter also reiterated AGF's STD and LTD policies. Thereafter, plaintiff applied for and was approved to receive LTD benefits. AGF then notified plaintiff that plaintiff was administratively terminated in keeping with the company's LTD benefits policy. Plaintiff then sued AGF for age discrimination and constructive discharge, contending that her supervisor's treatment of her and other older managers was evidence of age discrimination and his actions forced her to go out on disability. *Id.*

The Court dismissed plaintiff's lawsuit because her "termination" occurred pursuant to AGF's LTD benefits policy. The Court reasoned that AGF simply adhered to its own employment policies, all of which were known and communicated to plaintiff. The Court also rejected plaintiff's constructive discharge claim, stating that discrimination laws do not guarantee a workplace free of stress, and that plaintiff failed to provide any evidence of a working environment so intolerable that it exceeded the normal stresses of working for a difficult manager. *Id.* Further, the Court noted that the alleged discriminatory e-mails were sent to plaintiff nearly one year before plaintiff was terminated, and his comments were merely stray remarks and lacked the necessary proximity to plaintiff's administrative termination. *Id.*

Another similar case is *Atwood v. Consolidated Elec. Distributors, Inc.*, 231 Fed. Appx. 767, 2007 WL 1423550 (C.A. 9 (Nev.)). In *Atwood*, plaintiff alleged he was constructively

discharged and discriminated against on basis of his disability, in violation of the ADA and ADEA. The Court dismissed plaintiff's claims because plaintiff failed to demonstrate that his employer's proffered legitimate, non-discriminatory reasons for removing him from his position were pretext for intentional age and disability discrimination. The Court also held that the mere fact that plaintiff believed his termination was inevitable did not establish constructive discharge, absent evidence of a continuous pattern of discriminatory treatment. *Id.* at 767-69.

The circumstances surrounding the present case are strikingly similar to both *Pratta* and *Atwood*. Here, Plaintiff exercised his right to utilize his STD benefits provided by the Company. Plaintiff, a HR professional at his prior employment and a manager at Roche, was aware of Roche's STD and LTD policies. Plaintiff was informed in writing of the date when he would exhaust his STD benefits, resulting in the administrative termination of his employment and his eligibility to apply for LTD benefits. Plaintiff knowingly and voluntarily accepted this termination and subsequently applied for LTD benefits. Plaintiff's LTD benefits were approved and effective on the day of his termination, April 15, 2010.

### 1. **Plaintiff's Termination Occurred in Accordance With Roche's LTD Policy.**

Plaintiff does not dispute that he exhausted his allotment of STD leave and was administratively terminated in compliance with Roche's disability policy. Plaintiff also does not dispute that shortly before he exhausted his STD leave, Defendants advised him orally and in writing that he could either return to work or apply for Long Term Disability leave ("LTD").

More specifically, on or about April 9, 2010, Plaintiff was contacted by Minnie Mincey of Roche's EHS Department to confirm Plaintiff's statement to Holloway that he intended to remain out on medical leave until May 6, 2010. Ms. Mincey contacted Plaintiff to remind him that pursuant to Roche policies, Plaintiff would exceed his permitted STD limit on April 14, 2010 if he did not return to work on or before that date. Plaintiff informed Ms. Mincey that he thought the 182-day STD clock had "reset" and that had he known otherwise, he would have sought to return to work prior to April 14, 2010. Despite his e-mail communication to Holloway that he would be out on medical leave until May 6, 2010, Plaintiff submitted correspondence from his physician that he would be medically able to return to work on April

14, 2010.  *(See Defendants' Motion, Mincey Declaration, and medical correspondence attached as Exhibit GG)*

