# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

RANDY DOSSAT,

    Plaintiff,

v.

HOFFMAN-LA ROCHE INC., *et al*.,

    Defendants.

Case No. 09-CV-00245-KJD-PAL

**ORDER**

Before the Court is Defendants' Renewed Motion for Judgment as a Matter of Law (#136). Plaintiff has responded (#141), and Defendants have replied (#142).

Also before the Court is Defendants' Motion for New Trial or, in the alternative, Remittitur (#137). Plaintiff has responded (#140), and Defendants have replied.

Also before the Court is Plaintiff's Motion for Attorney's Fees (#134). Defendants have filed an opposition(#138) and Plaintiff has filed a reply (#139).

I. Background

Plaintiff Randy Dossat brought this action against his former employers, Defendants Hoffman-La Roche, Inc. and Roche Laboratories, Inc., ultimately seeking damages on three claims. First, Plaintiff claimed that from 2007 to 2010, Defendants discriminated against him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"). Second, Plaintiff claimed

1    that he was retaliated against because of complaints he made internally and to the EEOC, again in

2    violation of the ADEA. Finally, Plaintiff claimed he was the victim of Defendants' intentional

3    infliction of emotional distress ("IIED"). The case went to trial, where a jury found for Defendants on

4    the discrimination claim, but found for Plaintiff on the retaliation and IIED claims. Plaintiff was

5    awarded $168,000 in lost wages on the retaliation claim and $1.7 million on the IIED claim.

6    II. Analysis

7           A. Motion for Judgment as a Matter of Law

8              1. Legal Standard for Judgment as a Matter of Law

9        In jury trials, Judgment as a Matter of Law under Rule 50(b) is only appropriate where the

10   evidence viewed in the light most favorable to the prevailing party "permits *only one* reasonable

11   conclusion, and that conclusion is contrary to the jury's verdict." EEOC v. Go Daddy Software, Inc.,

12   581 F.3d 951, 961 (9th Cir. 2009) (emphasis added). "A jury's verdict must be upheld if it is

13   supported by substantial evidence. Substantial evidence is evidence adequate to support the jury's

14   conclusion, even if it is also possible to draw a contrary conclusion from the same evidence."

15   Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001).

16              2. Intentional Infliction of Emotional Distress

17        For a plaintiff in Nevada to succeed on a claim for intentional infliction of emotional distress,

18   the plaintiff must show three things: (1) the defendant engaged in extreme and outrageous conduct

19   with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff

20   suffered severe or extreme emotional distress, and (3) actual or proximate causation. Dillard Dept.

21   Stores, Inc. v. Beckwith, 115 Nev. 372, 378 (1999) (Citing Star v. Rabello, 97 Nev. 124, 125

22   (1981)).

23        The Nevada Supreme Court defines extreme and outrageous conduct as "that which is outside

24   all possible bounds of decency and is regarded as utterly intolerable in a civilized society." Maduike

25   v. Agency Rent-A-Car, 114 Nev. 1, 4 (1998) (internal quotations omitted). "The tort of intentional

26   infliction of emotional distress is recognizable in the employment termination context." Shoen v.

Amerco, Inc., 111 Nev. 735, 747 (1995). For example, in Dillard Dept. Stores, Inc, v. Beckwith the Nevada Supreme Court found the following to be sufficiently extreme and outrageous:

> Dillard [the employer] did not offer Beckwith, a longtime employee, her previous position as an area sales manager when she returned to work after her injury. This refusal occurred despite the fact that two other area sales manager positions were open for which Beckwith was qualified. She was also forced to take an entry-level position with a forty-percent reduction in salary and was told her demotion was directly related to her claim for workers' compensation. Ultimately fellow employees openly speculated as to the reason for Beckwith's demotion, and her complaints to management that her job situation was having an adverse effect on her health were ignored.

Dillard, 115 Nev. at 378-79.

Defendants argue that the conduct directed at Plaintiff was not extreme and outrageous enough to support the jury's verdict. Defendants distinguish this case from Dillard, emphasizing that here Plaintiff was never demoted or forced to take an entry-level position. Also, Plaintiff experienced private discipline, and therefore he never had to bear humiliation of the gossip and speculation experienced by the Plaintiff in Dillard. In addition to distinguishing Dillard, Defendants also cite numerous IIED cases in Nevada where seemingly serious conduct was held to be insufficiently extreme and outrageous to support an IIED claim.