On April 9, 2010, Roche's EHS Department sent Plaintiff Roche's LTD Packet via Federal Express delivery.   Plaintiff confirmed his receipt of this packet on April 12, 2010.  On April 13, 2010, Delphine McMaster, a Roche EHS employee, contacted Plaintiff via telephone to confirm his receipt of the LTD Packet and to reiterate the text of the letter accompanying the LTD packet, which informed Plaintiff that his last day to return to work prior to exhaustion of this 182-day STD period was April 14, 2010.  Plaintiff advised Dr. McMaster that he had received the LTD packet, was aware that his last day to return to work was April 14, 2010, and that he had decided not to return to work and instead to apply for LTD benefits under the Roche disability benefits plan.  Notwithstanding the correspondence from his physician stating that Plaintiff was medically able to return to work *prior* to the expiration of his STD leave, Plaintiff did not show up for work on April 14, 2010.  Therefore, pursuant to Roche policy, Plaintiff's employment was administratively terminated on April 15, 2010.  *(See Defendants' Motion, McMaster Declaration and Roche policies attached as Exhibit D)*

Plaintiff's Response attempts to circumvent Defendants' disability policy by claiming that working conditions were so intolerable that he was left with no choice but to "resign" by going on disability.  However, the undisputed material facts clearly reflect that a reasonable person would not consider Plaintiff's working environment intolerable.  Similar to plaintiff in *Pratta*, Dossat can only point to less than a handful of benign, stray remarks ("old school," "tenure," and "senior manager") which occurred over two years before his administrative termination, along with requests that Dossat meet several identifiable, measurable, and obtainable criteria under a PIP, as evidence of unbearable working conditions.  Notwithstanding the fact that Dossat cannot demonstrate that any of these issues related to his age, a reasonable person would not consider Plaintiff's list of events as making working conditions intolerable.

In furtherance of Plaintiff's forced resignation argument, Dossat alleges that in December 2007 – almost 2 ½ years before he was administratively terminated – Holloway "suggested that if Plaintiff should choose to leave the Division Sales Manager position, Mr.

Holloway would help Plaintiff." *(Plaintiff's Response at p. 21:2-3)*  Once again, Plaintiff is simply trying to "spin" a harmless statement into something threatening and discriminatory, which it was not.

Next, Plaintiff argues that in January 2009 – approximately 1 ½ years prior to Dossat's administrative termination – Vice President of Sales, Tim George, and HR Manager, Kristine Kratschmer, tried to "coerce" Dossat into quitting. *(Plaintiff's Response at p. 21:23-27)* However, Plaintiff's Response does not dispute that Dossat admitted that, 1) neither Kratschmer nor George said anything during the meeting which he considered discriminatory, 2) he did not have any facts or documents demonstrating the meeting occurred because of his age, and 3) he never complained to anyone about the incident. *(See Defendants' Motion, Dossat DT at pp. 379:25 – 380:19 attached as Exhibit C)*

As further "evidence" that Plaintiff was constructively discharged, Plaintiff claims that on November 15, 2009, while he was on leave, he received his final paycheck, which contained all of his accrued vacation pay. *(Plaintiff's Response at p. 22:13-24)*  Plaintiff's Response ignores the fact that he received all accrued vacation pay because his STD was set to expire. Plaintiff also admitted in his deposition that he never complained to anybody about the paycheck, never received any other documents stating that he was fired, and continued to receive his pay on a regular basis. *(See Defendants' Motion, Dossat DT at pp. 403:10 – 22 attached as Exhibit C)*

Plaintiff then alleges that he was treated differently from other DSM's, as evidenced by fellow DSM Mike Tonery, who sent out a group e-mail which violated Roche's Blue Book Guidelines.  Plaintiff's Response does not state how this e-mail constitutes constructive discharge.  Regardless, Plaintiff admitted he, 1) never advised anybody that Tonery's e-mail violated Blue Book Guidelines, 2) did not know if anybody was ever disciplined for sending out the e-mail, did not complain about the e-mail to anyone at Roche, and 4) did not know the ages of the other recipients on the e-mail. *(See Defendants' Motion, Dossat DT at p. 333:17 – 335:25 attached as Exhibit C)*

*///*

...