While this evidence presented by Defendants establishes that it is possible to draw a contrary conclusion from the evidence presented to the jury, it falls short of establishing that the contrary conclusion is the *only* reasonable conclusion. Plaintiff points to the similarities between this case and Dillard. In both, the plaintiffs suffered retaliation, lost pay, were called out of meetings, were denied certain benefits, were subject to hostile supervisors, and ultimately suffered from emotional distress. These similarities to Dillard demonstrate that it is possible that the jury could have reasonably decided that Plaintiff was subject to intentional infliction of emotional distress. Accordingly, because there is more than one reasonable conclusion the jury could have reached, Defendants' motion for judgment as a matter of law on the IIED claim is denied.

1          3. Retaliation in Violation of the ADEA

2          For a plaintiff to succeed on a claim for retaliation in violation of the ADEA, "a plaintiff must

3 prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse

4 employment action, and (3) there was a causal link between the plaintiff's protected activity and the

5 adverse employment action." Poland v. Chertoff, 494 F.3d 1174, 1179-80 (9th Cir. 2007).

6 Establishing causation "is a question of fact that must be decided in the light of the timing and the

7 surrounding circumstances." Coszalter v. City of Salem, 320 F.3d 968, 978 (9th Cir. 2003). In the

8 context of a motion for judgment as a matter of law, the case law of this Circuit indicates that timing

9 alone is not typically sufficient to establish causation when there is evidence that an adverse

10 employment action was taken for other reasons. Id.

11         Defendants argue that the jury's finding of causation could not be supported when understood

12 in the light of the surrounding circumstances. Though Defendants acknowledge that adverse

13 employment actions were taken after Plaintiff complained to Human Resources and the EEOC, they

14 point out that those actions were also taken after Plaintiff failed to adhere to company conduct

15 standards. Defendants argue that this latter explanation for their behavior casts doubt on the jury's

16 use of timing as evidence of causation. Additionally, Defendants argue that timing is insufficient

17 evidence to establish causation because they have presented evidence that their adverse employment

18 actions were taken for reasons other than retaliation. Defendants, therefore, argue that Plaintiff has

19 not presented sufficient evidence to support the jury's verdict.

20         Plaintiff responds by arguing that the conduct of Plaintiff's supervisors, together with timing

21 provides that needed context to find causation. In addition to the chronology of the complaints,

22 Plaintiff emphasizes the he was often referred to as being "old school" and was told on one occasion

23 by Defendants' Vice-President,  "I don't care if older reps get fired. I don't care if they get a bad

24 performance evaluation and quit." Additionally, Plaintiff points out that he was placed on a

25

26

4

1  Performance Improvement Plan (PIP) with assignments that were overly difficult to complete.[1] All of

2  this, Plaintiff argues, provides the context needed to support the jury's verdict.

3        Defendants have again established that it is possible to draw a conclusion contrary to that of

4  the jury.  However, this is not enough to overturn the jury's verdict because there is more than one

5  reasonable conclusion supported by sufficient evidence that the jury could have reached.

6  Accordingly, Defendants motion for judgment as a matter of law as it pertains to the retaliation claim

7  is denied.

8             4.  Willfulness

9        If a plaintiff succeeds on his retaliation claims and shows that the ADEA was violated, he

10  may be entitled to liquidated or double damages. 29 U.S.C. § 626. "Congress intended for liquidated

11  damages to be punitive in nature." Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125 (1985).

12  Hence, liquidated damages are only appropriate where the violation of the ADEA was "willful." 29

13  U.S.C. § 626. The Supreme Court has provided an "acceptable way to articulate a definition of

14  'willful,'" stating that violations of the ADEA may be considered willful when "the employer either

15  knew or showed reckless disregard for the matter of whether its conduct was prohibited by the

16  ADEA." Thurston, 469 U.S. at 128-29.

17       Defendants argue that even if there was a violation of the ADEA, that violation was not

18  willful. Defendants assert that because they too sought legal advice on "most, if not all, of the

19  personnel actions taken," the Court must hold, their conduct was not willful.  To support this claim,

20  Defendants cite Trans World Airlines v. Thurston. In Thurston, TWA sought legal advice on how to

21  create a retirement policy that would not violate the ADEA. 469 U.S. at 129. Despite its good faith

22  efforts, it overlooked an aspect of the plan that did in fact violate the Act. Id. at 129-30. Although the

23  court found that TWA violated that ADEA, it concluded that the TWA's violation was not willful.