### 2. Plaintiff's Argument Regarding Holloway's Use Of The Term "Old School" Is False And Misleading.

Plaintiff's Response states that Holloway and Kratschmer admitted that the term "old school" could be understood to refer to someone's age. As a result, Plaintiff contends that the case law contained in Defendants' Motion, which all hold that the term "old school" does not constitute age based animus, is inapposite.

Plaintiff's argument misses the point. It is immaterial whether or not ***Kratschmer and Holloway*** testified that a person could construe "old school" as referring to someone's age; the central issue at hand is what ***Plaintiff*** believed "old school" meant. The answer is simple: Dossat admitted in his deposition that he told HR he did not know what "old school" meant at the time it was said, he was not offended when Holloway used the term, and that it was used in reference to his management style. The reality is that Plaintiff only complained about Holloway's use of the term "old school" (which occurred almost one year earlier) because he received a "does not meet" rating on his year-end review, which rendered him ineligible to receive a portion of his bonus pay. Furthermore, Defendants' Motion cited to several cases, all of which held that the term "old school" did not reflect age based animus. (*See Shontz v. Rite Aid of Pennsylvania Inc.*, Slip Copy, 2008 WL 793878 (W.D.Pa.); *E.E.O.C. v. TIN Inc.*, Slip Copy, 2008 WL 2323913 (D.Ariz.); *Bay v. Fairfield Resorts, Inc.*, Slip Copy, 2007 WL 4373022 (E.D.Tenn.))

### 3. Plaintiff's Argument Regarding Holloway's Use Of The Word "Tenure" Is Without Merit And Misleading.

Plaintiff's Response contends that when Holloway used the word "tenure," he was referring to managers who needed to retire. The only piece of "evidence" Plaintiff provides are HR Manager Kristine Kratschmer's handwritten notes memorializing a conversation she had

with Holloway on January 25, 2008 – about 2 ½ years before Dossat's administrative termination. (The handwritten notes refer to Kristine Kratschmer as "KK" and James Holloway as "JH".) Plaintiff's brief provides an excerpt from Kratschmer's notes; however, Plaintiff's quote is misleading because it is incomplete. The *entire* reference states,

> KK –   Any comments about managers who need to retire
> JH –   Discussions around mgrs w/ tenure – Gail Hunter
>             approached me
>         Good conversation
>         He'll do it on his own timetable
>         Productive & good at what he does
>         A loss to Roche
>         Conversations do happen
>         Not to my knowledge – have a discussion w/
>         someone about others retiring
>         Must understand the context.

*(See Defendants' Motion, Exhibit M, bates number DEF00749)*

Clearly, Holloway did not state that whenever he used the word tenure, he was referring to managers who needed to retire. In fact, Holloway could only point to one manager with whom he discussed retirement, and said that he needed to understand the context in order to respond. Essentially, Plaintiff is trying to create an issue of fact where none exist. Moreover, Dossat does not dispute that he admitted that, 1) that the word "tenure" could be a reference to a person's experience rather than age, 2) he never asked Holloway what he meant when he used the word "tenure," 3) he never complained to Holloway about his use of the word "tenure," 4) other than his subjective belief that "tenure" referred to his age, he did not have any facts or documents to support this contention, and 5) he did not have facts or documents to show that his age was a motivating factor for Holloway's use of the word "tenure." *(See Defendants' Motion, Dossat DT at pp. 202:7-10, 204:9-25, and 205:2-7 attached as Exhibit C)*

Further, Plaintiff ignores the holding in *Bolton v. Sprint/United Management Co.*, 220 Fed. Appx. 761, 769-770 C.A.10 (Kan.2007), where the Court concluded that no reasonable inference of age bias could be drawn from a supervisor's comment about plaintiff's tenure, reasoning that the employee's contention ignored the fact that his supervisor made those comments in the specific context of evaluating his performance, and was expressing his criticism of the employee's skill level in relation to the length of time he had worked at the company. *Id.*

Accordingly, Plaintiff has failed to satisfy the elements necessary to present a prima facie case of age discrimination, and his claim should be dismissed as a matter of law.