24  Id. at130.

25  _____

26        [1] The Court, having considered the totality of the evidence, concludes that a reasonable jury could find that the
PIP was designed to force Plaintiff to resign or collapse under the pressure.

1    Thurston is distinguishable from this case. In Thurston the court found, "There simply is no

2    evidence that TWA acted in 'reckless disregard' of the requirements of the ADEA." Thurston, 469

3    U.S. at 130.  In this case, the jury could have taken evidence that Defendants' Vice President stated

4    that he did not care what happened to older employees, together with other age-related comments, as

5    an indication that Defendants lacked concern for or recklessly disregarded the ADEA. Defendants

6    have not established that there was only one reasonable conclusion the jury could have reached.

7    Accordingly, their motion for judgment as a matter of law on the jury's finding that Defendants acted

8    "willfully" is denied.

9         B. Motion for a New Trial

10             1. Legal Standard for a New Trial or Remittitur

11   Rule 59 provides, "The court may, on motion, grant a new trial on some or all of the issues

12   . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at

13   law in federal court." Fed. R. Civ. P. 59(a). Courts have granted new trials when the verdict is

14   against the weight of the evidence, when the jury has awarded excessive damages, or when, "for

15   other reasons, the trial was not fair to the party moving." Molski v. M.J. Cable, Inc., 481 F.3d 724,

16   729 (9th Cir. 2007) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251(1940)).

17   When determining whether a verdict is against the weight of the evidence, a district court

18   should keep in mind that it has a duty "to weigh the evidence as [the court] saw it, and to set aside

19   the verdict of the jury, even though supported by substantial evidence, where, in [the court's]

20   conscientious opinion, the verdict is contrary to the clear weight of the evidence." Murphy v. City of

21   Long Beach, 914 F.2d 183, 187 (9th Cir.1990) (quoting Moist Cold Refrigerator Co. v. Lou Johnson

22   Co., 249 F.2d 246, 256 (9th Cir.1957)).

23   To determine whether a damages award is excessive, a district court is to view the evidence

24   concerning damages in a light most favorable to the prevailing party. Fenner v. Dependable Trucking

25   Co., Inc., 716 F.2d 598, 603 (9th Cir. 1983). Typically, unless the amount of damages are "grossly

26   excessive or monstrous," a court will no disturb an award. Zhang v. Am. Gem Seafoods, Inc., 339

6

1   F.3d 1020, 1040 (9th Cir. 2003). However, if a court determines that a damages award is grossly

2   excessive, it has two alternatives: "[i]t may grant the defendant's motion for a new trial or deny the

3   motion conditional upon the prevailing party accepting a remittitur."  Fenner, 716 F.2d at 603.

4   Generally, the proper amount of a remittitur is the maximum amount sustainable by the evidence. See

5   Los Angeles Memorial Coliseum Commission v. National Football League, 791 F.2d 1356, 1366 (9th

6   Cir. 1986).

7                          2. Intentional Infliction of Emotional Distress

8            As described above, the elements of an IIED claim are as follows: (1) the defendant engaged

9   in extreme and outrageous conduct with either the intention of, or reckless disregard for, causing

10  emotional distress, (2) the plaintiff suffered severe or extreme emotional distress, and (3) actual or

11  proximate causation. Dillard Dept. Stores, Inc. v. Beckwith, 115 Nev. 372, 378 (1999) (Citing  Star v.

12  Rabello, 97 Nev. 124, 125 (1981)).

13           Defendants first seek to have this Court order a new trial on the IIED claim because the jury's

14  verdict was against the clear weight of the evidence. At trial, Plaintiff provided his own testimony

15  about what happened, the testimony of his doctor, evidence of a change in his behavior and character

16  at the time of the Defendants' actions, evidence that he was diagnosed with post-traumatic stress

17  disorder, and evidence of heart problems, all of which supported the elements of Plaintiff's IIED

18  claim. In response, Defendants presented the testimony of Plaintiff's supervisor, but the jury

19  apparently found Plaintiff's evidence to be more persuasive.[2] Accordingly, Plaintiff has presented

20  sufficient evidence for a jury to find for Plaintiff on his IIED claim. While a jury could have come to

21  a contrary conclusion, it cannot be said that the verdict reached was contrary to the clear weight of

22  the evidence.