## C. PLAINTIFF'S ATTEMPT TO CREATE ISSUES OF FACT CONCERNING HIS CAUSE OF ACTION FOR RETALIATION IS WITHOUT MERIT AND HIS CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW.

Plaintiff's brief states "There is evidence that Holloway knew about Plaintiff's Complaints against him well before February 6, 2009." *(Plaintiff's Response at p. 26:1-3)* In support of this contention, Plaintiff refers to HR Manager Kristine Kratschmer's handwritten notes from an interview with Holloway on January 25, 2008, in which he was asked about his use of the term "old school." However, Plaintiff neglects to mention that the notes do not state HR advised *Holloway* that Dossat complained about him. Plaintiff simply jumps to this conclusion and asserts there is an issue of fact.

Plaintiff deposed Kratschmer and Holloway in this litgation and specifically inquired about the timing of Holloway's knowledge of Plaintiff's complaints. Kratschmer testified that she never advised Holloway about Dossat's internal complaints filed against him. Holloway echoed that sentiment, maintaining that the first time he became aware that Plaintiff had made any allegations of age discrimination or retaliation against him, or that Plaintiff had filed any internal or external complaint alleging discrimination or retaliation, was when Plaintiff's counsel sent Holloway a letter and a copy of the Complaint on February 6, 2009. *(See Defendants' Motion, Holloway DT at p. 273:4-22 attached as Exhibit B)* Therefore, Dossat

cannot legitimately claim there remains an issue of fact regarding when Holloway discovered Plaintiff registered complaints about him.

Plaintiff's brief also falsely maintains that "Defendants do not have an age discrimination policy at place." (sic) *(Plaintiff's Response at p. 26:17)* Roche's Equal Opportunity Policy states, "Discrimination Prohibited. It is the policy of the Company to ensure and provide equal employment opportunity for all persons employed by, or seeking employment with the Company, without regard to race, ***age***, color, religion, gender, citizenship, marital status, sexual orientation, gender identity or expression, national origin, disability, status as a special disabled veteran or Vietnam Era veteran or any other basis prohibited by law or regulation." *(See Defendants' Motion, Roche Equal Opportunity policy attached as Exhibit O)*

Further, Roche has an anti-retaliation policy which provides in pertinent part, "Retaliation Prohibited. Retaliation of any kind against an employee or other individual for reporting discrimination, including sexual harassment, or assisting the Company in the investigation of a complaint will not be tolerated and will subject offenders to serious disciplinary action." *(See Defendants' Motion, Roche Equal Opportunity policy attached as Exhibit O)*

Plaintiff next argues that Defendants did not conduct a thorough investigation into Dossat's allegations. Plaintiff does not provide any authority in support of this contention; instead, Dossat simply refers to EEOC *guidelines* – none of which even remotely suggest that Defendants' investigation was inadequate. Furthermore, Plaintiff ignores the lengthy discussion in Defendants' Motion which directly addressed Defendants' investigation, as well Dossat's admissions concerning the adequacy of HR's actions. To reiterate, HR promptly and thoroughly investigated Plaintiff's allegations. HR closed its investigation because Plaintiff never even raised the subject of his age when he discussed his complaints with HR, and due to the fact that Holloway's issues with Plaintiff were based solely on Dossat's refusal to follow Roche's policies and his inability to properly manage his team, neither of which had anything to do with his age. *(Defendants' Motion, Kratschmer DT at pp. 135:13-136:2 attached as Exhibit N)*

Finally, Plaintiff's attempt to argue that his receipt of warnings, negative performance reviews, reduced bonus and/or raises and placement on a PIP were retaliatory is entirely baseless because all of these issues *prior* to Holloway becoming aware that Dossat complained about him. Placement on the PIP was the result of Plaintiff's admitted performance deficiencies and poor performance ratings. Furthermore, Plaintiff's recent administrative termination was based solely on Roche's written disability benefits policy, was not performance related, and was not in any way done in retaliation for any complaint made by Plaintiff. The undisputed material facts permit only one conclusion: Plaintiff's performance was inadequate, he was appropriately counseled, and he elected not to return to work and instead to apply for LTD. Therefore, Plaintiff's retaliation claim is without merit and should be dismissed as a matter of law.