23

24

25           [2] Based on the evidence presented, which included an allegation that, following Plaintiff's first EEOC charge,
     his supervisor made a hand gesture suggesting Plaintiff was about to be shot, a reasonable jury could have concluded

26   Defendants' actions were intended to cause emotional distress.

1    Defendants also seek a new trial on the issue of Plaintiff's IIED award because the jury

2    verdict of $1,700,000 was excessive. Defendants cite multiple Nevada cases to illustrate that awards

3    for IIED in Nevada have historically not come close to the level of Plaintiff's award. Defendants note

4    that Plaintiff's award of $1,700,000 would be the largest award ever for emotional distress arising out

5    of an employment case in Nevada. The previous largest award was $200,000. This award was

6    allowed by the Nevada Supreme Court in Dillard Dept. Stores, Inc, v. Beckwith, discussed above.

7    See Dillard, 115 Nev. at 382. Defendants emphasize that, despite similarities between Plaintiff's case

8    and Dillard, Plaintiff's award is more than eight times larger than the Dillard award, a difference of

9    $1,500,000.[3]

10    Plaintiff argues that the $1,700,000 IIED award was not grossly excessive and cites Ninth

11    Circuit cases where large jury awards for emotion distress were upheld. Plaintiff focuses his

12    argument on comparing his case to Passantino v. Johnson & Johnson Consumer Products, Inc., a

13    Washington case where a plaintiff was awarded $1 million in "compensatory emotional distress

14    damages." 212 F.3d 493, 504 (9th Cit. 2000). Plaintiff argues that because the facts of Plaintiff's case

15    and his award are so similar to the facts and award in Passantino, the $1,700,000 award is not

16    excessive.

17    Passantino, however, did not involve the tort of IIED, and the case was not governed by

18    Nevada law. Dillard provides much better authority. Because of the similarities between this case

19    and Dillard, the evidence does not justify an award in excess of $200,000. Therefore, the Court finds

20    that the award for $1,700,000 is grossly excessive and should be remitted to $200,000. Accordingly,

21    the Court denies Defendants' motion for a new trial with regard to the IIED verdict but grants

22    Defendants' motion for a new trial with regard to the IIED award unless Plaintiff accepts the Court's

23    order of remittitur. Plaintiff shall file and serve a statement regarding whether he accepts the

24

25    _____

26    [3] The amount of the award is arguably a reflection of the juror's views on the strength of Plaintiff's case and a
lack of credibility on the part of Defendants' witness.

1   remittitur or opts for a new trial to determine a proper award for IIED on or before November 7,

2   2012.

3                    3. Retaliation in Violation of the ADEA

4           Defendants also seek a new trial on the retaliation claim award because the award of lost

5   wages was against the clear weight of the evidence.[4] Defendants advocate a formula showing

6   Plaintiff should only have been entitled to, at most, $40,975.  Because the jury reasonably found that

7   Defendants' retaliation was willful, Plaintiff would also be entitled to liquidated damages doubling

8   the award. Defendants argue that the award should be remitted to $81,950. Plaintiff counters with his

9   own formula and submits that from 2008 to April 6, 2010, he lost $71,167 in variable pay, raises, and

10  salary. Under Plaintiff's calculation, the award should be remitted to, at most, $142,334.

11          On the issue of damages for retaliation, the jury was instructed as follows:

12              Damages means the amount of money that will reasonably and fairly
                compensate the Plaintiff for any loss of wages you find was caused by the
13              discriminatory or retaliatory acts of Defendants from the date of the first
                adverse employment action to April, 6 2010, when Plaintiff went on a
14              disability leave. . . .

15  No specific formula was given, and the amount exceeds the result under either Plaintiff's or

16  Defendants' formula.  Accordingly, the jury's $168,000 award was against the clear weight of the

17  evidence. Because the Court views the evidence in the light most favorable to Plaintiff, the award

18  will be remitted to $142,334. Accordingly, the Court grants Defendants' motion for a new trial with

19  regard to the retaliation award unless Plaintiff accepts the Court's order of remittitur. Plaintiff shall

20  file and serve a statement regarding whether he accepts the remittitur or opts for a new trial to

21  determine a proper award for IIED by November 7, 2012.

22

23

24          [4] Defendants further argue that this Court should order a new trial on the retaliation claim itself because the jury
    was prejudiced by the presentation of evidence to support the IIED claim. However, this argument is dependent upon a
25  finding by this Court that there was insufficient evidence to try the IIED claims in front of the jury. Because this Court
    has concluded that there was sufficient evidence to not only try the IIED claims, but also to justify the jury's finding in
26  favor of Plaintiff on the IIED claim, this argument is not discussed.