### D.  **PLAINTIFF'S RESPONSE FAILS TO PROVIDE ANY AUTHORITY IN SUPPORT OF HIS INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.**

It is axiomatic that if the Court dismisses Plaintiff's claims for age discrimination and retaliation, there would not be a basis for maintaining his cause of action for intentional infliction of emotional distress, as Defendants' conduct could not be considered extreme and outrageous.

The fact that Holloway made less than a handful of benign, stray remarks years earlier does not make Defendants' conduct extreme and outrageous. Neither does Defendants' justifiable issuance of written warnings, "does not meet" ratings, and a PIP. Further, Plaintiff's contention that the PIP was never-ending is entirely misleading. The sole reason why Dossat's PIP kept getting extended was because Plaintiff continued to go out on leave and vacation, which prevented Defendants from gauging his progress within a set timeframe.

/ / /
/ / /
/ / /
/ / /
/ / /

**E.   PLAINTIFF'S RESPONSE FAILS TO RESPOND TO DEFENDANTS' MOTION WITH RESPECT TO DOSSAT'S CAUSES OF ACTION FOR NEGLIGENT HIRING, NEGLIGENT TRAINING AND SUPERVISION, AND NEGLIGENT RETENTION; THEREFORE, THEY SHOULD BE DISMISSED AS A MATTER OF LAW.**

Plaintiff's brief does oppose Defendants' Motion with respect to Dossat's second, third, and fourth claims for negligent hiring, negligent training and supervision, and negligent retention.  Accordingly, they should be dismissed as a matter of law.

**F.   PLAINTIFF'S RESPONSE FAILS TO DISTINGUISH DEFENDANTS' AUTHORITY WHICH DICTATES THAT SEVERAL OF PLAINTIFF'S ALLEGATIONS CONCERNING AGE DISCRIMINATION AND RETALIATION ARE TIME BARRED.**

Defendants' Motion contended that this is not a pattern and practice case, and as a consequence, several of plaintiff's allegations concerning age discrimination and retaliation are time barred.  Plaintiff's Response ignores Defendant's authority, and simply concludes that all of Defendants' acts should be construed as "one unlawful employment practice" in order to negate statute of limitations problems.

Plaintiff's Response fails to demonstrate by a preponderance of the evidence that the alleged discriminatory conduct was widespread throughout the Company or was a routine and regular part of the workplace in order to defeat Defendants' contention.  *See Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003); *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984).

Based on the claimed incidents of age discrimination and retaliation as stated in Plaintiff's NERC and EEOC Charges, as well as Plaintiff's Complaint filed in Federal Court, it is undisputed that Holloway's conduct was sporadic at best; therefore, the 300 day rule should be applied to bar alleged incidents or age discrimination and retaliation.  *See Panelli v. First American Title Ins. Co.*, --- F.Supp.2d ----, (D. Nev. 2010).

/ / /

/ / /

/ / /

**IV.**
**CONCLUSION**

Based on the foregoing, Defendants respectfully request that the subject Motion for Summary Judgment be granted in its entirety.

Dated: July 5, 2010                                      Howard & Howard Attorneys PLLC

                                                         By: /s/ Robert L. Rosenthal
                                                             Robert L. Rosenthal
                                                             3800 Howard Hughes Parkway, Suite 1400
                                                             Las Vegas, Nevada 89169
                                                             Attorneys for Defendants