                                          9

1

<u>C. Motion for Attorney's Fees</u>

2

Plaintiff seeks $301,600 in attorneys' fees and $10,316.74 in costs for a total of $311,916.74.

3

<u>1. Entitlement to Attorney's Fees</u>

4

A prevailing party in an Age Discrimination in Employment Act (ADEA) case is entitled to

5

"a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

6

Defendants do not dispute that Plaintiff is the prevailing party.  Because Plaintiff prevailed on his

7

retaliation claim and his related IIED claim,[5] he is entitled to attorneys' fees.

8

<u>2. Reasonableness of Award</u>

9

Once a party establishes its entitlement to an attorneys' fees award, courts must determine the

10

reasonableness of such an award. <u>See</u> <u>GCM Air Group, LLC</u>, 2009 WL 1810743, at *4. In the Ninth

11

Circuit, attorneys' fees are calculated using the "lodestar" method, which requires the multiplication

12

of the number of hours reasonably expended by a reasonable hourly rate. <u>See</u> <u>Id.</u>

13

The factors set forth in Local Rule 54–16 guide the analysis of the lodestar amount. Those

14

factors include: (i) the results obtained and the amounts involved; (ii) the time and labor required;

15

(iii) the novelty and difficulty of the questions involved; (iv) the skill required to perform the legal

16

services properly; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) the

17

experience, reputation, and ability of the attorneys; and (viii) the undesirability of the case, if any. <u>See</u>

18

LR 54–16(b)(3).  A reasonable hourly rate is determined by considering the skill, experience, and

19

reputation of the attorneys requesting fees, and should reflect prevailing market rates in the

20

community in which the Court sits. <u>See</u> <u>GCM Air Group, LLC</u>, 2009 WL 1810743, at *4 & n. 3.

21

<u>a. Hours Worked</u>

22

Plaintiff's attorneys have submitted evidence showing that they worked 923.60 hours on this

23

case.  Defendants do not quibble with this amount except to argue that Plaintiff should not be

24

25

26

[5] The IIED claim shares a common core of facts with the ADEA claim.  Accordingly, an award of fees based on the overall relief obtained by Plaintiff is appropriate.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940 (U.S.S.C., 1983).

1    awarded fees for the 45 hours Ms. Esteban-Trinidad spent attending trial. However, since Ms.

2    Esteban-Trinidad was the primary attorney on the case, her attendance at trial was reasonable.

3    Accordingly, the Court finds that the amount of timed worked on this case is reasonable.

4                                   b. Reasonable Fees

5          Plaintiff seeks an award of fees for M. Lani Esteban-Trinidad's 429.70 hours of work at

6    $300.00 per hour.  This amount is excessive in this case, given Ms. Esteban-Trinidad's level of

7    experience and skill, and the prevailing rates in the community. $200.00 per hour is a more

8    reasonable hourly rate for Ms. Esteban-Trinidad's time in this case.  The rate Plaintiff seeks for Ms.

9    Esteban-Trinidad's associate is $200.00 for 194.40 hours.  This amount is also unreasonable in this

10   case and the Court awards attorney's fees for the associate's time at $100.00 per hour.  Plaintiff also

11   requests an award for paralegal/law clerk time at $125.00 an hour for 9.10 hours.  The Court finds

12   this rate unreasonable in this case and awards fees of $75.00 per hour for paralegal/law clerk time.

13   Finally, Plaintiff seeks $475 per hour for Mr. Waldo's 129.30 hours and Mr. Bononi's 161.10 hours.

14   This amount is unreasonable in this case and, given the rates in this community, a more reasonable

15   rate for Mr. Waldo and Mr. Bononi's time is $300.00 per hour.  Based on the foregoing, the Court

16   determines that $193,182.50 is an appropriate award of attorneys' fees.

17                                        c. Costs

18         Plaintiff is awarded costs in the amount of $10,316.74 for a total award of fees and costs of

19   $203,499.24.

20   //

21   //

22   //

23   //

24   //

25   //

26   //

III. Conclusion

     **IT IS HEREBY ORDERED** that Defendants' Motion for Judgment as a Matter of Law (#136) is **DENIED**.

     **IT IS FURTHER ORDERED** that Defendants' Motion for New Trial or, in the alternative, Remittitur (#137) is **GRANTED IN PART** and **DENIED IN PART**.

     **IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorney's Fees (#134) is **GRANTED**.

     DATED this 24th day of October, 2012.


_____
Kent J. Dawson
United States District Judge